UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JENNIFER A. DURAND,

On behalf of herself and on
behalf of all others similarly situated,                                      PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:07-CV-130-S

THE HANOVER INSURANCE
GROUP, INC., et al.                                                           DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court on a motion to dismiss by Defendants, The Hanover Insurance Group, Inc. ("Hanover") and The Allmerica Financial Cash Balance Pension Plan (the "Plan"), pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff, Jennifer Durand ("Durand"), has sued Defendants on behalf of herself and other similarly situated Plan participants and beneficiaries for additional pension benefits. Defendants contend that the Durand's complaint fails to state a claim upon which relief can be granted because she failed to exhaust the administrative remedies available to her under the Plan, and failed to plead a sufficient basis for a finding that it would be futile for her to pursue these remedies.

### BACKGROUND

Durand is a former employee of the First Allmerica Financial Life Insurance Company ("FAFLIC"), a subsidiary of Hanover, having worked there from October 17, 1995, until April 30, 2003. She accrued pension plan benefits under the Plan throughout her employment. At age 32, she terminated her employment at FAFLIC and received a $17,038.18 cash distribution from the Plan.

Durand now complains that the method by which the Plan calculated this distribution resulted in a forfeiture of benefits to which she was entitled. She has sued Defendants on behalf of herself and other similarly situated participants and beneficiaries of the Plan, alleging the Plan violated the Employee Retirement Income Security Act (ERISA).

The Plan is a type of defined benefit pension plan known as a cash balance plan. Under the terms of the Plan, a participant's benefits are defined by reference to a hypothetical account balance. The Plan's hypothetical account balance is comprised of two components: (1) a pay credit (e.g., 3% of pay per year); and (2) an interest credit on the account balance which, from 1996 until 2004, was determined based on the performance of various investment portfolios selected by the participant. The account is hypothetical in that the Plan does not actually invest monies in the various investment portfolios, but simply follows the market performance of those portfolios and provides interest credits to the Plan participants' accounts as if they had invested in those portfolios. The earnings credits cease upon the termination of a participant's employment. The interest credits continue through retirement based on the hypothetical return of the hypothetical investments unless the participant elects an early lump sum distribution.

If a lump sum distribution is requested by an employee who, like Durand, terminates employment before reaching retirement age, the Plan provides that such a distribution must "not be less than the present value of the Normal Retirement Accrued Benefit." The Normal Retirement Accrued Benefit as defined by the Plan is a projection of what the participant's account balance would be at normal retirement age. For early-terminated employees requesting a lump sum, the Plan must project the future investment returns the employees otherwise would have earned on their account balances based on the future investment portfolios that they otherwise would have selected

until they reached normal retirement age. The particular investment "portfolio" relied on by the Plan to project the future investment return on the account balances was the 30-year Treasury bill. The Plan then used the same 30-year Treasury bill rate to discount the projected benefits to their present value.

Because the same rate was used to determine the projected account balance and to then discount the balance to present value, early-terminated employees, including Durand, effectively received a payment equal to the amount of their account balances as of the date they received the payment. Durand claims that she was entitled to a greater distribution because an interest rate higher than that of the 30-year Treasury bill rate should have been used to project the return on her account balance. She claims that the Plan's failure to use a higher interest rate resulted in a violation of ERISA. She claims that she and other similarly situated employees are entitled to additional pension benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).[1]

## DISCUSSION

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir.1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995)). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

---

[1] Durand's complaint is phrased broadly so as to possibly include a claim for equitable relief arising under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). In her response to Defendants' motion to dismiss, Durand states that she is not making such a claim, and the court declines to construe the complaint as including such a claim.

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65. Additionally, even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*.

