UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


JENNIFER A. DURAND, et al. PLAINTIFFS

v. CIVIL ACTION NO. 3:07CV-130-JDM

THE HANOVER INSURANCE
GROUP, INC. DEFENDANTS


**<u>MEMORANDUM OPINION</u>**

This matter is before the court on a motion to dismiss the First Amended Class Action

Complaint filed under the Employee Retirement Income Security Act ("ERISA"), § 502(a), 29

U.S.C. § 1132(a)(1)(B). The plaintiffs, Jennifer Durand, Walter Wharton and Michael Tedesco,

are former employees of the defendant, Hanover Insurance Group, Inc., and have participated in

Hanover's ERISA-governed pension plan, The Allmerica Financial Cash Balance Pension Plan

("the Plan"), which is also named as a defendant. The defendants move to dismiss the additional

claims in the amended complaint on several grounds, including the applicable statute of

limitations. For reasons stated below, the court concludes the new claims are time-barred. The

only remaining claim is the original whipsaw claim, asserted by Jennifer Durand and Walter

Wharton.

**I.**

**A. Standard of Review**

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, the district court must accept all of the allegations in the complaint as true, and

construe the complaint liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.*,

188 F.3d 687, 691 (6th Cir. 1999). The motion must be denied unless the plaintiffs can prove no

set of facts in support of their claims that would entitle them to relief.  *See Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir. 1989) (quoting *Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir. 1987)).

## B.  Background

### – Original "Class Action Complaint"

The plaintiff, Jennifer Durand, separated from employment at age 32, in August 2003, and elected to cash out of the Plan, or receive her pension benefit in the form of a lump-sum distribution, before reaching retirement age.  In the original complaint, Durand, individually and in behalf of a putative class, claims the Plan understated her distribution, essentially, because the Plan calculated the lump-sum amount in a manner that violates ERISA, and which, for her, resulted in a partial forfeiture of her vested, accrued benefits.[1]

At the threshold of this litigation, the district court dismissed the original complaint for Durand's failure to exhaust her administrative remedies.  The Court of Appeals for the Sixth Circuit reversed, however, and held that an administrative recalculation of the lump-sum distribution would have been futile, given the Plan's methodology, i.e., the use of a uniform projection rate in calculating a lump-sum distribution.  *Durand v. Hanover Ins. Group, Inc.*, 560 F.3d 436 (6th Cir. 2009).

As explained at length in the Sixth Circuit opinion, the Plan belongs to "a subset of defined-benefit plans,  known as 'cash-balance plans.'"  *Id.,* at 437.  A cash-balance plan is a hybrid of a defined-benefit plan, which provides a benefit in the amount equal to a specified percentage of an employee's salary in the final years of employment, and a contribution plan,

---

[1]Class Action Compl. ¶¶ 25-28.

which provides a benefit in the amount of contributions. *See West v. AK Steel Corp.*, 484 F.3d 395, 399 (6th Cir. 2007). A cash-balance plan creates an account for each participant, who earns hypothetical allocations, called "pay-credits," and hypothetical earnings, called "interest credits," according to terms set forth in the plan. The hypothetical account, thus, in appearance is much like a traditional "401(k) account." *Durand,* 560 F.3d at 437. Under a cash-balance plan, the pay credits cease at the time of employment separation; however, separated employees continue to earn interest credits, which accrue to the hypothetical account until the normal retirement age of 65. The pension benefit is, therefore, the value of the hypothetical account balance at normal retirement age and is known as the participant's "accrued benefit." *Id.,* at 437-38 (citing ERISA § 3(23)(A), 29 U.S.C. § 1002(23)(A)).

The Plan *sub judice* offered a 401(k)-style menu of investment selections, with varying degrees of risk and reward. A participant's interest credits were fixed or variable, depending on the market rate of investments the participant selected. *Id.,* at 438. The defendants refer to this feature of the Plan as "investment-experience interest crediting."[2] Parenthetically, the year after Durand's departure, a Plan amendment eliminated investment-experience interest crediting, effective January 1, 2004, and replaced it with interest crediting based on the 30-year Treasury rate.[3]

ERISA provides that a participant who separates from employment usually may choose to receive the accrued benefit in the form of a single-life annuity, which begins payment at normal retirement age, or to receive the accrued benefit in a lump-sum distribution at the time of

---

[2]*Supra*, n1.

