UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JENNIFER A. DURAND, et al.                                                           PLAINTIFFS

v.                                                              CIVIL ACTION NO. 3:07-CV-130-JDM

THE HANOVER INSURANCE
GROUP, INC., et al.                                                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a motion for class certification, and related issues, and on a defense motion for partial summary judgment. The plaintiffs, Jennifer Durand and Walter Wharton, file suit as former employees of the defendant, Hanover Insurance Group, Inc., and as participants in Hanover's pension plan, The Allmerica Financial Cash Balance Pension Plan, which is also named as a defendant. The plaintiffs allege the defendants used an unlawful methodology in calculating their lump-sum distributions received on separation from employment, resulting in an underpayment of their accrued retirement benefits, which they seek to recover pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

The plaintiffs seek certification of an overall class and two subclasses of plan participants who received early lump-sum distributions of their retirement benefits between 1997 and 2006. The defendants do not oppose certification, with certain caveats, and have tendered a joint proposed order. The defendants do challenge, however, the legal basis of claims asserted by the putative subclass represented by Wharton, as well as his individual claims, in a motion for partial summary judgment. The defendants argue that because the plan, as amended in 2004, falls within a recognized legal safe harbor, the Wharton subclass members are not entitled to greater lump-sum

distributions. For reasons stated below, the court concludes the motion for partial summary judgment is well taken and will dismiss Wharton's individual claims. Therefore, the court will order certification of the class, as agreed, with the exclusion of the Wharton subclass.

**I.**

**A. The Plan and Putative Class Members**

The plaintiffs seek certification of a class of plan participants, who received lump-sum distributions between March 1, 1997 and August 17, 2006. This overall "lump-sum class" is represented by Durand. The lump-sum class is further comprised of two subclasses, which are delineated according to the plan amendments of March 1997 and January 2004. Subclass A, represented by Wharton, received lump-sum distributions between January 1, 2004 and August 17, 2006. Subclass B, represented by class member, James A. Fisher, received lump-sum distributions between March 1, 1997 and March 12, 2002.

The defendant plan is a variety of a defined benefit plan, known as a cash balance plan. *Durand v. Hanover Ins. Group, Inc.*, 560 F.3d 436 (6th Cir. 2009). A cash balance plan is a hybrid of a defined benefit plan, which provides a benefit in the amount equal to a specified percentage of an employee's salary in the final years of employment, and a contribution plan, which provides a benefit in the amount of contributions. *See West v. AK Steel Corp.*, 484 F.3d 395, 399 (6th Cir. 2007). Participants in a cash balance plan accrue a "benefit" payable at normal retirement age (age 65), a benefit which is attributable to credits based on both compensation and interest.

Specifically, a cash balance plan creates a hypothetical account for each participant who earns allocations, called "pay credits," and earnings, called "interest credits," according to terms set forth in the plan. *Durand*, 460 F.3d at 437. The pay credits are based on years of employment,

2

and the interest credits are based on plan terms. The hypothetical account is, therefore, much like a traditional Internal Revenue Code 401(k) account, but merely resembles actual contributions and earnings under a defined benefit plan. *Id.*; *Lyons v. Georgia-Pacific Corp.*, 221 F.3d 1235, 1238 (11th Cir. 2000).

At the time of employment separation under a cash balance plan, a participant's pay credits naturally cease, but a participant will continue to earn interest credits until the normal retirement age of 65. In lieu of receiving a single life annuity, a separating employee can usually elect to receive an early lump-sum distribution. The lump-sum distribution, however, "must be valued in terms of the annuity that it will yield at normal retirement age and ... it must be worth at least as much as that annuity." *Esden v. Bank of Boston*, 229 F.3d 154, 163 ($2^d$ Cir. 2000).

