UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:07-CV-00130-HBB

**JENNIFER A. DURAND,**
**On behalf of herself and on**
**Behalf of all others similarly situated**                                      **PLAINTIFFS**


**VS.**


**THE HANOVER INSURANCE GROUP, INC.,**
**And THE ALLMERICA FINANCIAL CASH**
**BALANCE PENSION PLAN**                                                         **DEFENDANTS**


## MEMORANDUM, OPINION AND ORDER

### BACKGROUND

Defendants have filed a motion for limited reconsideration of the Court's October 17, 2016 Order on Plaintiffs' motion to compel (DN 212[1]).  Plaintiffs have filed a memorandum in opposition (DN 214 SEALED).  Defendants have filed a reply in support of their motion (DN 215).  This matter is ripe for determination.  For the reasons stated below, the Court denies Defendants' motion for a limited reconsideration of the October 17, 2016 Order.

### NATURE OF THE MOTION

In a Memorandum, Opinion, and Order ("Order") entered on October 17, 2016 (DN 209), the Court granted in part and denied in part Plaintiffs' Motion to Compel Production of Allegedly Privileged Documents and Submission of More Complete Logs (DN 168, 169 SEALED).  Further, the Court ordered Defendants to produce a number of documents, including

---

[1] Defendants have submitted directly to the undersigned the documents at issue for *in camera* review.

HanoverPriv0110 (pages 1-6[2]), HanoverPriv0187, HanoverPriv0188, HanoverPriv0189, HanoverPriv0190, HanoverPriv0191, and PwCPriv0060 (DN 209 at 46). These documents memorialized discussions that occurred during meetings on April 24, April 25, May 16, and May 17, 2002.

In their motion for limited reconsideration of the Order, Defendants assert that the Court committed clear error when it found that HanoverPriv0110 (pages 1-6), HanoverPriv0187, HanoverPriv0188, HanoverPriv0189, HanoverPriv0190, HanoverPriv0191, and PwCPriv0060 were subject to production under the fiduciary exception, because Barbara Rieck[3], the Plan administrator, was present for these discussions (DN 212 at 2-7). More specifically, Defendants assert there is no indication that Ms. Rieck attended the May 16, 2002 meeting memorialized in HanoverPriv0110 (pages 1-4) (Id.). Defendants also assert that the Court failed to consider the context and content of the discussions memorialized in these documents (Id.). Defendants argue that each of the documents clearly reflects legal advice from in-house and/or outside counsel concerning potential plan amendments, which is a plan sponsor or settlor function, not a fiduciary function (Id.). Thus, claim Defendants, HanoverPriv110 (pp. 5-6), HanoverPriv187 - HanoverPriv191 and PwCPriv60 memorialize meetings where Ms. Rieck was wearing her settlor hat, not her fiduciary hat (Id.).

More specifically, Defendants contend that HanoverPriv0110 (pages 5-6), HanoverPriv0188-HanoverPriv0191, and PwCPriv60 memorialize the April 24 and 25, 2002

---

[2] HanoverPriv0110 actually contains notes from three different meetings. Pages 1-4 memorialize discussions during a May 16, 2002 meeting; pages 5-6 reflect discussions during an April 24, 2002 meeting; and pages 7-8 memorialize discussions during an October 14, 2002 meeting. The Court ordered Defendants to produce pages 1-6 because those notes are protected by the attorney-client privilege but subject to the fiduciary exception (DN 209 at 39-41, 46). The Court ordered Defendants not to produce pages 7-8 because those notes are protected by the attorney-client privilege and not subject to the fiduciary exception (DN 209 at 41).

[3] Defendants point out that Barbara Rieck was the Manager of Retirement Services at Allmerica, Hanover's predecessor, and her responsibilities included plan administration (DN 212 at 2).

meetings among Hanover in-house counsel Jack Joyce, Hanover employees Ms. Rieck and Mr. Claudio, and representatives from PricewaterhouseCoopers, Allmerica's consultant on pension issues (Id.). Defendants acknowledge that the meetings covered the Office of Inspector General ("OIG") report, issued on March 29, 2002, and potential plan amendments (Id.). Defendants argue that the discussions about potential plan amendments, a settlor function, should be redacted[4] before the documents are produced to Plaintiffs (Id.).