Defendants assert that Durand's claim is inappropriate because she has failed to exhaust the administrative remedies available to her under the Plan, and that she has failed to demonstrate that it would be futile for her to pursue these remedies. ERISA requires that "[e]very employee benefit plan shall. . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." ERISA § 503(2), 29 U.S.C. § 1133(2). While ERISA is silent as to whether exhaustion of administrative remedies is a prerequisite to bringing a civil action, the Sixth Circuit has held that "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in a federal court." *Coomer v. Bethesda Hosp., Inc.*, 370 F .3d 499, 504 (6th Cir.2004) (quoting *Miller v. Metro. Life Ins. Co* ., 925 F.2d 979, 986 (6th Cir.1991)).

Durand contends that exhaustion is not required in this case and has presented four arguments in support of her contention. First, relying on *Richards v. Gen. Motors Corp.*, 991 F.2d 1227 (6th Cir. 1993), she contends that because her claim is one seeking redress for a statutory violation of ERISA, she is not subject to the exhaustion requirement. However, The Sixth Circuit has stated, subsequent to the *Richards* decision, that "we have not yet decided whether a beneficiary must exhaust administrative remedies prior to bringing claims based on statutory rights. . . [and] again find it unnecessary to decide the more difficult issue of whether exhaustion of administrative remedies should be required for statutorily created rights" *Hill v. Blue Cross and Blue Shield of*

*Michigan*, 409 F.3d 710, 717 (6th Cir. 2005). Contrary to Durand's assertion, *Richards* does not excuse her obligation to exhaust her administrative remedies. Moreover, Durand seeks relief under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which provides only for recovery of benefits due under the Plan, enforcement of rights under the Plan, or clarification of rights to future benefits under the Plan. Although the terms of the Plan must comply with ERISA, Durand's claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) is not a claim for purely statutory relief, but rather a claim for benefits under the Plan. Therefore, even if a claim based on a statutory right was excused from the exhaustion requirement, Durand's claim is not one that would be excused.

Durand next contends that exhaustion should be excused because resort to the administrative process would be futile. The failure to exhaust administrative remedies is excused "where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998). "The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Id.* "A plaintiff must show that 'it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.'" *Id.* (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir.1996)).

Durand argues that exhaustion of the Plan's remedies would be futile based on the recent Sixth Circuit decision in *West v. AK Steel Corp.*, 484 F.3d 395 (6th Cir. 2007). In *AK Steel*, the court determined that resort to the administrative process would be futile because had the plaintiff submitted a timely claim for the recalculation of his lump sum benefit, the AK Steel Plan committee would have responded that he had already received the amount he was entitled to under AK Steel's interpretation of its plan. *Id.* at 405. Durand argues that if she had resorted to the administrative

process that the Plan would have also determined that she was entitled to nothing more than she already received. However, unlike the plaintiff in *AK Steel*, Durand has no basis to support this argument.

In *AK Steel*, the plaintiff did submit an administrative claim to the AK Steel Plan committee. That committee rejected his claim as untimely, and with respect to the merits, ruled that he had received all of the benefits due to him under the terms of the plan. *Id.* at 402. In addition, after he filed suit, AK Steel argued to the court that he had already received all of the benefits to which he was entitled under the plan. *Id.* at 405. Thus, in *AK Steel*, there was no doubt that the plaintiff's claim was certain to be denied by the AK Steel Plan Committee and that a clear and positive indication of futility had been made.

In this case, Durand has failed to file an administrative claim and Defendants have not determined, nor argued, that she received all of the benefits to which she was entitled under the Plan. Durand points to a 2002 Department of Labor report issued after a random audit of 60 cash balance plans, including Defendants' Plan, as evidence of futility. The report concluded that Defendants' Plan was in violation of ERISA in the same way that she alleges in this case. She argues that Defendants' failure to bring the Plan into compliance with ERISA after becoming aware of this report, and after becoming aware of case law holding that similar cash balance plans violated ERISA, is sufficient to indicate that resort to the administrative process would be futile. The court finds this argument unpersuasive. The court cannot determine that exhaustion would be futile based only on Defendants' failure to amend or alter the Plan following a Department of Labor report and judicial opinions on the matter when neither the report, nor the opinions required Defendants to do so. Further, exhaustion cannot be considered futile when no Plan participant has actually requested

the Plan to alter its method of calculating the lump sum distributions paid to early-terminated employees.