[3]Mot. to Dismiss, (DN 51-2) at 2, Ex. C.

departure. *Id.,* at 437. For distributions prior to 2006, cash-balance plans were required to use a "whipsaw" calculation, which, as the name implies, is a two-step process: first, a projection forward to determine the benefit amount at normal retirement age of 65; and second, a discount to present value of that projected amount.[4]

In Durand's "whipsaw claim," the parties dispute what projection rate should have been used to calculate lump-sum distributions. Durand relies on *West v. AK Steel Corp.*, 484 F.3d 395 (6th Cir. 2007), among other authorities, for the claim that the Plan's use of a uniform projection rate in its whipsaw calculation resulted in the forfeiture of benefits in violation of ERISA. Specifically, ERISA requires that a lump sum must be the actuarial equivalent of the normal accrued pension benefit. *Id.,* at 438. This is accomplished if the projection forward includes a "fair estimate" of what the participant's future interest credits actually would have been had she retained a single-life annuity under the Plan. *See id.,* at 438.

Durand contends the Plan's use of a uniform projection rate, the 30-Year Treasury Bill rate, is not a fair estimate of her future interest credits, in light of the Plan feature of investment-experience interest crediting and her investment selections, particularly. In fact, the 30-year Treasury projection rate is equal to the discount rate, which makes the entire exercise a wash – a valid whipsaw calculation must include, in Durand's view, an individualized projection rate.[5] The defendants vigorously defend this claim on the merits, for example, distinguishing features

---

[4]The Pension Protection Act of 2006 effectively eliminated the requirement that cash-balance plans perform a whipsaw calculation for lump-sum distributions made after its effective date. *Durand v. Hanover Ins. Group*, 560 F.3d 436, at 438, n.1 (6th Cir. 2009).

[5]The Sixth Circuit characterized the original whipsaw claim, not as a mere calculation challenge, but as a "claim, just like the claim in *AK Steel*," which is that "[t]he Plan's *terms* ... did not comply with the law." *Durand,* 560 F.3d at 441-42, (quoting *AK Steel*, 484 F.3d at 409 (emphasis added)).

of *AK Steel's* cash-balance plan.  And, the Sixth Circuit noted in Durand's appeal that its discussion expressed no view toward the merits of her whipsaw claim.

– **"First Amended Class Action Complaint"**

In the amended complaint, filed December 11, 2009, Walter Wharton and Michael Tedesco join Durand as individual plaintiffs and representatives of a putative class, seeking relief under ERISA § 502(a), 29 U.S.C. § 1132(a).  Like Durand, Wharton received a lump-sum distribution after separating from employment in February 2005.  Tedesco opted for the single-life annuity after employment separation in March 1999, and remains, at present, as a Plan participant.

The amended complaint also joins claims arising out of the Plan's calculation of benefits that participants earned between January 1, 1995 and January 1, 2004.  In January 1995, Allmerica converted its traditional defined benefit pension plan to the cash balance plan at issue.  January 1, 2004, is the effective date of a Plan amendment which eliminated the investment-experience interest crediting feature.[6]

First, the amended complaint joins Wharton in Durand's original whipsaw claim.  This joinder is not challenged in the pending motion to dismiss.

Next, all three plaintiffs assert a new claim that challenges the method of crediting interest, sometimes referred to as "the interest crediting floor claim," and captioned in the

---

[6]See First Amended Class Action Compl. (hereinafter "Am. Compl.") (DN 46) at ¶¶ 12-16;  Pls' Opposition, (DN 55) at 1 and Ex. C to the Motion to Dismiss (DN 51-2).  According to the plaintiffs, the amended complaint adds "five related claims."  The first claim adds the Wharton as a party-plaintiff to the original whipsaw claim.  The second claim, asserted by all three plaintiffs, adds an unlawful investment crediting claim.  The third claim, asserted by plaintiffs Wharton and Tedesco, adds an unlawful cutback claim.  And, the fourth and fifth claims add a § 204(H) Notice Claim by the new plaintiffs and a fiduciary breach claim.