In the cash balance plan at issue, a participant's account balance was adjusted periodically to reflect employer contributions for time worked, "pay credits," and for "interest credits" on the account balance.[1] All these contributions are hypothetical, and do not represent a deposit of money into an actual investment account for the participant. The current dispute centers on the plan's interest crediting rate, which was amended in March 1997 and again in January 2004. Prior to the 2004 change, the interest crediting rate was equal to the rate of return generated from the investment allocation selected by each participant from among a 401(k)-style menu. In the January 1, 2004 amendment, the plan discontinued this investment-experience crediting in favor of the 30-year Treasury rate as set forth in Section 417(e) of the Internal Revenue Code.[2] No longer could participants elect the risks and rewards presented by equity markets.

The plaintiffs allege the 2004 plan amendment reduced the interest crediting rate because

---

[1] Defs.'Mem. in Supp. of Mot. for Summ. J. at 2.
[2] *Id.*

the projected rate of return under the plan's 401(k) menu, i.e., the investment-experience crediting rate, was greater than the 30-year Treasury rate.[3] Put another way, the 2004 amendment forced participants into a situation where they received a conservative, lower rate of return.

**B. Plaintiff Wharton, Individually**

The plaintiffs allege that Wharton retired early, at age 59, and requested a lump-sum distribution of his entire pension benefit in 2005. The plan paid him the balance of his hypothetical account, $10,297.45, on or about May 1, 2005, having calculated Wharton's interest credits at the 30-year Treasury rate under the 2004 plan amendment. The plan did not separately calculate interest credits allocated before 2004 under the plan's investment-experience crediting rate – a rate lowered to the 30-year Treasury rate by the plan amendment in 2004. Because the defendants did not value and include the benefits attributable to projected investment credits related to pre-2004 pay credits at the 401(k) menu rate, the plaintiffs' claim, the defendant's failure to conduct this split calculation resulted in the plan understating Wharton's lump-sum distribution.

## II.

The plaintiffs claim the lump-sum distribution of an amount equivalent to Wharton's hypothetical account balance, and the plan's failure to apply the investment-experience crediting rate to pre-2004 allocations of interest credits in calculating lump-sum distributions to the Wharton subclass members, resulted in an unlawful forfeiture, under 29 U.S.C. §§ 1053, 1054. This unlawful methodology, the plaintiffs further claim, constitutes a breach of fiduciary duty, 29 U.S.C. § 1104. In their motion for partial summary judgment, the defendants argue Wharton's lump-sum distribution complied with ERISA, and related authorities, and that the Wharton

---

[3] Pls.' Opp'n to Defs.' Mot. for Summ. J. at 5 (DN 84).

subclass members have no statutory right to an amount greater than the hypothetical account balance. The forfeiture and fiduciary claims, the defendants argue, therefore, fail as a matter of law.

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The pivotal issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The basic question presented is whether the lump-sum distribution equal to Wharton's hypothetical account balance satisfies ERISA's technical provisions, and particularly the benefit accrual requirements, 29 U.S.C. § 1054(b)(1)(A)-(C). ERISA defines "accrued benefit" as the benefit "expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(A). ERISA further provides that a lump sum may be immediately distributed if, among other conditions, the lump sum is calculated as the present value of the accrued benefit. 29 U.S.C. § 1053(c)(3) (stating that if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age, the employee's accrued benefit shall be "the actuarial equivalent of such benefit... ."). To distribute a lump-sum benefit (before changes in the law in 2006), these provisions required ERISA plans to calculate what the hypothetical account balance would be at normal retirement age under the plan and then discount

5

that amount to present value at the date of distribution using approved mortality tables and interest rates.[4] *West*, 484 F.3d at 399-401 (citing I.R.S. Notice 96-8, 1996-1 C.B. 359).