Defendants assert that HanoverPriv0110 (pages 1-4) memorializes the May 16, 2002 meeting among in-house counsel Jay Huber and Jack Joyce, and outside counsel Roger Siske and Les Klein from the Sonnenschein, Nath and Rosenthal law firm (Id.). Defendants contend that the entire document should not be produced because it reflects attorney discussions about potential plan amendments, a settlor function (DN 212 at 4). Alternatively, Defendants contend because there is no indication that Barbara Rieck participated in this meeting, the document should not be subject to the fiduciary exception (Id.).

Defendants assert that HanoverPriv0187 reflects the May 17, 2002 meeting among in-house counsel Jack Joyce and Hanover employees Barbara Rieck and Charles Claudio (Id.). Defendants argue the entire document should not be produced because it memorializes Mr. Joyce's discussion of the privileged plan amendment meeting that he had with outside counsel on May 16, 2002 (DN 212 at 4-5).

In sum, Defendants argue the Court made a clear error because Ms. Rieck's presence at those meetings did not make these seven documents memorializing privileged plan amendment discussions, a settlor activity, subject to production under the fiduciary exception to the attorney-client privilege (Id.). Defendants propose that HanoverPriv0110 (pages 5-6), HanoverPriv0188-

---

[4] With regard to HanoverPriv0110 (pages 5-6), HanoverPriv0188, HanoverPriv0189, HanoverPriv0190, HanoverPriv0191, and PwCPriv60 submitted for *in camera* review, Defendants have identified the material they believe should be redacted before the documents are produced to Plaintiffs.

HanoverPriv0191, and PwCPriv60 should be produced with the settlor function information redacted, and that Hanover0110 (pages 1-4) and Hanover0187 should be withheld entirely (Id.).

Plaintiffs assert that these seven documents memorialize discussions about the March 29, 2002 OIG report that occurred during Allmerica meetings on April 24, April 25, May 16, and May 17, 2002 (DN 214 at 2, SEALED). Plaintiffs point out that all four meetings occurred prior to the May 21, 2002 article in the Boston Globe that identified Allmerica as one of the 13 plans referred to in the OIG's report (Id.). Plaintiffs contend the dates of the seven documents are significant because the Court's Order "said in no uncertain terms that 'the Court concludes that under the fiduciary exception, the Plan beneficiaries are entitled to documents generated between March 29, 2002 and May 20, 2002 that have been withheld on claim[s] of attorney-client privilege and work product protection'" (Id. at 3 quoting DN 209 at 40). Plaintiffs assert that the law is well settled. To overcome the fiduciary exception, a dual-hatted employer like Allmerica must demonstrate that the documents at issue "solely concern nonfiduciary matters" (Id. at 4). Plaintiffs argue to the extent there was legal advice about a possible plan amendment, that advice was related to how Allmerica could fix the administrative problem caused by the current plan terms, which means the discussions were not exclusively settlor in nature (Id. at 3, 5). Plaintiffs contend Allmerica provides no basis for finding that the Court erred when it ordered Defendants to produce the seven documents (Id. at 6).

Alternatively, Plaintiffs argue Defendants should not be allowed to seek reconsideration as to HanoverPriv0110 and PwCPriv60 because Defendants' privilege log entries do not mention legal advice about possible or actual plan amendments (Id. at 7). Further, Plaintiffs assert it is doubtful that the other five documents "necessarily discuss plan amendments or solely plan amendments at all - as opposed to alternative *interpretations* of existing plan terms" (Id.