Durand's third contention as to why the exhaustion requirement should not apply is that resort to the administrative process cannot provide an adequate remedy. *See Fallick*, 162 F.3d at 419 (exhaustion excused where resorting to plan's administrative procedure would not provide an adequate remedy). She argues that the Plan's claims process does not provide for voiding Plan terms or enacting Plan amendments and that the Plan fiduciaries lack authority to take this action. This argument overlooks the requirement set forth in both the Plan and ERISA that fiduciaries must discharge their duties in the interests of the participants and their beneficiaries and act "in accordance with the documents and instruments governing the Plan *insofar as such documents and instruments are consistent with the provisions of [ERISA]*." ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) (emphasis added). Therefore, to the extent the Plan is inconsistent with the provisions of ERISA, ERISA will take precedence and the Plan fiduciaries would be required to calculate Durand's lump sum distribution so as to comply with ERISA. Such calculation would result in an adequate remedy.

Durand contends that Defendants will not provide this remedy by altering the method by which they calculate her benefits under the Plan because such alteration would eliminate the Plan's tax-qualified status. *See* 26 U.S.C. § 401(a)(25). The court finds this argument without merit in that it merely assumes that Defendants could not amend the Plan in a manner compliant with the Internal Revenue Code and its accompanying regulations. As a result, Durand is not excused from exhausting the administrative process on the grounds that it cannot provide an adequate remedy.

Lastly, Durand contends that exhaustion should be excused based on the failure of the Defendants to maintain an ERISA-compliant claims process. Durand seeks to avoid the exhaustion requirement by arguing that 29 C.F.R. § 2560.503-1(l) applies to her case. This Department of Labor regulation provides that "in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a). . . on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." *Id.* Durand contends that because Defendants' Summary Plan Description (SPD) "barely mentions" the claims procedure that it is not reasonable and therefore in violation of 29 C.F.R. § 2560.503-1. Defendants' SPD states "[i]f your claim for a pension benefit is denied in whole or in part you must receive a written explanation of the reason for the denial. You have the right to have the plan review and reconsider your claim." The court finds that this SPD description of the claims procedure is adequate. Furthermore, even if Defendants' SPD did not adequately describe the claims procedure, Durand is not excused from the exhaustion requirement insomuch as she has not been denied access to the administrative process. *See Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1316 (11th Cir. 2000) ("exhaustion requirement for ERISA claims should not be excused for technical violations of ERISA regulations that do not deny plaintiffs meaningful access to an administrative remedy procedure through which they may receive an adequate remedy").

There are numerous purposes of exhausting administrative remedies: (1) to help reduce the number of frivolous lawsuits under ERISA; (2) to promote the consistent treatment of claims for benefits; (3) to provide a nonadversarial method of claims settlement; (4) to minimize the costs of

claims settlement for all concerned; (5) to enhance the ability of trustees of benefit plans to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes; (6) to enhance the ability of trustees of benefit plans to correct their errors; (7) to enhance the ability of trustees of benefit plans to interpret plan provisions; (8) to help assemble a factual record which will assist a court in reviewing the fiduciaries' actions. *Constantiino v. TRW, Inc.*, 13 F.3d 969, 975 (6th Cir. 1994). Although Durand's claim is clearly not frivolous, the court finds that the Defendants should have the benefit of the opportunity to resolve any errors in the method of calculating Durand's benefits under the Plan. Additionally, the court finds that the factual record that would be generated from the administrative process as to the rates proposed by Durand to be used for the projecting the future return on her account balance would be of great value.

For the reasons set forth above, the court will grant Defendants' motion to dismiss. The court will not hold the dismissed complaint in abeyance pending Durand's pursuit of administrative remedies. Rather the court will dismiss Durand's claims without prejudice. A separate order will be entered herein this date in accordance with this opinion.