amended complaint as, "the Unlawful Investment Crediting Claim."[7]  Specifically, the plaintiffs

claim their account balances should have been credited with "the greater of" the returns on their

investment choices or the 30-year Treasury rate.[8]  The plaintiffs contend the Plan's failure to

recognize this floor, the 30-year Treasury rate, constitutes an unlawful forfeiture of accrued

benefits, on the same grounds as the original whipsaw claim.[9]

Next, Plaintiffs Wharton and Tedesco claim that the 2004 Plan amendment, which

eliminated investment-experience interest crediting, constituted an impermissible cut-back of

accrued benefits, in violation of ERISA § 204(g), 29 U.S.C. § 1054(g).[10]  The plaintiffs argue

that because the investment-experience interest credits were a part of each participant's accrued

benefit, the elimination of it by the 2004 Plan amendment resulted in an unlawful forfeiture of

benefits.[11]

Finally, the plaintiffs, Wharton and Tedesco, claim that the Plan did not provide proper

notice of the 2004 Plan amendment and claim breaches of fiduciary duties in relation to the

circumstances of their other claims.[12]

---

[7]Pls' Opposition at 4.

[8]Am. Compl. at ¶¶ 65, 71, 80.

[9]Pls' Opposition at 5.

[10]Am. Compl. ¶ 59.

[11]Pls' Opposition at 6; Am. Compl. ¶¶ 69-71.

[12]Pls. Opposition at 7; Am. Compl. ¶¶ 37, 75-76, 81-82, 86-90.

**II.**

The parties dispute which statute of limitations applies to this action. ERISA contains no limitation period for non-fiduciary claims under Section 502(a)(3).[13] Therefore, federal common law borrows the most analogous state statute of limitations. *DelCostello v. Int'l Bro. of Teamsters*, 462 U.S. 151, 159-60 (1983); *Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190 (6th Cir. 1992).

**A. Which statute of limitations applies?**

The court concludes a five year statute of limitations applies to the non-fiduciary claims in the amended complaint. The Sixth Circuit has held that actions, which are brought in this judicial district, as here, under § 502(a) to recover benefits due under an ERISA plan, are governed by a five-year limitation to "liability created by statute," K.R.S. § 413.120(2). *Redmon v. Sud-Chemie Inc.,* 547 F.3d 531, 535-37 (6th Cir. 2008). In *Redmon*, the Sixth Circuit considered whether, as an issue of first impression, a fifteen-year limitation to contract actions or a five-year limitation to statute liability should apply. After surveying, at length, case law from this and other circuits, the Sixth Circuit held that "statute liability," rather than contract liability, provides the more analogous cause of action to an ERISA claim for benefits. *Id.,* at 537. Again, the Sixth Circuit held that the Kentucky five-year limitation on statutory actions applies to actions for the recovery of benefits due under an ERISA plan, § 502(a). *Redmon,* 547 F.3d at 537.

The plaintiffs argue that *Redmon's* holding has very limited application and that for the

---

[13]Fiduciary claims brought under ERISA § 413 are subject either to a three or six year limitation period. ERISA § 413(2); 29 U.S.C. § 1113; *Wright v. Heyne*, 349 F.3d 321 (6th Cir. 2003).

benefit claims at issue, the most analogous Kentucky statute of limitation is the fifteen-year

limitation for actions on written contracts, KRS § 413.090(2). The plaintiffs argue that unlike

*Redmon*, where the claims stemmed from alleged violations of ERISA's statutory protections,

the plaintiffs, in this case, assert claims which are rooted in common law. They argue the current

claims are more analogous to breach of contract. The court respectfully disagrees.