The Court of Appeals for the Sixth Circuit has addressed whether early retirees were paid less than the full accrued benefit because they elected to receive it as a lump sum rather than a traditional annuity. *West v. AK Steel Corp.*, 484 F.3d 395, 399 (6th Cir. 2007). As the Sixth Circuit observed, ERISA's provisions were premised initially on the notion that a defined benefit plan would provide an annuity beginning at the normal retirement age of 65 – a bias which created unusual complexities in ERISA enforcement in cash balance plans, which were later introduced to pay an accrued benefit at the time a participant separated from employment rather than the normal age of retirement. *Id.,* at 401. Typical of cash balance plans, the AK Steel plan enabled employees to "cash-out" their hypothetical accounts at employment separation but also defined their accrued benefits as equal to the participant's account balance. To avoid a statutory violation by underpaying the equivalent of an annuity benefit, the Sixth Circuit held that the accrued benefit was not the lump-sum distribution (i.e., the hypothetical account balance), and that instead ERISA required the cash balance plan to use an actuarial calculation, the so-called "whipsaw" calculation, to determine the accrued benefit amount. *Id.,* at 409.

The Sixth Circuit relied, in part, on IRS Notice 96-8, which describes the whipsaw effect resulting in an unlawful forfeiture: when the plan's interest crediting rate is higher than the present value discount, the accrued benefit in the form of a lump-sum distribution will be greater than the

---

[4] These changes are codified in the Pension Protection Act of 2006, effective August 17, 2006 – the end date defining the proposed class of participants who received lump-sum distributions. The PPA created special rules so that a cash-balance plan would not be treated as failing to satisfy ERISA solely because it values an accrued benefit as the balance in a participant's hypothetical account for distributions made after its effective date. *West,* 484 F.3d at 401-02 (citing PPA § 701(a)(2)).

6

hypothetical account balance. *Id.,* at 400-01; *see also Lyons*, 221 F.3d at 1235 (The Eleventh Circuit stating that the participant's account balance understated the accrued benefit at early employment separation because the plan's interest crediting rate was higher than the 30-year Treasury rate); *Esden*, 229 F.3d at 162 (The Second Circuit stating that a plan's provision for a 4% crediting rate specific to lump-sum distributions violated statutory and regulatory anti-forfeiture requirements, including the "authoritative" interpretation given in IRS Notice 96-8 because the plan's regular interest crediting rate exceeded the discount rate).

In the motion for partial summary judgment, the defendants establish there is no whipsaw effect under the 2004 plan amendment.[5] Under IRS Notice 96-8, an ERISA plan may avoid whipsaw forfeiture in lump-sum distributions if the plan uses an interest crediting rate which is no greater than the approved rates, e.g., 30-year Treasury rate. I.R.S. Notice 96-8, 1996-1 C.B. 359. The 2004 plan amendment substitutes the 30-year Treasury rate for the investment-experience rate as the plan's interest crediting rate for lump sums distributed after 2003. There is no dispute that when Wharton's lump sum was distributed, the interest crediting rate was equal to, not greater than, the discount rate. The defendants argue that because the plan, as amended in 2004, satisfies this regulatory safe harbor, IRS Notice 96-8, *cf. West*, 484 F.3d at 395; *Lyons*, 221 F.3d at 1235; *Esden*, 229 F.3d at 154, the hypothetical account balance, as a matter of law, accurately reflects Wharton's accrued benefit.

The plaintiffs attack the premise that the 2004 plan amendment substituted a new interest crediting rate to be used for a lump-sum benefit distributed after 2003 and contend that the stream of future interest credits that accrued before 2004 must receive a pre-2004 (higher) interest

---

[5] *E.g.*, Defs.' Reply at § II.A. (DN 86).

crediting rate. A forfeiture results, the plaintiffs argue, if the lump-sum distribution fails to include a split calculation for both pay credits allocated before and after January 1, 2004. The 1997 plan governs the interest crediting rate, even for lump sums distributed after 2003 (under the 2004 plan amendment), the plaintiffs argue, because the applicable interest rate necessarily is the rate in effect at the time the pay credit is made.