4

emphasis in original). In support of this assertion, Plaintiffs point out Defendants acknowledged in a footnote that the word "amendment" does not appear in each of the documents (Id.). Additionally, Plaintiffs contend Defendants must "show that the legal advice concerned a *discretionary* amendment rather than an amendment required by law - an insurmountable hurdle given the facts here because, if any amendments were under discussion, they were clearly amendments required to bring the Plan into compliance with the law - amendments which are not covered by the settlor privilege" (Id. at 7-8). Plaintiffs also question the redactions that Defendants have made to three documents (HanoverPriv0110, HanoverPriv0190, and HanoverPriv0191) memorializing the same April 24, 2002 meeting because the redactions are in different locations on each document (Id. at 8-9). Finally, citing the joint client exception to the attorney-client privilege, Plaintiffs argue that Allmerica waived any claim of sponsor privilege because Allmerica did not use separate counsel when it acted as plan sponsor versus when it acted as plan fiduciary (Id. at 9).

In their reply memorandum, Defendants encourage the Court to evaluate the nature of the activities at issue in each document, as opposed to merely looking at the identity of the individuals involved (Id. at 3-4). Defendants assert that "[t]he plan design options discussed in the documents at issue were not options for *interpreting* current plan terms; they were options for *amending* the plan terms themselves" (Id.). Defendants encourage the Court to scrutinize carefully the options discussed in the meetings at issue and find that HanoverPriv0110 pages 5-6, HanoverPriv0188-HanoverPriv0191, and PwCPriv60 may be produced with redactions of the settlor function information, and allow HanoverPriv0110 pages 1-4 and HanoverPriv0187 to be withheld entirely (Id. at 4-5).

Defendants assert that both the Sixth Circuit and this Court have rejected the "solely concern[ing] nonfiduciary matters" standard that Plaintiffs rely on to argue all of the documents should be produced (Id. at 5 citing Moss v. Unum Life Ins. Co., 495 F. App'x 583, 596 (6th Cir. 1999) and DN 209 at 28). Defendants contend they properly designated these documents as attorney-client privileged in their privilege logs, and, therefore, Plaintiffs cannot genuinely claim that this motion represents the "very first time" Defendants have made these claims with respect to HanoverPriv0110 and PwCPriv60 (Id. at 6). Defendants argue that absence of the word "amendment" in each of the documents is not critical because the options discussed during those meetings could only be accomplished through a plan amendment, not by simply interpreting the plan terms differently (Id.). Defendants point out that the DOL opinion and the district court case cited by Plaintiffs actually support Defendants' contention that the discussions of plan amendments here constitute a settlor, not administrative, activity (Id. at 7-8). Defendants refute Plaintiffs' assertion about variations in the redactions by pointing out the Court's *in camera* review of the documents will reveal there are no inconsistent redactions in the documents at issue (Id. at 9).

### DISCUSSION

Reconsideration of Interlocutory Orders

District courts possess the inherent power to reconsider their interlocutory orders and modify or rescind those orders prior to entry of a final judgment. Mallory v. Eyrich, 922 F.2d 1273, 1282 (6th Cir. 1991) (citing Marconi Wireless Tel. Co. v. United States, 320 U.S. 1, 47-48 (1943); Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 88 (1922)). Moreover, in pertinent part, Rule 54 states that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to

6

any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Together the common-law authority and Rule 54(b) give district courts the power to revisit their interlocutory orders. Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x. 949, 959 (6th Cir. 2004).

The Order entered on October 17, 2016 (DN 209) is an interlocutory order because it adjudicated a discovery dispute between the parties. See Albritton v. CVS Caremark Corp., No. 5:13-CV-218-TBR-LLK, 2015 WL 6942498, at *1 (W.D. Ky. Nov. 10, 2015) (order deciding a discovery dispute is interlocutory). Therefore, the Court has the power to revisit its ruling regarding the documents at issue.