The court concludes each claim is more properly characterized as arising under ERISA

than as a contract claim rooted in common law. The plaintiffs can point to no contractual

provision, which, standing alone, supports the claim for benefits. The whipsaw calculation, the

interest crediting floor claim, and the cutback claim, specifically, depend on the right to the non-

forfeiture of "ERISA accrued benefits."[14] The amended complaint, itself, contains allegations

that the Plan terms must be construed and interpreted in a manner that is consistent with

ERISA's provisions. For example, the plaintiffs allege that the "'Normal Retirement Accrued

Benefit' is a Plan-defined term that identifies an amount that is *not* a participant's ERISA

"accrued benefit" under the Plan." The plaintiffs further contrast Plan terms with ERISA and

state that as "interpreted and applied by [the defendants], 'Normal Retirement Accrued Benefit'

became a definitional contrivance and supposed basis upon which to calculate benefits based on

each participant's Account Balance rather than the ERISA-defined accrued benefit."[15] The

cutback claim, moreover, stems from what is known as the anti-cutback rule under ERISA

§ 204(g). In the court's view, it is readily apparent in the language of the amended complaint

that these claims are ERISA-based and, thus, not properly subject to Kentucky's fifteen year

---

[14]*See e.g.*, Am. Compl. at ¶¶ 36; The defendants refer to this as the "greater of" interest claim, Mot. to Dismiss at 2.

[15]Am. Compl. at ¶¶ 35-36.

statute of limitation for breach-of-contract.

The plaintiffs also argue *Redmon's* holding should be limited to its facts because any broader ruling would in effect overrule *AK Steel* and offend notions of *stare decisis.* The court respectfully disagrees and observes that the *AK Steel* opinion does not address a time limitation to the filing of a whipsaw claim. *Id.,* at 405. Rather, *AK Steel* offers additional support for the conclusion that the whipsaw and other claims, here, are more analogous to statutory liability, governed under Kentucky's shorter limitation period.[16] In *AK Steel,* which was published the year before *Redmon*, the Sixth Circuit upheld a $46 million award to early retirees in an ERISA class action for the defendants' failure to use a whipsaw calculation in determining the value of their lump-sum distributions. The court reasoned that an improper whipsaw calculation denies the plan participant an accrued benefit under a defined benefit plan (specifically, a fair estimate of future interest credits) as defined in ERISA § 3(23)(A), *id.,* at 400, and in effect required a participant to sell back the pension entitlement to AK Steel at a discount in order to receive the lump-sum payout – again, in violation of ERISA, *id.,* at 409. Just as in *AK Steel*, this court cannot conclude that the claims, here, are essentially plan-based contract claims. Rather, the claims in the amended complaint rise or fall on the contention that the defendants' interpretation and application of the Plan provisions are inconsistent with ERISA's protections.

**B.  When did the claims accrue?**

Whether these claims are time-barred under the five-year limitation period, of course, depends on when these claims accrued and whether the time has since run. The amended complaint was filed in December 2009, and the original complaint was filed in March 2007. "In

---

[16]*See infra*, n.6.

an ERISA case, a cause of action accrues 'when a fiduciary gives a claimant clear and

unequivocal repudiation of benefits.'" *Redmon*, 547 F.3d at 538 (quoting *Morrison v. Marsh &*

*McLennan Cos.*, 439 F.3d 295, 312 (6th Cir. 2006)). "Under the clear repudiation rule, the

fiduciary's repudiation need not be formal. ... Rather, the repudiation alone provides notice to the

claimant. *Id.,* (internal quotation and citation omitted).

### 1. The Interest Crediting Floor Claim

The plaintiffs contend the Plan's failure to recognize the 30-year Treasury rate as a floor

constitutes an unlawful forfeiture of accrued benefits. The defendants argue this claim accrued

no later than 1997, because at that time, the plaintiffs were on clear notice that their interest

credits were calculated without a floor. In 1997, the Summary Plan Descriptions (SPD) – the

principal means of disclosing terms of a benefit plan – alerted that each participant's account

could go up or down because the "Investment Experience" interest "credited to your account will

equal the gains or losses" that would result if the account were invested in the portfolio of

securities selected.[17]

The plaintiffs argue this claim did not accrue until 2007 when the plaintiffs' attorney

discovered their injury. The plaintiffs explain that because the defendant failed to disclose the

Plan's projection methodology, the limitation period did not begin to run until the participants'

actual or constructive discovery of the hidden methodology.[18] Although the SPD controverts the

notion of a interest crediting floor, the plaintiffs argue there was no "clear repudiation" because,

---

[17]Ex. D., Mot. to Dismiss at 2. ERISA requires plan administrators to furnish at specified times and circumstances, each participant an SPD, which is a written summary of the provisions of an employee benefit plan. 29 U.S. C. §§ 1021, 1022, 1024.