The plaintiffs reason that the split calculation is a necessary conclusion because a cash balance plan is "frontloaded," meaning, a participant accrues future interest credits even after employment separation. *Lyons*, 221 F.3d at 1238. As such, future interest credits are part of a participant's accrued benefit. *Berger v. Xerox Corp.*, 338 F.3d 755, 761 (7th Cir. 2003). The plaintiffs argue that because interest credits are an accrued benefit, the right to future interest at a given rate, once earned, cannot be reduced, ERISA § 411(b)(1)(G) (accrued benefits cannot be reduced); Treas. Reg. § 1.411(a)-4 (right to future interest is not contingent, e.g., on reaching retirement age); or there is an impermissible forfeiture.[6] In other words, once a pay credit was made, a participant's right to receive interest credits on that pay credit was locked in, the plaintiffs argue, because it is a frontloaded plan; and, the future interest credits at the stated rate in effect at the time of the pay credit became a part of the participant's indefeasible "accrued benefit." The plaintiffs argument includes citation to IRS Notice 96-8, with emphasis added: "[I]n the case of a frontloaded interest credit plan, the benefits attributable to future interest credits with respect to a hypothetical allocation *accrue at the same time* that the benefits attributable to the hypothetical allocation accrue." 1996-1 C.B. 359, at III.A.

The plaintiffs conclude that the plan understated Wharton's accrued benefit by failing to

---

[6] See Pls.' Opp'n at 7.

project interest credits with a split rate, and that the pre-2004 rate, which is greater than the 30-year Treasury rate, thus, renders the safe harbor inapplicable and the ERISA requirements for cash balance plans unsatisfied, resulting in an unlawful forfeiture.

The defendants counter that the methodology plaintiffs now propose simply repackages the time-barred cutback claim.[7] On a motion to dismiss, this court ruled that under a borrowed, state five-year statute of limitation barred Wharton's claim that the 2004 plan amendment violated ERISA's anti-cutback rule, § 1054(g), by reducing the interest-crediting rate, as accrued.[8] This court also concluded that the related fiduciary claim ran afoul of the ERISA statute of limitation. With these claims, the plaintiffs challenged the discontinuance of the investment- crediting, or the 401(k) menu rate, specifically, as it applied to accrued, future interest crediting.[9] Today, the plaintiffs allege that an unlawful forfeiture of Wharton's accrued benefit occurred because the plan calculated future interest credits at the 30-year Treasury rate for pay credits allocated to Wharton's account *before and after* the interest crediting rate was amended effective January 1, 2004.

The defendants argue, correctly in the court's view, that although barred from raising the original cutback claim, the plaintiffs now seek to rely on the same cutback argument stated in the guise of a whipsaw claim. The defendants underscore that no cases have validated or suggested a split calculation for lump-sum distributions. The court further concludes, after thorough review, that IRS Notice 96-8 fails to contemplate a situation, involving plan amendments, fitting the plaintiff's proposed methodology. The case law discussed in this opinion and the parties' briefs,

---

[7] *See* Memorandum and Order (DN 78).
[8] *Id*. The Rules of Decision Act, 28 U.S.C. § 1652, essentially requires federal courts to borrow state time limitations when Congress has failed, as in ERISA for private suits to recover benefits due, to provide a statute of limitations. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991) ("This practice, derived from [the RDA] has enjoyed sufficient longevity that we may assume that, in enacting remedial legislation, Congress ordinarily intends by its silence that we borrow state law." (internal quotation omitted)).
[9] *Id.*

e.g., *West*, *Lyons*, *Esden*, *Berger*, moreover, address whipsaw and accrual claims of plaintiffs who immediately challenged the plan provisions at issue, apparently obviating any time-bar defense. Thus, the court concludes the plaintiff's proposed methodology, i.e., calculating lump-sum distributions for accounts having interest credits which saddle the 2004 plan amendment with a split stream of interest crediting, is invalid because plaintiffs' theory would circumvent the dismissal of the cutback claim, and related fiduciary claims, and create a remedy in perpetuity in disregard of ERISA's applicable statutes of limitations.