## The Applicable Standard

Traditionally, courts have found "justification for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P., 590 F.3d 381, 389 (6th Cir. 2009) (quoting Rodriguez v. Tenn. Laborers Health & Welfare, 89 F. App'x 949, 959 (6th Cir. 2004)). Further, courts possess "significant discretion" when they review interlocutory orders. Albritton, 2015 WL 6942498, at *2; Rodriquez, 89 F. App'x at 959 n. 7.

Notably, a motion to reconsider under Rule 54(b) may not "serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration [is] sought." Owensboro Grain Co., LLC v. AUI Contr., LLC, No. 4:08CV-94-JHM, 2009 U.S. Dist. LEXIS 18025, at *6 (W.D. Ky. Mar. 10, 2009) (quoting Jones v. Casey's Gen. Stores, 551 F. Supp. 2d 848, 854-55 (S.D. Iowa 2008)).

Further, "[m]otions for reconsideration are not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier." Ne. Ohio Coal. for Homeless v. Brunner, 652 F. Supp. 2d 871, 877 (S.D. Ohio 2009). Additionally, "[t]he moving party has the burden of showing that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied." Pueschel v. Nat'l Air Traffic Controllers' Ass'n, 606 F. Supp. 2d 82, 85 (D.D.C. 2009).

The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389, (1981) (citations omitted). The aim of this privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." 449 U.S., at 389; Hunt v. Blackburn, 128 U.S. 464, 470 (1888).

Here, Defendants argue the Court made a clear error when it determined the documents at issue should be produced to Plaintiffs because they are subject to the fiduciary exception to the attorney-client privilege. Because the attorney-client privilege is fundamentally important to our system of justice, the Court will reconsider its interlocutory order with regard to the documents at issue. Notably, the parties agree that the attorney-client privilege applies to each of the documents at issue. Therefore, the question before the Court is whether these documents are subject to the fiduciary exception to the attorney-client privilege.

## The Fiduciary Exception

A number of circuit courts have recognized the fiduciary exception to assertions of attorney-client privilege by ERISA fiduciaries. Solis v. Food Emp's Labor Relations Ass'n, 644 F.3d 221, 227 (4th Cir. 2011) (survey of opinions from the second, third, fifth, seventh, and ninth

circuits). Essentially, the circuits have relied on two related rationales when applying the fiduciary exception in the context of ERISA. Id.; United States v. Mett, 178 F.3d 1058, 1063 (9th Cir. 1999). "[S]ome courts have held that the exception derives from an ERISA trustee's duty to disclose to plan beneficiaries all information regarding plan administration." Mett, 178 F.3d at 1063 (citations omitted). "Other courts have focused instead on the role of the trustee and have endorsed the notion that, 'as a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that he is personally being served.'" Id. (quoting United States v. Evans, 796 F.2d 264, 266 (9th Cir. 1986)).

Under either rationale, when an attorney advises an ERISA plan administrator or other fiduciary concerning a matter of plan administration, the attorney's client is the plan beneficiaries for whom the fiduciary acts, instead of the plan administrator. Solis, 644 F.3d at 227; Mett, 178 F.3d 1063; Wildbur v. ARCO Chem. Co., 974 F.2d 631, 645 (5th Cir. 1992) (citation omitted). Thus, "a fiduciary of an ERISA plan 'must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan.'" Moss, 495 F. App'x at 595 (quoting Bland v. Fiatallis N. Am., Inc., 401 F.3d 779, 787 (7th Cir. 2005) (quoting In re Long Island Lighting Co., 129 F.3d 268, 272 (2d Cir. 1997)). When understood "in this fashion, the fiduciary exception is not an 'exception' to the attorney-client privilege at all. Rather, it merely reflects the fact that, at least as to advice regarding plan administration, a trustee is not 'the real client' and thus never enjoyed the privilege in the first place." Mett, 178 F.3d at 1063 (citing Evans, 796 F.2d at 266).