[18]Pls' Opposition, (DN 55) at 1-2, 27.

in practice, the projection methodology observed such a floor by calculating the accrued benefit as equal to the current Account Balance projected to age 65 at the 30-year Treasury rate. The plaintiffs argue that the Plan essentially concealed or obscured this methodology.

A curious aspect of the plaintiff's argument is the contention that the existence of the floor was undisclosed. In one sense, the plaintiffs seem to advocate inconsistent claims: first, that the whipsaw calculation should include an individualized projection forward, which could be greater or *less than* the 30-year Treasury rate; second, the projection forward should be individualized only in circumstances where the projection is *greater than* the 30-year Treasury rate. The plaintiffs allege they did not know, until their counsel told them, that the Plan terms "included an implicit floor" – a stance the original whipsaw claim apparently rejects as unlawful under ERISA.[19]

A formal application for benefits is not required for the accrual of an ERISA claim. *Bilello v. JPMorgan Chase Retirement Plan*, 607 F.Supp.2d 586, 594 (S.D.N.Y. 2009). As the Sixth Circuit observed in a fiduciary case, the limitation period could be easily circumvented and meaningless if a plaintiff could delay accrual of an ERISA claim until after consultation with an attorney. *Wright v. Heyne*, 349 F.3d 321, 330-31 (6th Cir. 2003).

The court is not persuaded the SPD's clear repudiation was made unclear when a lump-sum distribution was calculated under the challenged methodology of using a uniform projection rate. The court concludes the 1997 SPD clearly repudiated the interest crediting floor claim by stating that the interest credits were "Investment Experience" – dependent on the gains and losses in the market. Later events did not obscure this disclosure or stop and restart the running

_____

[19]Plas' Resp. (DN 66-2) at 7.

of the limitation period. Because the claim accrued in 1997, it expired five years later, well before the filing of the original complaint in 2007 and the amended complaint in 2009. **The court will therefore grant the motion to dismiss the Interest Crediting Floor Claim as time-barred.** Because the statute of limitations is dispositive, the court need not address whether this claim fails as a matter of law.

## 2. The Cutback Claim

The plaintiffs Wharton and Tedesco claim that the 2004 Plan amendment, which eliminated investment-experience interest crediting, constituted an impermissible cut-back of accrued benefits, in violation of ERISA. On its face, this claim accrued on the effective date of the amendment, January 1, 2004, and expired five years later in January 2009, nearly one year before the filing of the amended complaint.

The plaintiffs argue the new claims are timely because they relate back to the original whipsaw allegations in the original complaint, filed in 2007. The flaw in the plaintiff's relation-back argument is that the doctrine applies to claims, not parties. Rule 15 of the Federal Rules of Civil Procedure provides that an amendment relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party... .

The Sixth Circuit holds that "an amendment which adds a new party creates a new cause

of action and there is no relation back to the original filing for purposes of limitations." *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010).  Because Durand separated from employment before the 2004 Plan amendment, the event giving rise to the cutback claim, the new plaintiffs, Wharton and Tedesco, cannot relate back to Durand's filing of the original complaint.  The plaintiffs argue nonetheless that relation back is appropriate in class action suits, since Wharton, for example, is a class member of the original whipsaw claim.

The defendants counter that the mere fact that the new plaintiffs might happen to belong to Durand's broadly-defined original whipsaw claim class does not mean that their entirely new cutback claims also relate back to the original complaint.  The court agrees and concludes that Rule 15 and *Asher* do not authorize relation back, despite the plaintiffs' argument in support of a class action exception.  **The court will therefore grant the motion to dismiss the cutback claims.**  Because the statute of limitation is dispositive of this claim, it is not necessary to consider whether the amended complaint sufficiently states this claim as a matter of law.