In addition, the court concludes that enforcement of the 2004 plan amendment and the defendant's methodology for calculating Wharton's lump sum is consistent with ERISA's frontloading and actuarial equivalence provisions. First, the plaintiffs' claimed methodology, in the court's view, is not necessitated by ERISA's policy of frontloading benefits in cash balance plans. ERISA enacted minimum vesting standards for defined benefit plans to prevent backloading benefits to near-retirement age. *Esden,* 229 F.3d at 167, n.18 (explaining that ERISA's frontloading requirements "regulate the rate at which benefits may accrue under a plan, [and that] they do so to prevent the plan from designing accrual schedules that circumvent the vesting rules by providing that the great preponderance of benefits accrues only in the last years of employment"). Internal Revenue Service regulations clarify how various benefit formulas either pass or fail the minimum benefit accrual tests. ROBERT RACHAL, ET AL., CASES AND ISSUES IN CASH BALANCE PLAN LITIGATION, 22 Lab. Law. 19, 26-27 (Summer, 2006). Moreover, ERISA provides that, in this context, "any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years." *Id.*; *see e.g., Lonecke v. Citigroup Pension Plan*, 584 F.3d 457 (2$^d$ Cir. 2009). There is no evidence to suggest the defendant plan, itself, before

10

or after the 2004 amendment, fails to meet ERISA's frontloading criteria.

Second, calculating future interest credits requires reaching a "fair estimate" of what the participant's future interest credits actually would have been had the participant retained a single-life annuity under the plan. *See West*, 484 F.3d at 438; *Berger*, 338 F.3d at 760-61 (stating that even as the accrued benefit includes interest credits, determining the present lump-sum equivalent of a pension benefit swelled by those credits requires estimating their value as of the date of employment separation). The IRS Notice 96-8, which is intended to provide guidance to avoiding whipsaw forfeiture, describes when a lump-sum distribution in an amount equal to the hypothetical account balance satisfies ERISA as the very situation the 2004 plan amendment introduced: an interest crediting rate that is no greater than the discount rate, which means the present value of the lump-sum distribution will not exceed the hypothetical account balance.

The court concludes the plan, as amended in 2004, governs lump sums distributed after 2003 and that participants are bound by its terms, including the interest crediting rate. Because the methodology for calculating Wharton's lump-sum distribution did not violate the requirements of ERISA, the defendants are entitled to judgment as a matter of law as to Wharton's damages claim. The court further concludes the related breach of fiduciary duty claims are dependent on the unlawfulness of the Wharton's lump-sum distribution and that, therefore, the defendants are entitled to partial summary judgment on the fiduciary claims as well.

The court concludes there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law on the claims asserted by Wharton, individually, as well as the claims of the Wharton subclass.

The court being sufficiently advised,

**IT IS HEREBY ORDERED** that the defendants' motion for partial summary judgment (DN 82) is **GRANTED** and the claims of plaintiff Walter J. Wharton, and the prospective class members he represents, are **DISMISSED** with prejudice, there being no genuine issue of material fact and the defendants being entitled to judgment as a matter of law;

**IT IS FURTHER ORDERED** that the plaintiffs' motion for certification (DN 97) is **GRANTED**, in part, consistent with the court's memorandum opinion entered this date. Counsel shall jointly file a revised order certifying classes, claims and defenses, and appointing class counsel (DN 99-1) **within 20 days of the date of this order**;

**IT IS FURTHER ORDERED** that a telephonic conference is scheduled on **October 23, 2013, at 11:00 a.m., prevailing local time,** for the purpose of a Rule 16 conference. The court will initiate the call and advise counsel that **cell phone participation is not permitted**.

DATE:


cc: Counsel of Record