There are two types of situations where the fiduciary exception should not be applied because counsel's advice to the ERISA plan administrator concerns a non-administrative or non-fiduciary matter. Solis, 644 F.3d at 228; Wachtel v. Health Net, Inc., 482 F.3d 225, 232-34 (3d

9

Cir. 2007); Mett, 178 F.3d at 1064; In re Long Island Lighting Co., 129 F.3d at 271-73; Everett v. USAir Group, Inc., 165 F.R.D. 1, 4 (D.D.C 1995); Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine, A.B.A. SEC. PUB. LITIG. Vol. 1 at 651-62 (5th ed. 2007) (hereinafter "Epstein"). For example, the exception will not apply to an administrator's communications with an attorney about his or her personal defense in an action for breach of a fiduciary duty. Solis, 644 F.3d at 228 (citing Mett, 178 F.3d at 1064). Additionally, the fiduciary exception does not apply to an administrator's communications with plan attorneys regarding non-fiduciary matters, such as adopting, amending, or terminating an ERISA plan. Solis, 644 F.3d at 228 (citing Bland, 401 F.3d at 787-88). In those situations the attorney-client privilege remains intact for the ERISA plan administrator or fiduciary. Solis, 644 F.3d at 228; Wachtel, 482 F.3d at 233-34; Mett, 178 F. 3d at 1064. Thus, in the context of ERISA, while the fiduciary exception creates a presumption that plan beneficiaries are the "client" with regard to counsel's advice, that presumption can be overcome if the plan administrator demonstrates counsel's advice concerns a non-administrative or non-fiduciary matter.

Here, Defendants argue that the fiduciary exception does not apply because the documents, in whole or in part, memorialize legal advice from in-house and/or outside counsel regarding potential amendments to the plan. Thus, Defendants are asking the Court to distinguish between fiduciary acts and settlor acts, "the former being discretionary acts of plan administration and the latter involving the adoption, modification, or termination of an employee benefit plan." Wachtel, 482 F.3d at 233-234 (citing Lockheed Corp. v. Spink, 517 U.S. 882, 891 (1996); Bland, 401 F.3d at 787-88); Everett, 165 F.R.D. at 4 (the employer/administrator is the client when legal counsel is sought regarding non-fiduciary matters such as the decision to form, amend, or terminate a plan); Epstein, supra, at 651-52 ("Distinctions for privilege purposes

10

continue to be drawn in the cases between administration of the plan, to which a fiduciary duty attaches, and decisions to create, amend, or terminate a plan, which are generally referred to as 'settlor' functions and to which many courts have held no fiduciary duty attaches.").

Obviously, the context and content of the communications must be considered in determining whether the fiduciary exception applies to the withheld communications. *See* Mett, 178 F.3d at 1064. For this reason, an *in camera* evaluation of each document must be conducted in order to assess the content of counsel's confidential communications with the plan administrator because the same attorney may advise the administrator in both his fiduciary and nonfiduciary capacities at different times. *See* Id. at 1064 (citing Long Island Lighting, 129 F.3d at 272). Additionally, the fiduciary exception should not defeat the attorney-client privilege whenever otherwise privileged legal advice to a trustee tangentially "relates to" fiduciary matters. Id. at 1064-66 (citing Long Island Lighting, 129 F.3d at 272).

The Order

The relevant portion of the Order addressed a number of documents generated between March 29, 2002 and May 20, 2002, including the documents at issue: HanoverPriv0110 (pages 1-6[5]), HanoverPriv0187, HanoverPriv0188, HanoverPriv0189, HanoverPriv0190, HanoverPriv0191, and PwCPriv0060. While the analysis in this portion of the Order did not expressly discuss the seven documents at issue, it did allude to them. Specifically, the Court found that "the withheld documents indicate through May 16, 2002, the Plan Administrator, Ms. Rieck, was involved in discussions with in-house and outside counsel about the OIG's report, and her involvement was an act of plan administration" (Id. at 40). The Defendants have brought to the Court's attention a typographical error in that finding. Specifically, the Court should have

---

[5] The Court ordered Defendants not to produce pages 7-8 because those notes are protected by the attorney-client privilege and not subject to the fiduciary exception (DN 209 at 41).