## C.  The Improper Notice Claim

The plaintiff argues the notice claim, arising under § 204(h) in connection with the 2004 Plan amendment, is timely for the same reasons the cutback claim is timely.  Because the court has concluded that relation back is not available to claims asserted by new parties, the court must likewise conclude the notice claim is time-barred.  **Therefore, the court will grant the motion to dismiss the notice claims.**

## D.  The Fiduciary Claim

The plaintiffs state the amended complaint adds a fiduciary claim in order to enjoin the Plan Administrator from participating in any recalculation of benefits.  The plaintiffs describe

the breach of fiduciary duty, generally, as malfeasance on the part of the Plan Administrator who allegedly failed to understand how to calculate benefits under the Plan, and breached a fiduciary duty to second-guess whether Plan provisions, specifically, the investment crediting and projection provisions, were consistent with ERISA.[20]

The defendants contend the fiduciary claims are redundant of the underlying claims in the amended complaint and are time-barred. ERISA contains a three-year limitation on fiduciary claims, or a six-year limitation in cases of fraud or concealment. ERISA § 413, 29 U.S.C. § 1113. ERISA provides that the statute of limitation begins to run on "the earliest date the plaintiff had actual knowledge of the breach or violation." *Id.* The Sixth Circuit has articulated a broad definition of "actual knowledge." In *Wright v. Heyne*, the Sixth Circuit stated:

> [T]he relevant knowledge required to trigger the statue of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute.

349 F.3d 321, 331 (6th Cir. 2003).

The defendants argue that all the alleged breaches of fiduciary duty occurred prior to 2003. The pivotal question, however, is whether the plaintiffs had actual knowledge of the facts constituting the alleged violation or whether, absent actual knowledge in cases of fraud or concealment, their claims were filed within six years of the breach or violation. *Id.,* at 327.

The court concludes the three year limitation period applies because the plaintiffs had actual knowledge of underlying facts much sooner than 2007, when the plaintiffs claim their counsel informed them of the Plan Administrator's allegedly hidden calculations. *See Wright v.*

---

[20]Pls' Opposition at 46-47.

-14-

*Heyne,* 349 F.3d at 331 (rejecting argument that the plaintiff had actual knowledge only after consultation with an attorney).

Durand received a lump-sum distribution in 2003, a transaction that provided actual knowledge of Plan Administrator's projection forward calculation. The three-year limitation, therefore, expired in 2006, before the filing of the original complaint in 2007. Any fiduciary claim related to Durand's whipsaw claim is time-barred.

Wharton received a lump sum distribution in February 2005, in a transaction, like Durand's, that provided actual knowledge of the Plan Administrator's projection forward and investment crediting calculations. Unlike Durand, Wharton had actual knowledge on a date earlier than his lump-sum distribution. According to the amended complaint, in December 2003, the Plan notified participants that a Plan amendment, effective January 1, 2004, would eliminate investment-experience interest crediting.[21] This notification provided Wharton, and Tedesco for that matter, with actual knowledge of any breach of fiduciary duty related to the whipsaw claim and the cutback claim in December 2003. Thus, the fiduciary limitation period expired in December 2006, well before the filing of the amended complaint.

Finally, the interest crediting floor claim arises from events in 1997, when a SPD introduced Investment Experience interest crediting and allegedly violated ERISA by eliminating the 30-year Treasury rate as a floor. The plaintiffs had actual knowledge of the underlying facts of this claim when the 1997 SPD disclosed that the Plan employed investment-experience interest crediting rather than an interest floor.[22] Thus, any related fiduciary claim

---

[21]Am. Compl. ¶¶ 57-59; Ex. C, Mot. to Dismiss.

[22]Ex. D, Mot. to Dismiss.

expired three years later, or clearly before the filing of the original complaint in 2007 and the amended complaint in 2009.

**The court will therefore grant the motion to dismiss the fiduciary claims.** Because the statute of limitations is dispositive, the court need not address whether this claim fails as a matter of law.

### III.

In conclusion, the court will dismiss the additional claims in the amended complaint as time-barred. The claims remaining in this action, therefore, are the original whipsaw claims of the plaintiff Durand with the joinder of the plaintiff Wharton.

Accordingly,

**IT IS HEREBY ORDERED** that the partial motion to dismiss the First Amended Class Action complaint (DN 51) is **GRANTED.**

**IT IS FURTHER ORDERED** that the motions (DN 66, 69) for leave to file supplemental pleadings are **GRANTED**.

DATE:

Copies to counsel of record