11

indicated that Ms. Rieck was involved in the discussions through May 17, 2002. Notwithstanding, for the reasons set forth below, there is no merit to Defendants' argument.

When the Court conducted an *in camera* inspection of each document, it thoroughly considered the context in which the four meetings occurred, the content of the discussions, and the individuals who were present during the meetings (DN 209 at 35, 39-41). With regard to context, the Court noted that the four meetings[6] occurred within weeks of the OIG's report, dated March 29, 2002. Additionally, the Court thoroughly reviewed each document at issue and found that the content of the discussions during the four meetings focused on the OIG's conclusions about benefit calculations under Allmerica's cash balance plan, the potential impact that the OIG's conclusions might have on the plan, and possible solutions for limiting the plan's exposure. To the extent that possible amendments were discussed, such conversations occurred in the context of brainstorming about a variety of conceivable solutions for limiting the plan's exposure. Thus, after considering the context and content of the discussions memorialized in the documents at issue, the Court concluded, to the extent there were conversations about possible amendments to the plan, the conversations were related to discretionary acts of plan administration, as opposed to settlor acts that involved an amendment of the plan.

The Court was aware that Ms. Rieck probably did not attend the meeting between in-house counsel and outside counsel on May 16, 2002. To the extent that possible amendments were discussed on May 16, 2002, such conversations between in-house and outside counsel occurred in the context of brainstorming about a variety of conceivable solutions for limiting the plan's exposure following the release of the OIG's conclusions. Thus, after considering the context and content of the discussions memorialized in HanoverPriv0110 at pages 1-4, the Court concluded, to the extent there were conversations about possible amendments to the plan, the

---

[6] Specifically, the meetings occurred on April 24, April 25, May 16, and May 17, 2002.

conversations were related to discretionary acts of plan administration, as opposed to settlor acts that involved an amendment of the plan. Moreover, the notes memorializing the May 17, 2002 meeting (HanoverPriv0187) indicate that in-house counsel briefed Ms. Rieck about his conversations with outside counsel during the May 16, 2002 meeting. Thus, after considering the context and content of the discussions as well as the persons who were present for each of the four meetings, the Court concluded through May 17, 2002[7], Ms. Rieck "was involved in discussions with in-house and outside counsel about the OIG's report, and her involvement was an act of plan administration" (DN 209 at 40).

In sum, there is no merit to Defendants' argument that the Court committed clear error when it found that HanoverPriv0110 (pages 1-6[8]), HanoverPriv0187, HanoverPriv0188, HanoverPriv0189, HanoverPriv0190, HanoverPriv0191, and PwCPriv0060 were subject to production under the fiduciary exception to the attorney-client privilege. Contrary to Defendants' assertion, the Court did not find these documents were subject to the fiduciary exception to the attorney-client privilege or work product exception merely because Ms. Rieck attended the meetings. Instead, the Court considered the context and content of the documents as well as the persons who were present for the meetings in determining that the documents were subject to the fiduciary exception. Although Ms. Rieck probably did not attend the May 16, 2002 meeting memorialized in HanoverPriv0110 at pages 1-4, the document is still subject to the fiduciary exception because it reflects a conversation between in-house counsel and outside counsel that, for the reasons set forth above, was related to discretionary acts of plan

---

[7] Again, the Court acknowledges that the original finding in the Order contains a typographical error because it should have indicated May 17, 2002, not May 16, 2002.

[8] The Court ordered Defendants not to produce pages 7-8 because those notes are protected by the attorney-client privilege and not subject to the fiduciary exception (DN 209 at 41).

administration, and because in-house counsel advised Ms. Rieck about that conversation during the May 17, 2002 meeting.

## ORDER

**IT IS HEREBY ORDERED** that Defendants' motion for limited reconsideration of the Court's October 17, 2016 Order (DN 212) is **DENIED**.

Copies to:     Counsel of Record