UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:07-CV-00130-HBB


JENNIFER A. DURAND,
On behalf of herself and on
Behalf of all others similarly situated                                          PLAINTIFFS


VS.


THE HANOVER INSURANCE GROUP, INC.,
And THE ALLMERICA FINANCIAL CASH
BALANCE PENSION PLAN                                                        DEFENDANTS


## MEMORANDUM OPINION
## AND ORDER

        Before the Court are the following related motions: Defendants motion to enforce the

scheduling order and for a protective order regarding untimely additional privilege challenges[1]

(DN 235 SEALED); Plaintiffs' motion to update and amend the Court's December 17, 2013

class certification order[2] (DN 239, 240); and Plaintiffs' motion for *in camera review* of 218

additional documents that Defendants are withholding on privilege grounds (DN 242 SEALED).

Plaintiffs have responded to Defendants' motion (DN 238 SEALED); Defendants have

responded to Plaintiffs' motions (DN 246 SEALED, DN 250 SEALED); and Plaintiffs have filed

replies in support of their motions (DN 253 SEALED, DN 257 SEALED).  These matters are

ripe for determination.

---

[1] Brought pursuant to Fed. R. Civ. P. 16 and 26(c) and the Court's inherent power to manage its schedule (DN 235 SEALED).  Additionally, Defendants have filed a motion for an expedited hearing (DN 236) and Plaintiffs have joined that motion (DN 238 SEALED).

[2] Brought pursuant to Fed. R. Civ. P. 23(c)(1)(C) (DN 239, 240).

<u>Procedural History and Nature of the Motion</u>

The facts of this case have been fully recited on a number of occasions. Accordingly, the Court will only summarize the facts necessary to adequately address the pending motions. Plaintiff Jennifer A. Durand filed the original class action complaint that named as Defendants: the Hanover Insurance Group, Inc. ("Hanover") and the Allmerica Financial Cash Balance Pension Plan ("Plan") (DN 1 PageID # 8). The complaint alleges that Hanover (formally known as Allmerica Financial Corporation) was the sponsor, administrator, and a named fiduciary of this employee pension benefit plan (<u>Id.</u>).

The Plan belongs to a subset of "defined benefit plans" that is known as "cash-balance" plans. <u>Durand v. Hanover Ins. Group, Inc.</u>, 560 F.3d 436, 437 (6th Cir. 2009) (citing ERISA § 3(35), 29 U.S.C. § 1002(35)) ("<u>Durand I</u>"). When an employee who is vested in such a plan, leaves his or her employment with such a plan sponsor, the employee has the option of choosing whether the benefit will be distributed in the form of a single-life annuity, under which payments begin when the departing employee reaches retirement age, or a lump sum payment, made at the time of the employee's departure. <u>Durand I</u>, 560 F.3d at 438 (citation omitted).

The original complaint alleges that Hanover or one of its affiliates employed Durand from October 17, 1995 until April 30, 2003, and she accrued pension benefits under the Plan throughout the approximately seven and a half years of her employment (<u>Id.</u> PageID # 8-9). It asserts that after ending her employment with Hanover, Durand elected to receive her fully-vested Plan benefits in the form of a lump-sum payment (DN 1 PageID # 9-12). Durand claims that the projection rate in the Plan's whipsaw calculation methodology violated ERISA because

it understated the present value of her accrued benefit and, as a result, she suffered a partial forfeiture of her vested, accrued benefits[3] (Id. PageID # 9-14).

Specifically, the complaint alleges that the Plan used a 401(k)-style investment menu to determine the interest earned by members' hypothetical accounts (Id. PageID # 9-14). Instead of using the interest credit rate that Durand selected from the 401(k)-style investment menu, Hanover and the Plan purportedly used the lower 30–year Treasury bond rate "("GATT") as the projection rate in the Plan's "whipsaw" calculation, in violation of 29 U.S.C. §§ 1053(e) and 1055(g) (ERISA §§ 203(e) and 205(g)) (Id.). Durand v. Hanover Ins. Group, Inc., 806 F.3d 367, 369 (6th Cir. 2015) ("Durand II"). The Plan again applied the GATT rate to discount the projected amount of Durand's benefit at normal retirement age back to its present value in 2003, thereby nullifying the effect of the projection-forward and resulting in a wash because the lump sum Durand received was identical to the amount in her hypothetical account at the time. Id. at 372.

The complaint sets forth a broad definition of class membership at paragraph 30 (DN 1 PageID # 12). However, other allegations in the complaint made clear that class membership was contingent upon the Plan participant being vested and receiving a lump-sum distribution that understated the present value of his or her accrued benefit as a result of the Plan using the above

---

[3] To ensure that a departing employee is not penalized for choosing the lump sum distribution, ERISA requires lump sum payments must be the actuarial equivalent of the normal accrued pension benefit. Durand v. Hanover Ins. Group, Inc., 560 F.3d 436, 438 (6th Cir. 2009) ("Durand I"). For distributions made prior to 2006, cash-balance plans determined this actuarial equivalent by conducting a two-step "whipsaw" calculation. Id. The first step involves projecting the participant's account balance forward to its value at the participant's normal retirement age, "using the rate at which future interest credits would have accrued" had that participant remained in the plan. Id. (citation and internal quotation marks omitted). The second step involves discounting the projected amount back to its present value on the date of the actual lump-sum payment. Id. The Pension Protection Act of 2006 relieved cash-balance plans of the need to make this calculation for a lump sum distributions made after its effective date. Id. at n. 1 (citation omitted).

described whipsaw calculation methodology that allegedly violated ERISA (Id. PageID # 9-14). Durand II, 806 F.3d at 372-73.

The Sixth Circuit concluded that the original complaint focused on the lump-sum calculation and asserted only a whipsaw claim under 29 U.S.C. §§ 1053(a), (e) and 1055(g), 26 U.S.C. §§ 411(a) and 417(e).  Durand II, 806 F.3d at 372-73.  Further, the Sixth Circuit explained "[a] whipsaw claim alleges that a departing employee's lump-sum distribution understates the present value of her accrued benefit because of the use of a calculation methodology—in this case, a projection rate—that violates ERISA requirements."  Id. (citation omitted).

In the amended complaint, filed December 15, 2009, Walter Wharton and Michael Tedesco joined Durand as individual plaintiffs and representatives of a putative class, seeking relief under ERISA § 502(a), 29 U.S.C. § 1132(a) (DN 46).  The amended complaint named Durand as a member of the Class and the Pre-2004 Distribution Subclass; Wharton[4] as a member of the Class and the 2004-2006 Distribution Subclass; and Tedesco[5] as a member of the Class and the Post-2006 Distribution Subclass (Id. PageID #616-18). The amended complaint again named the Hanover Insurance Group, Inc. and the Allmerica Financial Cash Balance Pension Plan as Defendants (Id. PageID # 617).

The amended complaint joined Wharton in Durand's original whipsaw claim (Id. PageID # 636-37).  All three Plaintiffs asserted a new claim that challenged the method of crediting interest, sometimes referred to as an "interest crediting floor claim" (Id. PageID # 638, 640, 643;

_____

[4] The amended complaint asserted that Wharton participated in the Plan during his period of employment (July 30, 2001-February 25, 2005) and he received a lump sum distribution on May 1, 2005 (DN 46 PageID #616, 618, 620).

[5] The amended complaint asserted that Tedesco participated in the Plan during his period of employment (1993-1999) and he hadn't accrued benefit under the Plan that had yet to be distributed (Id. PageID # 616-17, 618, 620).

DN 71 PageID # 1234). Wharton and Tedesco claimed that the 2004 Plan amendment, that eliminated investment-experience interest crediting, constituted an impermissible cut-back of accrued benefits, in violation of ERISA § 204(g), 29 U.S.C. § 1054(g) (DN 46 PageID # 636, 640-45). Additionally, Wharton and Tedesco asserted that the Plan did not provide proper notice of the 2004 Plan amendment (Id. PageID # 629, 642, 644). The amended complaint, on behalf of all putative class members, also asserted claims that Hanover and the Plan had breached their fiduciary duties, under ERISA, to plan members in their administration of the Plan (DN 46 PageID # 645-48).

Hanover and the Plan moved to dismiss the additional claims in the amended complaint on several grounds, including the statute of limitations (DN 51). The Court ruled that the following claims in the amended complaint were time-barred: (1) the interest crediting floor claim (challenged the method of crediting interest); (2) the cutback claim; (3) the improper notice claim, arising under § 204(h), in connection with the 2004 Plan amendment; and (4) all of the breach of fiduciary duty claims (DN 71 PageID # 1248-54). The Court observed "[t]he claims remaining in this action, therefore, are the original whipsaw claims of the plaintiff Durand with the joinder of the plaintiff Wharton" (Id. PageID # 1254).

Durand, Wharton, and Tedesco moved the Court for reconsideration and/or clarification of its order dismissing certain claims as time-barred (DN 73). The Court concluded its timeliness analysis remained valid as to all of the previously addressed claims in the amended complaint, except the whipsaw-related fiduciary claim (DN 78 PageID # 1362-69). The Court noted that Defendants' motion had not challenged the timeliness of the whipsaw-related fiduciary claim and that such a determination was premature (Id. PageID # 1369). Further, the Court indicated it would defer ruling on the viability of the whipsaw-related fiduciary claim until

full presentation of the issue on proper motion (Id. PageID # 1369-70). The Court indicated the "remaining claims are those of Durand and Wharton for benefits and *breach of fiduciary duty arising from the alleged illegal methodology for calculating lump-sum distribution*" (Id. PageID # 1371, emphasis added).

The parties litigated the merits of Wharton's whipsaw benefits claim and whipsaw-related breach of fiduciary duty claim through a motion for partial summary judgment filed by Defendants (DN 82, 83). Hanover and the Plan argued, as a result of the 2004 Plan amendment, Wharton had no legally cognizable claims because the lump sum distribution to Wharton was within a safe harbor recognized by the IRS and the courts as not violating ERISA (Id. PageID # 1382-85). The Court agreed with Defendants and granted their motion for partial summary judgment as to Wharton's whipsaw and whipsaw-related breach of fiduciary duty claims (DN 102 PageID # 1589-90). Further, the Court expressly ordered "the claims of plaintiff Walter J. Wharton, and the prospective class members he represents, are **DISMISSED** with prejudice, there being no genuine issue of material fact and the defendants being entitled to judgment as a matter of law" (Id. PageID # 1600).

Notably, in this same memorandum opinion and order, the Court addressed Plaintiffs' motion for class certification (DN 97, 102). Defendants opposed some, but not all, of Plaintiffs' proposals (DN 82, 99). The Court granted, in part, Plaintiffs' motion for class certification (DN 102 PageID # 1590, 1600). More specifically, the Court denied the motion as to the Wharton subclass because their claims were dismissed with prejudice (DN 102 PageID # 1590, 1600). The Court also directed the parties to jointly file a revised order certifying classes, claims and defenses, and appointing class counsel (Id. PageID # 1600).

On December 17, 2013, the Court issued an order certifying the classes, claims, and defenses and appointing class counsel (DN 110). The Court found that Plaintiffs had established the prerequisites for class certification pursuant to Fed. R. Civ. P. 23(a) and that the requisites of Rule 23(b)(1)(A), (b)(1)(B), and (b)(2) had been met with regard to the lump-sum benefit whipsaw calculation and related fiduciary breach claims remaining in the case and that Plaintiffs' counsel should be appointed class counsel pursuant to Fed. R. Civ. P. 23(g) (<u>Id.</u> PageID # 1724-25). The order established an overall class (the "Lump Sum Class") of vested Plan participants who received a lump sum distribution between March 1, 1997 and December 31, 2003 (<u>Id.</u> PageID # 1725). The order certified Durand as the overall class representative (<u>Id.</u>). Additionally, the order established a subclass ("Subclass A") made up of class members who received their lump sum distribution between March 1, 1997 and March 12, 2002 (<u>Id.</u>). The order certified James A. Fisher, who received a lump sum distribution in 2000, the subclass representative (<u>Id.</u>). Having concluded the Wharton and Tedesco claims lacked merit, the Court declined to certify these plaintiffs as class representatives (DN 118 PageID # 1730).

On December 17, 2013, the Court granted Plaintiffs' motion for entry of a final order on the post-2003 claims brought by Wharton and Tedesco (DN 104, 111) and issued a final judgment (DN 112) on its three orders dismissing their claims (DN 71, 78, 102). Additionally, the Court made clear all that remained for adjudication were the whipsaw and whipsaw-related breach of fiduciary claims (DN 111 PageID # 1687). Plaintiffs filed a timely notice of appeal (DN 120), and their appeal proceeded before the Sixth Circuit.

Meanwhile, on December 9, 2014, Defendants filed a motion for summary judgment as to the claims of Subclass A (DN 127). Defendants argued the members of Subclass A should be dismissed with prejudice because their whipsaw claims are untimely (<u>Id.</u>). Plaintiffs responded

with a motion to confirm the case management plan and defer briefing on Defendants' summary judgment motion (DN 128). Defendants responded to Plaintiffs' motion (DN 131) and Plaintiffs replied (DN 133).

In a memorandum opinion and order issued on April 1, 2015, the Court stayed Defendants' motion for summary judgment pending completion of limited discovery on the Subclass A statute of limitations defense (DN 136). Thereafter, on May 11, 2015, the Court signed an agreed scheduling order regarding the completion of limited discovery on the Subclass A statute of limitations defense claims (DN 141). The agreed order included an acknowledgement by the parties that an amended scheduling order would be appropriate after the Sixth Circuit ruled on the pending appeal of the Wharton/Tedesco claims (Id.). Thereafter, amendments were made to the scheduling order as the discovery process proceeded.

Meanwhile, the Sixth Circuit issued its opinion on November 6, 2015. Durand II, 806 F.3d at 367. The Sixth Circuit observed that Plaintiffs' appeal challenged only the dismissal of the cutback claims and breach of fiduciary duty claims related to the 2004 Amendment because they "abandoned the whipsaw claims of Wharton and the class members he sought to represent." Id. at 370. The Sixth Circuit affirmed the Court's ruling that the cutback claims and related breach of fiduciary duty claims were untimely. Durand II, 806 F.3d at 374-77.

In February, March, and April of 2016, Plaintiffs filed motions to compel related to documents they sought through written discovery that Defendants' refused to produce on claims of relevance, attorney-client privilege, and/or work-product protection (DN 168, 172, 180). In October 2016, the Court ruled on those motions (DN 208, 209, 210). Defendants moved for reconsideration (DN 212) as to seven documents that the Court concluded were subject to

production under the fiduciary exception to the attorney-client privilege and work product doctrine (DN 209). In January 2017, the Court denied that motion (DN 216).

In February 2017, Defendants filed a petition for writ of mandamus with the Sixth Circuit (DN 217) and moved the Court to stay enforcement of portions of the underlying order (DN 209) pending resolution of their petition. The Court granted the motion to stay (DN 220). In May 2017, the Sixth Circuit issued an order denying Defendants' petition for writ of mandamus (DN 221).

In June 2017, the Court issued an order lifting the stay and directed Defendants to produce full versions of the documents identified in their motion for reconsideration (DN 222). In July 2017, the Court executed an agreed scheduling order for discovery and summary judgment briefing (DN 225). Of particular relevance to the motions presently before the Court, the scheduling order established an October 13, 2017 deadline for completing written fact discovery and a November 30, 2017 deadline for completing all fact witness depositions (Id.).

On October 12, 2017, Defendants filed a motion for a limited extension of time in which to negotiate a non-waiver stipulation with Plaintiffs or to file a motion for a protective order before producing 26 privileged documents, containing communications seeking or providing legal advice about draft 204(h) notices (the "204(h) documents"), that Defendants maintained did not fall within the fiduciary exception to the attorney-client privilege[6] (DN 227). Although these 204(h) documents were not mentioned in Plaintiffs' motion to compel production of allegedly privileged documents (DN 168), Defendants recognized that the Court considered an email chain

---

[6] Defendants identified the 204(h) documents as follows: portions of HanoverPriv292, HanoverPriv324, portions of HanoverPriv326, portions of HanoverPriv365, HanoverPriv366, HanoverPriv367, portions of HanoverPriv368, portions of HanoverPriv369, portions of HanoverPriv400, portions of HanoverPriv401, HanoverPriv406, portions of HanoverPriv407, HanoverPriv408, HanoverPriv409, HanoverPriv416, HanoverPriv417, HanoverPriv418, HanoverPriv452, HanoverPriv453, HanoverPriv456, HanoverPriv458, HanoverPriv463, HanoverPriv464, portions of HanoverPriv465, HanoverPriv466, and portions of HanoverPriv467 (DN 227 PageID # 4133-34).

that involved legal advice regarding a draft 204(h) notice (HanoverPriv0087b) and ordered it produced because the communications fell within the fiduciary exception to the attorney-client privilege (DN 227 citing DN 209 at 44-45). Acknowledging the likelihood that the Court would reach a similar conclusion as to the 204(h) documents, Defendants explained they intended to produce the 204(h) documents once they had made clear, through a stipulated order or protective order, that their act of production did not constitute a waiver of their right to argue on appeal that the Court's rulings on the attorney-client privilege, the work-product doctrine, and the fiduciary exception were erroneous and that these documents should be excluded from production (DN 227). On October 20, 2017, the Court granted Defendants' motion for extension of time (DN 233).

On October 18, 2017, five days after the deadline for completing written fact discovery, Defendants filed a motion for entry of an agreed order and stipulation regarding production of the 204(h) documents (DN 230). Defendants indicated they would be producing the 204(h) documents to Plaintiffs subject to this non-waiver stipulation (DN 230). On October 20, 2017, the Court granted Defendants' motion (DN 232).

Plaintiffs report that Defendants actually produced only 19 of the 204(h) documents on October 18, 2017 (DN 257 SEALED PageID # 5111). According to Plaintiffs, Defendants produced the 7 other 204(h) documents on December 5, 2017 (Id.).

<u>The Parties' Arguments</u>

Before the Court are Defendants' motion to enforce the scheduling order and for a protective order forbidding Plaintiffs additional privilege challenges as untimely (DN 235 SEALED), Plaintiffs motion to update and amend the Court's December 17, 2013 class certification order (DN 239), and Plaintiffs motion for *in camera* review of 218 additional

documents that Defendants are withholding on privilege grounds (DN 242 SEALED). These related motions arise out of the 204(h) documents that Defendants produced, subject to a non-waiver stipulation, on October 18 and December 5, 2017.

The parties have differing views regarding the timeliness of Plaintiffs' motions, the relevance of the 204(h) documents to the remaining claims and defenses, and whether the 204(h) documents provide an appropriate basis for amending the class certification order and conducting an *in camera* review of additional documents Defendants have withheld on claim of privilege. In making their arguments the parties have focused on the following 204(h) documents: (1) a November 6, 2003 letter from Leslie Klein, Allmerica's outside counsel, to J. Kendall Huber, Allmerica's General Counsel, discussing the enclosed draft 204(h) notice to Plan participants regarding the proposed 2004 Plan amendment (the "Klein-Huber Letter") (HanoverPriv174450-52); (2) a May 2004 legal research memo prepared by Dominic DeMatties for Leslie Klien, both of whom are Allmerica's outside counsel, discussing a draft 204(h) notice to Plan participants regarding a proposed 2005 Plan amendment (the "DeMatties Memo") (HanoverPriv174495-99); and (3) a string of email messages, beginning on November 17, 2003 and ending on November 19, 2003, between Allmerica in-house counsel and Human Resources personnel, including the Plan administrator Barbara Rieck, discussing Plan participant reaction to the 204(h) notice about the 2004 Plan amendment (the "November 17-19, 2003 Email String") (HanoverPriv174491-93 and HanoverPriv174418-23) (DN 238 SEALED Attachments 2, 3 and 4).

A

The Court will begin with Defendants' motion to enforce scheduling order and for protective order regarding untimely additional privilege challenges (DN 235 SEALED). Their

motion is brought pursuant to Rules 16(b)(4) and 26(c), and pursuant to the Court's inherent power to manage its schedule (DN 235 SEALED, DN 235-8 Proposed Order).

The Court conducted a telephonic conference on November 3, 2017, and issued an order addressing part of Defendants' motion (DN 241). Specifically, the Court held the scheduling order deadlines in abeyance and ordered briefing to proceed on Plaintiffs' motions (Id.). In light of this ruling, the Court will construe Defendants' motion as a Rule 16(b)(4) challenge to Plaintiffs' two motions and a Rule 26(c) request for a protective order forbidding Plaintiffs' additional privilege challenges (DN 239 and DN 242 SEALED).

1. The Parties' Arguments

Defendants' assert that Plaintiffs' motions are untimely because the applicable scheduling order deadlines have expired (DN 235 SEALED PageID # 4179-81). Essentially, Defendants argue Plaintiffs were not diligent in conducting discovery because they could have sought and obtained the 204(h) documents months earlier and, relatedly, moved for *in camera* review of additional privileged documents weeks before the written discovery deadline expired on October 13, 2017 (DN 235 SEALED PageID # 4177-79, 4182-86). Defendants argue, due to this lack of diligence, Plaintiffs cannot demonstrate "good cause" to modify the applicable scheduling order deadlines and, therefore, the Court should enforce the scheduling order deadlines and deny Plaintiffs' untimely motions (DN 235 SEALED citing Fed. R. Civ. P. 16(b)(4); <u>Bradford v. Shrock</u>, No. 3:11-CV-00488-DJH, 2017 WL 3444801, at *2 (W.D. Ky. Aug. 10, 2017)). Additionally, and relatedly, Defendants assert they have, for nearly four years, conducted discovery and prepared their case based on the classes and claims delineated in the class certification order (DN 110) and, if the order is amended to include additional participants, they will be materially prejudiced because discovery will have to be reopened to explore those new

12

claims (DN 235 SEALED citing <u>Leary v. Daeschner</u> 349 F.3d 888, 908 (6th Cir. 2003) (consider prejudice to the opposing party in deciding whether to amend a scheduling order)).

Defendants disagree with Plaintiffs' characterization of the significance of the 204(h) documents (DN 235 SEALED). Defendants contend the 204(h) documents do not provide a basis for challenging their claim of privilege on any additional documents or for moving to amend the class certification order to include additional participants (<u>Id.</u>).

Plaintiffs assert that the October 17, 2016 order, directing Defendants to produce an email communication about a draft 204(h) notice, put Defendants on notice that the Court would conclude the 204(h) documents are also subject the fiduciary exception and should be produced in a timely manner (DN 238 SEALED PageID # 4294 citing DN 209). Plaintiffs contend, because Defendants did not appeal the ruling as to that document, the 204(h) documents should have been produced by December 2016 or January 2017 (DN 238 SEALED). Plaintiffs point out Defendants finally produced the 204(h) documents on October 18, 2017, five days after the scheduling order deadline for completing written discovery (<u>Id.</u>). Plaintiffs argue Defendants' inordinate delay in producing the 204(h) documents, not Plaintiffs' lack of diligence in pursuing discovery, provides "good cause" to extend the scheduling order deadlines applicable to their two motions (DN 238 SEALED).

Plaintiffs assert that until they received the documents on October 18, 2017, they had no reason to question Defendants' claim of privilege on any additional documents or move to amend the class certification order to include additional participants (<u>Id.</u>). Plaintiffs contend the 204(h) documents are of the utmost relevance to the whipsaw related breach of a fiduciary duty claims and provide sufficient information to make a *prima facie* showing that the crime-fraud exception and/or the fiduciary exception apply to additional documents Defendants have

wrongfully designated as privileged (DN 238 SEALED PageID #4274-75). Plaintiffs contend

the Court should conduct an *in camera* review of the additional documents before the depositions

of fact witnesses begin because they intend to depose the people who sent or received most of

those communications (Id.).

    2. Analysis

    The Federal Rules of Civil Procedure commit to the district court's sound discretion

whether to amend a pretrial scheduling order. Fed. R. Civ. P. 16(b)(4). Specifically, Rule

16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's

consent." The Sixth Circuit has indicated "[t]he primary measure of Rule 16's 'good cause'

standard is the moving party's diligence in attempting to meet the case management order's

requirements." Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002) (citation and internal

quotations omitted); *see also*, Leary v. Daeschner, 349 F.3d 888, 906 (6th Cir. 2003) (A court

"may modify a scheduling order for good cause only if a deadline cannot reasonably be met

despite the diligence of the party seeking the extension."). "Another relevant consideration is

possible prejudice to the party opposing the modification." Inge, 281 F.3d at 625 (citation

omitted). The Court must first find that the moving party proceeded diligently before

considering whether the nonmoving party is prejudiced, and only then to ascertain if there are

any additional reasons to deny the motion. Smith v. Holston Med. Grp., P.C., 595 F. App'x 474,

479 (6th Cir. 2014). Thus, the movant who fails to show "good cause" will not be accorded

relief under Rule 16(b)(4) merely because the opposing party will not suffer substantial prejudice

as a result of the modification of the scheduling order. Interstate Packaging Co. v. Century

Indemnity Co., 291 F.R.D. 139, 145 (M.D. Tenn. 2013) (citing Leary, 349 F.3d at 906, 909;

Korn v. Paul Revere Life Ins. Co., 382 F. App'x 443, 449 (6th Cir. 2010)).

Following entry of the class certification order on December 13, 2012(DN 110), the scheduling order amendments did not establish a deadline for filing a motion to amend the class certification order. Additionally, past scheduling orders established deadlines for Plaintiffs to file a motion to compel production of documents that Defendants are withholding on claim of privilege (*see* DN 139, 140, 141, 151-1, 152). Additionally, the Court twice extended Plaintiffs' deadline (DN 166, 167) and Plaintiffs' filed their motion on February 26, 2016 (DN 168). However, subsequent amendments to the scheduling order did not establish a deadline for filing such a motion.

Notably, in their arguments, both parties rely on the most recent amendments to the scheduling order (DN 225). Primarily, they focus on the October 13, 2017 deadline for completion of all written fact discovery which established a three month period in which to complete all written discovery (Id.). The parties also discuss the September 15, 2017 date for exchanging their proposed fact witness deposition lists and the November 30, 2017 deadline for completing all fact witness depositions (Id.).

The record shows on October 18, 2017, three days after the written discovery deadline expired, Defendants produced 19 of the 204(h) documents. On December 5, 2017, Defendants produced the 7 other 204(h) documents (DN 257 SEALED PageID # 5111). This means although production of the 204(h) documents may have begun three days after the applicable scheduling order deadline expired, it was not completed until 50 days later.

After considering the parties' arguments and the record, the Court notes the issue of Plaintiffs' diligence is a close call. However, the Court cannot ignore the fact that Plaintiffs did not have the opportunity to begin reviewing the 204(h) documents until five days after the October 13, 2017 deadline expired. Unquestionably, Plaintiffs were diligent in filing the two

motions after reviewing the documents.  Therefore, the Court finds that good cause exists to modify the scheduling order deadlines with regard to both of Plaintiffs' motions.

Moving to the issue of prejudice under Rule 16(b)(4).  Courts consider the extent of prejudice to the nonmoving party to ascertain whether any additional reasons exist to deny the motion.  Smith, 595 F. App'x at 479.  Here, Defendants have at best made a generalized claim of prejudice arising out of Plaintiffs' two motions (DN 235 SEALED).  Further, the alleged prejudice, additional discovery and motion practice, would have occurred if Defendants produced the 204(h) documents months sooner because Plaintiffs would have filed their two motions.  Additionally, until the Court rules on Plaintiffs' two motions it would be speculative at best to predict the need for additional discovery and motion practice.  Thus, the Court concludes that Defendants have failed to demonstrate they will suffer substantial prejudice as a result of modifying deadlines in the scheduling order.

The Court will now address Defendants' request for relief under Rule 20(c).  The Rule affords the Court with the discretion to further limit the scope of discovery under certain circumstances.  See Levitin v. Nationwide Mut. Ins. Co., No. 2:12-CV-34, 2012 WL 6552814, at *3 (S.D. Ohio Dec. 14, 2012).  Specifically, the Court may issue a protective order "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters" to prevent "annoyance, embarrassment, oppression, or undue burden or expense" where the movant has established "good cause" for such an order.  Fed.R.Civ.P. 26(c)(1)(A) and (D); Levitin, 2012 WL 6552814, at *3; Nix v. Sword, 11 F. App'x 498, 500 (6th Cir.2001).  "To show good cause, a movant for a protective order must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and

cannot rely on mere conclusory statements." Nix, 11 F. App'x at 500 (internal quotation marks and citation omitted).

Again, Defendants have at best made a generalized claim of prejudice arising out of Plaintiffs' request for an *in camera* review of additional documents Defendants claim are privileged (DN 235 SEALED). Additionally, until the Court rules on the merits of Plaintiffs' motion the question of prejudice would be at best speculative. Thus, Defendants have failed to articulate specific facts showing a clearly defined and serious injury.

In sum, Defendants' motion (DN 235 SEALED) is denied, and the Court will address the merits of Plaintiffs' motion to update and amend the class certification order (DN 239) and motion for *in camera* review of 218 additional documents Defendants are withholding on privilege grounds (DN 242 SEALED). Additionally, Defendants motion for expedited hearing (DN 236) is denied.

B

Next, the Court will address Plaintiffs' motion to update and amend the Court's class certification order (DN 239). They propose some minor modifications to the Lump Sum Class definition and a mix of minor and substantial changes to the Subclass A definition (Id.). Their motion is brought pursuant to Rule 23(c)(1)(C) (DN 239, DN 239-1 Proposed Order).

In pertinent part Rule 23 reads, "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). The Sixth Circuit has indicated that district courts have a "continuing obligation to ensure that the class certification requirements are met, and [may] alter or amend the certification order as circumstances change." Randleman v. Fidelity Nat'l Title Ins. Co., 646 F.3d 347, 352 (6th Cir. 2011). This means that district courts have an ongoing duty to assess the propriety of class certification and they must be

prepared under Rule 23(c) to alter or amend the class certification as necessary. *See, e.g.*, <u>Binta B. ex rel. S.A. v. Gordon</u>, 710 F.3d 608, 618 (6th Cir.2013) (Commenting that "a district court's responsibilities with respect to Rule 23(a) do not end once the class is certified."); <u>Barney v. Holzer Clinic, Ltd.</u>, 110 F.3d 1207, 1214 (6th Cir.1997) (duty to ensure that the prerequisites of Rule 23(a) are satisfied continues after initial certification); <u>Sutton v. Hopkins Cnty., Ky.</u>, 2007 WL 119892, at *2 (W.D.Ky. Jan. 11, 2007) ("Pursuant to Fed.R.Civ.P. 23, the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case [and] must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." (internal quotation marks and citations omitted)); *accord* <u>Burns v. U.S. R.R. Ret. Bd.</u>, 701 F.2d 189, 191–92 (D.C.Cir.1983) (Ginsburg, J. Ruth Bader) (as the case progresses the original definition and certification may need to be altered or amended).

Essentially, Rule 23(c)(1)(C) is triggered by the development of more facts that may render the original determination unsound. <u>In re FleetBoston Fin. Corp. Sec. Litig.</u>, 253 F.R.D. 315, 338 (D.N.J. 2008) (citing Fed. R. Civ. P. 23 Adv. Comm. Notes, Subdivision (c)(1) (1966)). Thus, as discovery progresses, a district court may need to make appropriate adjustments to the class definition. <u>In re Whirlpool Corp. Front-Loading Prod. Liab. Litig.</u>, 302 F.R.D. 448, 459, 462-63 (N.D. Ohio 2014). Prejudice to a defendant is a consideration in the decision whether to recertify a class. <u>Id.</u> at 463-65 (court considered whether the prejudice was severe enough to preclude an adjustment to the class definition). Further, when the parties' own proposals for adjustments to the class definition are not adequate or accurate; the district court has an obligation to create a new class definition *sua sponte*. <u>Id.</u> at 462-63 (citations omitted).

1.  Proposed Amendments Regarding the Lump Sum Class

In pertinent part, the class definition currently reads as follows:

> 1.      The proposed overall <u>Lump Sum Class</u>, propose to be
> represented by Plaintiff Jennifer A. Durand who received a lump
> sum distribution from the Plan in 2003, is defined as:
>
>> All persons who participated in the Allmerica Cash
>> Balance Pension Plan who vested in and accrued
>> benefit under the Plan's cash balance formula and
>> received a lump sum distribution from the Plan
>> between March 1, 1997 and December 31, 2003; and
>> the beneficiaries and estates of such persons.

(DN 110 PageID # 1725). Plaintiffs recommend the Lump Sum Class be redesignated as the

Whipsaw Benefits Class because its members are asserting timely claims under ERISA §

502(a)(1)(B) and/or § 502(a)(3), for additional lump-sum pension benefits due under the terms of

the Plan and ERISA (DN 239-1 PageID # 4394-95). Plaintiffs also recommend removing from

the class the Plan participants who received lump sum distributions between March 1, 1997 and

March 12, 2002 because those participants do not have viable whipsaw claims. Thus, Plaintiffs

are suggesting the class now be limited to Plan participants who received a lump sum

distribution between March 13, 2002 and December 31, 2003 (<u>Id.</u>).

In light of the above recommendations, Plaintiffs propose the class definition be revised

to read as follows:

> 1. The <u>Whipsaw-Benefits Class</u>, represented by Plaintiff Jennifer
> A. Durand who received a lump sum distribution from the Plan in
> 2003, is defined as:
>> All persons who participated in the Allmerica Cash
>> Balance Pension Plan who vested in an accrued benefit
>> under the Plan's cash balance formula and received a
>> lump sum distribution from the Plan between March
>> 13, 2002 and December 31, 2003; and the beneficiaries
>> and estates of such persons.

(DN 239-1 PageID # 4395).  Plaintiffs also propose the class certification order be amended to indicate the class is asserting claims under ERISA § 502(a)(1)(B) and/or § 502(a)(3) for additional lump-sum pension benefits due under the terms of the Plan and ERISA, and Defendants are not challenging those claims on statute of limitations grounds (Id. PageID # 4394-95).

Defendants have not articulated any objection to the above proposals (DN 246 SEALED).  In light of additional facts revealed through discovery since entry of the original class certification order, the Court concludes the proposed amendments are appropriate under Rule 23(c)(1)(C).  Therefore, Plaintiffs' motion is granted to the extent that it seeks the above mentioned amendments to the class certification order.

   2.   Proposed Amendments Regarding Subclass A

    a. The first proposed amendments to Subclass A

Subclass A is represented by James A. Fisher who received a lump sum distribution in 2000 (DN 110 PageID # 1725).  The class certification order defines this subclass as follows:

> All members of the Lump Sum Class who received a lump sum distribution from the Plan between March 1, 1997 and March 12, 2002; and the beneficiaries and estates of such persons.

(Id.).

Plaintiffs now concede that Subclass A's members do not have viable claims for whipsaw benefits because their claims are time-barred (DN 239 SEALED PageID # 4390-91 and 4394-95, DN 240 PageID # 4402, 4405-07).  Plaintiffs' propose amending the class certification order to more accurately reflect the current claims and defenses pertaining to Subclass A (DN 239 SEALED PageID # 4390-91 and 4394-95, DN 240 PageID # 4402, 4405-07).  Plaintiffs explain that Subclass A's members are now limited to seeking "appropriate equitable relief under §

502(a)(3) for Defendants' violation of ERISA's participant-disclosure requirements and other breaches of fiduciary duty" (DN 239 PageID # 4390; DN 240 PageID # 4405).

Notably, Plaintiffs have not specifically delineated the purported breaches of fiduciary duty. Instead, they have sent the reader on a scavenger hunt whose clues include a parenthetical quote in a citation to the Sixth Circuit's opinion in Durand II, a reference to claims 4 and 5 in a February 5, 2016 letter, and a foot note in their memorandum (*see e.g.*, DN 239 PageID # 4390-91 and DN 240 PageID # 4405 n. 1). As a result of this protracted and sometimes frustrating journey, the Court believes that Plaintiffs are indicating Subclass A's members are asserting the following whipsaw-related breach of fiduciary duty claims:

> 1. Defendants breached their fiduciary duty under ERISA § 404 by failing to independently investigate the legality of the Plan's calculation method and override the Plan terms pursuant to ERISA § 404(a)(1)(D).
>
> 2. Defendants breached their fiduciary duty under ERISA § 404 by concealing from participants the plan's whipsaw calculation methodology (*i.e.*, "projecting" to age 65 at the same rate as the ERISA-required discount rate, which was designed to be a meaningless "wash" calculation).
>
> 3. Defendants breached their fiduciary duty under ERISA § 404 by concealing from participants (1) that the Department of Labor had concluded that plaintiffs had a viable claim to additional whipsaw benefits . . . and (2) that participants could potentially forfeit that claim if they did not file suit within 5 years of receiving a lump-sum distribution, when the statute of limitations might foreclose the claim.
>
> 4. Defendants violated ERISA's § 102's SPD disclosure requirements by concealing from participants (1) that the Department of Labor had concluded that plaintiffs had a viable claim to additional whipsaw benefits . . . and (2) that participants could potentially forfeit that claim if they did not file suit within 5 years of receiving a lump-sum distribution, when the statute of limitations might foreclose the claim.

21

> 5.  Defendants breached a fiduciary duty because they failed to
> apply to a court for instructions in 2002, while the participants'
> claims were unquestionably timely, about how to calculate benefits
> in light of the uncertainty created by the DOL IG's conclusions;
> and whether it needed to recalculate the lump sum benefits already
> paid to members of the Fisher class.

(*See* DN 162 PageID # 2235-36; DN 239 PageID # 4390-91; DN 239-1 PageID # 4394-95; DN 240 PageID # 4402, 404, 4405-06 & n. 1, 4407; DN 253 SEALED PageID # 5075). For clarity purposes, the Court will from time to time refer to the above whipsaw-related breach of fiduciary duty claims by their numbers. Additionally, Plaintiffs recommend Subclass A be redesignated as the Whipsaw-Concealment Fiduciary Breach Class and that Fisher serve as the class representative (DN 239 SEALED PageID # 4390-91 and 4394-95, DN 240 PageID # 4402, 4405-07). (Id.).

Defendants are silent with regard to amending the class certification order to indicate Subclass A's members will be limited to pursuing equitable relief under § 502(a)(3) for claims 1 and 2 (DN 246 SEALED). Although not specifically raised in response to this group of proposed amendments, Defendants assert that Plaintiffs have never specifically pled claims 3 and 4 in any formal pleading (DN 246 SEALED PageID # 4687-88). Defendants point out Plaintiffs first identified these claims in the February 5, 2016 letter (Id. citing DN 162 PageID # 2236 (*see* claims 4 & 5)). Defendants argue Plaintiffs failure to plead these claims is reason enough to deny their request to include these claims in the amended class certification order (Id. citing several cases in support). Although apparently overlooked by Defendants, the Court questions whether Plaintiffs asserted claim 5 in any formal pleading.

A number of district courts in the Ninth Circuit have concluded that a proposed class should not be certified if it is seeking recovery on a claim that is absent from the operative complaint. *See e.g.*, Sinohui v. CEC Entm't, Inc. No. EDCV 14-25160-JLS(KKx), 2016 WL

347521, at *9 (C.D. Cal. Mar. 16, 2016) (class certification denied because the proposed class sought recovery on a claim that was not set forth in the complaint); Ortiz v. CVS Caremark Corp., No. C-12-05859 EDL, 2013 WL 6236743, at *11 (N.D. Cal. Dec. 2, 2013) (denying certification of a class premised on unpleaded claim); Brown v. Am. Airlines, Inc., 285 F.R.D. 546, 560 (C.D. Cal. 2011) ("Class certification is not a time for asserting new legal theories that were not pleaded in the complaint."); York v. Starbucks Corp., No. CV 08-07919 GAF PJWX, 2011 WL 8199987, at *10 (C.D. Cal. Nov. 23, 2011) (certification of subclasses denied because the first amended complaint failed to provide adequate notice of the claims asserted). Although there do not appear to be any cases within the Sixth Circuit that have applied this rule, the reasoning is sound and, therefore, will be applied herein.

The Court will now discuss what is actually set forth in the amended complaint (DN 46). The paragraphs in the "**BACKGROUND**" section discuss specific provisions within the Plan, IRS Notice 96-8, decisions by federal courts, and the IG's March 2002 report (Id. PageID # 620-37, ¶¶ 12-63). Essentially, Plaintiffs allege these sources put Defendants on notice that their methodology for calculating lump sum distributions violated ERISA (Id.). Further, the paragraphs allege that despite this notice the Plan continued to utilize this methodology when it calculated lump sum distributions for Durand, Wharton, and other Plan participants (Id.). More specifically, paragraphs 44 and 45 discuss the conclusion in a March 2002 report, prepared by the Inspector General ("IG") of the Department of Labor, that the Plan's methodology for calculating lump sum distributions violated ERISA (Id. PageID # 631-33). Paragraph 46 describes disclosure of the IG's report and the Plan's identity to the media and Defendants statement to the press indicating why they were confident that the methodology used to calculate lump sum distributions comports with applicable law and regulations (Id. PageID # 633).

Paragraph 47 specifically alleges Defendants did not provide Plan participants with a copy of Defendants' statement to the media (Id. PageID # 633 ¶ 47). Further, paragraph 48 asserts:

> Notwithstanding the DOL IG's Report and all of the IRS guidance and case law described herein that preceded and followed it, the Plan Administrator continued to interpret and apply the terms of the Plan and SPD in the same manner as it had from the inception, i.e., without considering ERISA. In interpreting and applying the provisions of the Plan and SPD without considering ERISA, the Plan Administrator acted recklessly, failed to exercise its responsibilities honestly and/or in good faith, and/or failed to perform its duties with the requisite loyalty and prudence and regard for the legality of its actions required of an ERISA fiduciary. See ERISA §§ 404(a)(1)(A), (a)(1)(B), (a)(1)(D).

(Id. PageID # 633-34 ¶ 48). In sum, none of the paragraphs in the "**BACKGROUND**" section allege Defendants failed to notify Plan participants about the conclusion in the IG's March 2002 report or that Defendants failed to apply to a court for instructions in 2002 (Id. PageID # 620-37, ¶¶ 12-63).

The Court will now review the "**CLAIMS FOR RELIEF**" section of the amended complaint and, focus on, the paragraphs in a subsection entitled "**Class and All Subclasses: Breach of Fiduciary Duty Claims**" (Id. PageID # 638, 645-48, ¶¶ 85-91). The subsection identifies two categories of breach (Id.). First, it alleges that Defendants breached their fiduciary duty by interpreting and applying the Plan provisions "without independently assessing whether the account balance and accrued benefit calculation provisions of the Plan complied with ERISA" (Id. PageID # 645, ¶ 85). Second, the subsection asserts in general terms that "[i]n communication with participants regarding the Plan and their Plan benefits, both Defendants made material misstatements and omissions regarding the nature and manner in which they interpreted and applied the account balance and accrued benefit calculation provisions of the Plan and [Summary Plan Descriptions]" (Id. PageID # 646, ¶ 87). As examples of this

inadequate communication, the subsection alleges that the SPDs "failed to accurately or completely apprise participants" of the methodology for calculating lump-sums because Defendants did not disclose the whipsaw calculation, the rates it used, or the reason those rates were selected, and relatedly, Defendants "failed to disclose the 'loss of benefits' " that occurred as a result of the lower interest rates used in the whipsaw calculation (Id. PageID # 647, ¶¶89, 90). In sum, none of the paragraphs in this subsection allege breach of a fiduciary duty arising out of Defendants' failure to notify Plan participants about the conclusion in the IG's March 2002 report and Defendants failure to apply to a court for instructions in 2002. Therefore, the Court concludes that paragraphs 44-47 and 88-91 in the amended complaint do not assert claims 3, 4, and 5 identified above.

In their motion (DN 239 PageID # 4390-91; DN 240 PageID # 4408-09) and the February 5, 2016 letter (DN 162 PageID # 2238), Plaintiffs contend the Sixth Circuit expected Subclass A would have the opportunity to pursue claims 3 and 4 before this Court. Specifically, they rely on the following remark:

> If Defendants' failure to disclose the findings of [the IG] report did constitute a breach of fiduciary duty for other reasons, a question not before us, the Plaintiff class still has every opportunity to press forward with that theory under the ***whipsaw-related breach of fiduciary claims that remain in the case***.

Id. at 377 (emphasis added). The Court concludes that Plaintiffs' characterization of the above comment is misguided given the context in which it was made. The Sixth Circuit was not asked to decide whether claims 3 and 4 are asserted in the amended complaint.[7] Id. at 370. Rather, it was requested to assess the decision to dismiss the cutback and cutback-related breach of fiduciary duty claims. Id. at 370. The Sixth Circuit made the above remark while explaining

---

[7] Notably, the Sixth Circuit summarized the whipsaw-related breach of fiduciary duty claims in the background section of the opinion. Durand II, 806 F.3d at 373-74. But, its summary would not support a finding that claims 3 and 4 set forth above are asserted in paragraphs 85-91 of the amended complaint.

that the alleged nondisclosure did not relate to the cutback-related breach of fiduciary duty claims. <u>Id.</u> at 376-77. Essentially, the Sixth Circuit observed that the alleged nondisclosure may relate to one of Plaintiffs' whipsaw-related breach of fiduciary claims pending before the Court. Obviously, that observation included the implicit caveat that the claim must be asserted in the amended complaint.

In sum, the class certification order should be amended to accurately reflect the existing claims and defenses pertaining to the current members of Subclass A. However, for the reasons set forth above, not all of Plaintiffs' proposals for adjustments to the Subclass A definition are adequate or accurate. The new class certification order shall reflect that Subclass A is redesignated as the "Whipsaw-Related[8] Fiduciary Breach Class"; the class is represented by Fisher; the class members are Plan participants who received a lump sum distribution between March 1, 1997 and March 12, 2002; and the class members are pursuing equitable relief under § 502(a)(3) on the following whipsaw-related breach of fiduciary duty claims:

> 1. Defendants breached their fiduciary duty under ERISA § 404 by failing to independently investigate the legality of the Plan's calculation method and override the Plan terms pursuant to ERISA § 404(a)(1)(D).

> 2. Defendants breached their fiduciary duty under ERISA § 404 by concealing from participants the plan's whipsaw calculation methodology (*i.e.*, "projecting" to age 65 at the same rate as the ERISA-required discount rate, which was designed to be a meaningless "wash" calculation).

Therefore, Plaintiffs' motion is **GRANTED** in part and **DENIED** in part with regard to the first proposed amendments to Subclass A.

---

[8] In light of the claims actually asserted in the amended complaint, the term "concealment" would be a misnomer.

b.   The second proposed amendments to Subclass A

Plaintiffs propose expanding the newly created class to include Plan participants who received lump sum distributions between January 1, 2004 and August 17, 2006, because the 204(h) documents demonstrate they also have claims for equitable relief under § 502(a)(3) that are materially indistinguishable from those of the other Class members (DN 239 PageID # 4391, DN 240 PageID # 4402, 4404, 4407-15).   While Plaintiffs make general assertions about all 26 of the 204(h) documents, their memoranda focus on the discussions in the Klein-Huber Letter dated November 6, 2003 (HanoverPriv174450-52), the DeMatties Memo of May 20, 2004 (HanoverPriv174495-99), and the November 17-19, 2003 Email String (HanoverPriv174491-93 and HanoverPriv174418-23).

Defendants object to Plaintiffs' last minute attempt to expand Subclass A to include participants who received lump sum disbursements between January 1, 2004 and August 17, 2006 (DN 246 SEALED PageID # 4672-75, 4687-08).   First, Defendants assert because Plaintiffs have never specifically pled their proposed whipsaw-concealment fiduciary breach claims in any formal pleading the Court should deny the request to amend (DN 246 SEALED PageID # 4687-88).   Next, Defendants object because the Court dismissed the whipsaw claims of these Plan participants and Plaintiffs have not provided any meaningful justification for reconsideration (DN 246 SEALED PageID # 4672-75, 4687-08).   Defendants also argue Plaintiffs cannot satisfy the requirements of Fed. R. Civ. P. 23 because of a lack of common questions and Fisher is not an adequate representative (Id.).   Additionally, Defendants assert they will be materially prejudiced by the need to conduct additional protracted discovery and file motions pertaining to the new members (Id.).

In reply, Plaintiffs assert their Rule 23(c)(1)(C) motion makes appropriate changes to the class certification order and the delay in bringing it has not prejudiced Defendants (DN 253 SEALED). Plaintiffs contend there is a common question under Rule 23(a)(2) because Defendants' breach of a fiduciary duty pertaining to the whipsaw claims caused these 1,700 participants, who received lump sums between January 1, 2004 and August 17, 2006, to suffer the same injury (loss of additional lump sum benefits) as the 3,700 existing Subclass A members who received lump sums between March 1, 1997 and March 12, 2002 (DN 253 SEALED). Plaintiffs argue Defendants will not be cognizably prejudiced because there is no need for additional evidence to prove the new members' claims, and Plaintiffs promise not to seek to reopen discovery or proceed differently than they would have otherwise (Id.). Plaintiffs indicate Michael Grier, who received a lump sum from the Plan on July 1, 2004, is also willing to act as class representative for Plan participants who received lump sums between January 1, 2004 and August 17, 2006 (Id.).

The Court will begin by noting that Wharton and the prospective class he represented were Plan participants who received lump sum distributions between January 1, 2004 and August 17, 2006. The parties litigated the merits of Wharton's whipsaw and whipsaw-related breach of fiduciary duty claims through a motion for partial summary judgment filed by Defendants (DN 82, 83). Defendants argued because the Plan, as amended in 2004, satisfied a regulatory safe harbor identified in IRS Notice 96-8, his lump sum distribution did not violate ERISA (DN 83, 86). Defendants reasoned since the methodology for calculating Wharton's lump sum distribution did not violate ERISA, he could not claim that Defendants breached any fiduciary duty to him with respect to that distribution (Id.).

The Court agreed with Defendants and granted their motion for partial summary judgment (DN 102 PageID # 1589-90). In pertinent part the Court's ruling reads as follows:

> The court concludes the plan, as amended in 2004, governs lump sums distributed after 2003 and that participants are bound by its terms, including the interest crediting rate. Because the methodology for calculating Wharton's lump-sum distribution did not violate the requirements of ERISA, the defendants are entitled to judgment as a matter of law as to Wharton's damages claim. The court further concludes the related breach of fiduciary duty claims are dependent on the unlawfulness of the Wharton's lump-sum distribution and that, therefore, the defendants are entitled to partial summary judgment on the fiduciary claims as well.
>
> The court concludes there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law on the claims asserted by Wharton, individually, as well as the claims of the Wharton subclass.

(Id. PageID # 1599). Further, the Court expressly ordered "the claims of plaintiff Walter J. Wharton, and the prospective class members he represents, are **DISMISSED** with prejudice, there being no genuine issue of material fact and the defendants being entitled to judgment as a matter of law" (Id. PageID # 1600). Thus, the Court has denied on the merits both the whipsaw benefits claims and the whipsaw-related breach of fiduciary duty claims asserted in the amended complaint (referred to above as claims 1 and 2) by this group of Plan participants. Additionally, review of the class certification order confirms this group of Plan participants is not part of the Plaintiff class (DN 110).

At Plaintiffs' insistence, the Court issued a final judgment with regard to the dispositive rulings on all of the claims asserted by this group of Plan participants (DN 112). On appeal, Plaintiffs abandoned their challenge to the Court's dispositive ruling on the whipsaw and whipsaw-related breach of fiduciary duty claims asserted in the amended complaint. Durand II, 806 F.3d at 370. Thus, the above described dispositive ruling is the law of the case with regard

to this group of Plan participants and the whipsaw and whipsaw-related breach of fiduciary duty claims they asserted in the amended complaint.

Under the law of the case doctrine, when a court decides upon a rule of law that decision should continue to govern the same issues in subsequent stages of that same case. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815 (1988); United States v. Moored, 38 F.3d 1419, 1421 (6th Cir. 1994). This rule of practice is intended to promote finality and efficiency of the judicial process by "'protecting against the agitation of settled issues.'" Christianson, 846 U.S. at 815 (quoting 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.404[1], p. 118 (1984)). Thus, the doctrine expresses a general practice of courts to refuse to reopen what has been decided. Christianson, 846 U.S. at 815 (citing Messinger v. Anderson, 225 U.S. 436, 444 (1912)). However, the law of the case doctrine is not inflexible. Hanover Ins. Co. v. Am. Eng'r Co., 105 F.3d 306, 312 (6th Cir. 1997). The Sixth Circuit has explained there are three reasons to reconsider a ruling: "(1) where there is substantially different evidence raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." Id. (quoting Coal Res., Inc. v. Gulf & W. Ind, 865 F.2d 761, 767, opinion amended on denial of reh'g, 877 F.2d 5 (6th Cir. 1989)); Petition of United States Steel Corp., 479 F.2d 489, 494 (6th Cir.1973).

Plaintiffs have not argued there is a subsequent contrary view of the law decided by the Sixth Circuit or the Supreme Court. Additionally, they have not sought to demonstrate the dispositive ruling is clearly erroneous and would work a manifest injustice. And relatedly, on appeal Plaintiffs abandoned their challenge to the Court's dispositive ruling on the whipsaw and whipsaw-related breach of fiduciary duty claims.

With regard to whether there is substantially different evidence, Plaintiffs have at best made general assertions about all 26 of the 204(h) documents. Their memoranda focus in greater detail on the discussions in the Klein-Huber Letter dated November 6, 2003 (HanoverPriv174450-52), the DeMatties Memo of May 20, 2004 (HanoverPriv174495-99), and the November 17-19, 2003 Email String (HanoverPriv174491-93 and HanoverPriv174418-23). However, these documents have no bearing on the Court's determination as a matter of law that the methodology used to calculate the lump-sum distributions of this group of Plan participants did not violate the requirements of ERISA. Thus, the documents have no relevance to the whipsaw and whipsaw-related breach of fiduciary duty claims actually asserted in the amended complaint. Moreover, the Court need not determine whether the 204(h) documents are relevant to the cutback and cutback-related breach of fiduciary duty claims because the Sixth Circuit affirmed this Court's dismissal of the claims as time-barred.

While Plaintiffs argue the 204(h) documents are relevant to claims 3 and 4 identified above, the Court has concluded those claims are not set forth in the amended complaint. Further, Plaintiffs' reliance on the above quoted remark is misplaced because the Sixth Circuit expressly limited the scope of its observation to "the Plaintiff class". Durand II, 806 F.3d at 377. As this group of Plan participants is not a member of the Plaintiff class (*see* DN 110), and the Plaintiff class abandoned its appeal of the dispositive rulings on their whipsaw and whipsaw-related breach of fiduciary duty claims, the Sixth Circuit could not have been referring to this group of Plan participants in the above quoted remark. Thus, the 204(h) documents provide no relief to this group of Plan participants.

With regard to the issue of commonality under Rule 23(a)(2), the Supreme Court instructs that the plaintiff must "demonstrate that the class members 'have suffered the same

injury[.]'" <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 349-50 (2011) (citation omitted). The claims of class members "must depend upon a common contention" and "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Id.</u>

This group of Plan participants timely filed their whipsaw benefits claims and the Court made a merits based determination regarding their whipsaw and whipsaw-related breach of fiduciary duty claims set forth in the amended complaint (DN 102). Again, their claims in the amended complaint focused on whether the method of calculating lump sum distributions after the 2004 amendment violated ERISA (DN 102). By contrast, the members of Subclass A (the Whipsaw-Related Fiduciary Breach Class) are Plan participants who received lump sum distributions between March 1, 1997 and March 12, 2002. Thus, the focus of their claims in the amended complaint is whether the method used to calculate lump sum distributions prior to the 2004 amendment violated ERISA (DN 46). As a result, the Court's merits based determination mentioned above has not resolved an issue central to the validity of the claims asserted in the amended complaint by members of Subclass A (the Whipsaw-Related Fiduciary Breach Class).

The Court recognizes that Plaintiffs' commonality argument is based on claims 3 and 4 identified above. Again, Plaintiffs' reliance on these claims is misplaced because they are not asserted in the amended complaint.

In sum, the Court concludes that the class certification order should not be amended to include Plan participants who received lump sum distributions between January 1, 2004 and August 17, 2006. Therefore, Plaintiffs' motion is **DENIED** with regard to the second proposed amendments to Subclass A.

c. The third proposed amendments to Subclass A

Prior to 1998 there were three separate cash-balance plans adopted by three different employers yet bearing the same name: "the Allmerica Financial Cash Balance Pension Plan"(*see* DN 240 PageID # 4402-03, 4415; DN 247-17 PageID # 4859). The employers were: First Allmerica Financial Life Insurance Company, Hanover Insurance Company, and Citizens Insurance Company of America (Id.). Apparently each employer was a subsidiary of Hanover (DN 11-2 PageID # 103). The three plans merged as of January 1, 1998 and retained "the Allmerica Financial Cash Balance Pension Plan" name thereafter "(*see* DN 240 PageID # 4402-03, 4415; DN 247-17 PageID # 4859).

Durand was a former employee of First Allmerica Financial Life Insurance Company (DN 11-2 PageID # 102-03). There is no dispute that the class certification order (DN 110) includes vested participants who received lump sum distributions between March 1, 1997 and December 31, 1997 from the Allmerica Financial Cash Balance Pension Plan as adopted by the First Allmerica Financial Life Insurance Company. The dispute is whether the class certification order (DN 110) implicitly included vested participants who received a lump sum distribution between March 1, 1997 and December 31, 1997 from the Allmerica Financial Cash Balance Pension Plan as adopted by the Hanover Insurance Company ("Hanover Plan") and the Allmerica Financial Cash Balance Pension Plan as adopted by Citizens Insurance Company of America ("Citizens Plan").

Although the Hanover and Citizen plans were not explicitly identified, Plaintiffs assert that everyone understood the class certification order (DN 110) implicitly included vested participants who received lump sum distributions between March 1, 9997 and December 31, 1997 from these otherwise identical plans (DN 239 PageID # 4391, DN 240 PageID # 4402-04,

4415-17).   Due  to  recent  disagreements  with  Defendants  on  this  issue,  Plaintiffs  propose

amending/clarifying the class certification order to expressly indicate these lump sum recipients

are members of Subclass A (the Whipsaw-Related Fiduciary Breach Class) (Id.).  Plaintiffs argue

"[i]t would be irrational to agree to the inclusion of identically-situated participants who received

lump sums between March 1, 1997 and December 31, 1997" from the Allmerica Financial Cash

Balance Pension Plan as adopted by the First Allmerica Financial Life Insurance Company yet

"arbitrarily exclude identically-situated participants who received lump sums between March 1,

1997 and December 31, 1997 from the" identically named Hanover and Citizen plans (DN 240

PageID # 4403).   Plaintiffs point out their amended complaint defined the Allmerica Financial

Cash Balance Plan to include the two predecessor plans (Id. PageID # 4402-04, 4415-17 *see* DN

46 ¶¶ 11-12).

Defendants object to Plaintiffs' last minute attempt to expand the class definition by

adding participants in the Hanover and Citizens plans (DN 246 SEALED PageID # 4674-75,

4687-08, citing DN 97 PageID # 1557, 1559 and DN 110 PageID # 1725).   Defendants assert

these participants are not members of the Plaintiff class because they were not mentioned in

Plaintiffs'  motion  for  class  certification  or  the  class  certification  order  (DN  246  SEALED

PageID # 4674-75, 4687-08, citing DN 97 PageID # 1557, 1559 and DN 110 PageID # 1725).

Defendants contend that Plaintiffs have long been aware of their position but have failed to

timely  seek  relief  from  the  Court  (Id.).    Further,  Defendants  assert  they  will  be  materially

prejudiced if participants in the Hanover and Citizen plans are included in the Subclass A (the

Whipsaw-Related  Fiduciary  Breach  Class)  definition  because  they  will  need  to  conduct

additional  protracted  discovery  and  file  motions  pertaining  to  the  new  members  (DN  246

SEALED PageID # 4672-75, 4687-08).

In reply, Plaintiffs argue Defendants will not be cognizably prejudiced because there is no need for additional evidence to prove these participants' claims, and Plaintiffs promise not to seek to reopen discovery or proceed differently than they would have otherwise (DN 253 SEALED). Further, Plaintiffs' reiterate that the parties and Court understood participants in the Hanover and Citizens plans were implicitly included in the class certification order (DN 253 SEALED PageID # 5075 n. 1).

The Court notes that in pertinent part, the amended complaint states as follows:

> 11. Defendant The Hanover Insurance Group, Inc. (NYSE: THG), formerly known as First Allmerica Financial Life Insurance Company and State Mutual Life Assurance Company of America and referred to herein (along with its affiliates and former affiliates, including but not limited to The Hanover Insurance Company and Citizens Insurance Company of America) as "Allmerica" or the "Company," is the sponsor of the Plan, the Plan Administrator and a named fiduciary of the Plan, within the meaning of ERISA §§ 3(16)(A)-(B), 3(21), and 402(a). The Company is sued in all of these capacities.
>
> 12. Defendant The Allmerica Financial Cash Balance Pension Plan is and was at all relevant times an "employee pension benefit plan," and more specifically a "defined benefit plan," within the meaning of ERISA §§ 3(2)(A) and 3(35). References to "The Allmerica Financial Cash Balance Pension Plan," the "Allmerica Plan," and the "Plan" include a reference to The Allmerica Financial Cash Balance Pension Plan, EIN 04-1867050, Plan No. 333; The Allmerica Financial Cash Balance Pension Plan as Adopted by The Hanover Insurance Company, EIN 13-5129825, Plan No. 003; and any other versions of the Plan adopted or maintained by the Company. All version [sic] of the Plan and the Plan's Summary Plan Descriptions ("SPDs") and/or Statement of Material Modifications ("SMMs") are incorporated by reference, as are all other documents referenced herein and/or attached hereto. See Fed. R. Civ. P. 10(c).

(DN 46 PageID # 617).

When Defendants filed their answer on April 14, 2011, they denied Plaintiffs' allegations in paragraph 11 (DN 72 PageID # 1258 ¶ 11). They admitted the first sentence of paragraph 12,

and admitted that Plaintiffs purport to refer to the documents set forth in the Second sentence of paragraph 12 (Id. ¶ 12). But Defendants denied that "'all versions' and 'all other documents' relating to the referenced documents are incorporated in Plaintiffs' First Amended Class Action Complaint by reference, because it is vague and ambiguous as to which documents and/or versions Plaintiffs refer" (Id.). In sum, as far back as April 14, 2011, Plaintiffs were on notice that Defendants took issue with the amended complaint's definitions of predecessor sponsors and plans.

Notwithstanding this notice, Plaintiffs' motion for class certification failed to expressly include participants in the Hanover and Citizens' plans within the Plaintiff class definition (DN 97). Instead, Plaintiffs proposed the overall Class should be defined as follows:

> All persons who participated in the Allmerica Cash Balance Pension Plan who vested in an accrued benefit under the Plan's cash balance formula and received a lump sum distribution from the Plan between March 1, 1997 and August 17, 2006; and the beneficiaries and estates of such persons.

(DN 97 PageID # 1559). Further, Plaintiffs suggested the relevant subclass be defined as follows:

> All members of the Lump Sum Class who received a lump sum distribution from the Plan between March 1, 1997 and March 12, 2002; and the beneficiaries and estates of such persons.

(Id. PageID # 1560).

On December 17, 2013, the Court issued an order certifying the classes, claims, and defenses and appointing class counsel (DN 110). By its plain language, the class certified by the Court does not include participants in the Hanover and Citizens' plans (Id.). Further, in the years that followed, while the parties engaged in protracted discovery pertaining to participants who received lump sum distributions between March 1, 1997 and December 31, 1997, Plaintiffs were

36

made aware of Defendants' position on the issue. For example, in a letter dated June 7, 2016, Defendants made clear that Plaintiffs' request for documents concerning the Hanover and Citizen plans were not within the scope of discovery because participants in those plans were not members of the Plaintiff class (DN 247-16 SEALED PageID # 4855-56). Although Plaintiffs objected to Defendants' position in a letter dated August 22, 2016 (DN 247-17), they did not move the Court for clarification or correction of the class certification order. In sum, despite being aware of the problem for nearly four years, Plaintiffs waited until after the close of written discovery to finally move the Court to amend the class definition to include individuals they have long believed should have been included in the class definition. Further, Plaintiffs' efforts to downplay the issue of prejudice fail to appreciate that the modification they seek will add class members and invite additional discovery that could have already been conducted but for Plaintiffs damaging conduct.

The circumstances here are strikingly similar to those in Kerns v. Caterpillar, Inc., where the plaintiffs were aware, for nearly four years, that the district court had not included in the class definition a specific group of individuals that the plaintiffs already believed belonged in the class. No. 3:06-1113, 2011 WL 1598830, *6 (M.D. Tenn. Apr. 27, 2011). Yet "[t]he plaintiffs invoked none of the recognized tools available to them to timely seek clarification or correction of the court's order." Id. Certainly, the circumstances here are distinguishable from those in Kerns because the plaintiffs, in that case, waited until after the court reached its conclusions on liability before taking action. Id. Nevertheless, the cases are analogous because the parties in Kerns had engaged in several years of class discovery before the plaintiffs finally requested a modification to the class certification order that would add class members and invite additional discovery. Moreover, the plaintiffs in Kerns made the hauntingly similar claim that the

defendants should have known the true nature of the class and engaged in discovery on claims of individuals who were clearly outside the class certified.  Id.  The district court in Kerns concluded in light of the circumstances it was too late to amend the class description.  Id.  Therefore, it denied the plaintiffs' motion to amend the class description.

Despite being hesitant to elevate procedure over substance, this Court concludes it is simply too late in the case to amend the class description to include additional class members.  In reaching this conclusion, the Court notes that although the litigation has been complex with many moving parts, it is not unreasonable to find that, if Plaintiffs felt that the Court had failed to include certain individuals in the class definition, the time to seek reconsideration or clarification of that issue was shortly after the Court certified the class.  Instead, Plaintiffs have allowed this issue to fester for almost four years.  The Court finds that it would be unfair to Defendants after years of costly litigation to rule that Defendants must begin anew the process of investigating and discovering the circumstances of an entirely new set of participants in the Hanover and Citizen plans.  While the process of completing this additional discovery may not be as complex or time consuming as other discovery in this case, it will nevertheless be expensive and invite further discussion and potential conflict with opposing counsel.  Moreover, discovery in this case has reached a point where it should be winding down, not ramping up with new class members.  Therefore, the Court will deny Plaintiffs' motion to amend the class certification order to expressly include participants in the Hanover and Citizen plans.

## C

Next, the Court will address Plaintiffs' motion for *in camera* review of 218 additional documents Defendants are withholding on privilege grounds[9] (DN 242 SEALED).   More

---

[9] Plaintiffs have provided Defendants' privilege log descriptions for these documents (DN 243-2 through 243-10 SEALED, Exhibits 2-9).

specifically, Plaintiffs are asking the Court to conduct, for the first time, an *in camera* review of 202 documents (Categories 1-8)[10] and, due to the content of the recently produced 204(h) documents, perform a second *in camera* review of 12 documents (Category 9) the Court considered in 2016 and concluded were not subject to the fiduciary exception (DN 242-2 PageID # 4508-09 and DN 243-10 PageID # 4559-61).

After Plaintiffs filed their motion, Defendants reviewed the challenged privilege log entries and agreed to produce19 of those documents[11] (DN 250 SEALED PageID 4889 n. 1 and PageID 4893 n.4, citing DN 251-4 PageID # 4940). Additionally, Defendants notified Plaintiffs that 8 other documents should not have been identified in a privilege log because they do not contain relevant information[12] (DN 250 SEALED PageID # 4889 n. 1, PageID # 4893 n.4 and PageID # 4896 n. 6, citing DN 251-4 PageID # 4941). Plaintiffs assert the Court's *in camera* review should include these 8 documents, notwithstanding Defendants' recent claim of

---

[10] Plaintiffs have organized the 218 documents as follows: Category 1 is 108 documents, dated between October 10, 2001 and May 21, 2004, regarding amending, freezing, or terminating the Plan; Category 2 has 41 documents, dated between August 8, 2003 and November 10, 2000, relating to legal issues or case law; Category 3, is 2 documents, dated December 2003, concerning participant communications; Category 4 has 15 documents, dated May 29, 2002 to February 8, 2005, regarding Project Top/possible corporate transaction; Category 5 is 10 documents, dated between August 12, 2003 and October 13, 2004, relating to plan audit and financial statements; Category 6 has 21 documents, dated between October 9, 2001 and October 27, 2003, concerning tax qualification; Category 7 is 1 document, from the 2005 time period, about the Department of Labor Inspector General ("DOL" and "IG") investigation; Category 8 has 8 documents, dated November 3, 2003 to February 2004, that are related to ancillary agreements, Treasury guidelines, communications to nonqualified Plan participants, or retirement plans' financial statements; and Category 9 is 12 documents the Court reviewed *in camera* in 2016 that warrant a second *in camera* review in light of the newly produced evidence (DN 242-2 SEALED PageID # 4503-4509).

[11] The 19 documents are HanoverPriv235, HanoverPriv243, HanoverPriv211-HanoverPriv220, HanoverPriv292, HanoverPriv076 and HanoverPriv451, HanoverPriv247, HanoverPriv284 and HanoverPriv285, and HanoverPriv450 (DN 251-4 Exhibit 2). However, in a separate filing Defendants indicate they will produce 13 documents from Category 1, two from Category 2, two from Category 3, three from Category 5 which is a total of 20 documents (DN 251-1). Thus, it is not clear whether Defendants have produced 19 or 20 documents.

[12] The eight documents are HanoverPriv288, HanoverPriv289, HanoverPriv303, HanoverPriv382, HanoverPriv390, HanoverPriv391, HanoverPriv444 and HanoverPriv445 (DN 251-4 Exhibit 2). Defendants explained the documents are not relevant to the claims and defenses because they are dated after December 31, 2003 and do not relate to pre-2004 issues (DN 251-4 PageID # 4941 Exhibit 2).

irrelevance (DN 257 SEALED PageID # 5112-13 n. 6). Thus, there are a total of 199 documents at issue, and the Court will use that figure in the discussion and analysis that follows.

   1.  Arguments of the Parties

   Essentially, Plaintiffs rely on the similarity of the privilege log descriptions and the claimed content of the 204(h) documents to argue the Court should conduct an *in camera* review of the 199 documents because the content in these documents may pertain to matters of plan administration **OR** may satisfy the threshold requirement for *in camera* review under the crime-fraud exception (Id. PageID # 4484-99). Although Plaintiffs make general assertions about the significance of all 26 of the recently produced 204(h) documents, their memoranda focus on the purported content in the Klein-Huber Letter dated November 6, 2003 (HanoverPriv174450-52), the DeMatties Memo of May 20, 2004 (HanoverPriv174495-99), and the November 17-19, 2003 Email String (HanoverPriv174491-93 and HanoverPriv174418-23) (DN 242 SEALED PageID # 4484-99). Plaintiffs assert they were unable to file this motion sooner because Defendants produced the 204(h) documents after the close of written discovery (Id. PageID # 4485).

   Defendants object, alleging that Plaintiffs are relying on gross mischaracterizations of the 204(h) documents (DN 250 SEALED PageID # 4889, 4894-900). Defendants also argue content in the Klein-Huber Letter dated November 6, 2003 (HanoverPriv174450-52), the DeMatties Memo of May 20, 2004 (HanoverPriv174495-99), and the November 17-19, 2003 Email String (HanoverPriv174491-93 and HanoverPriv174418-23) is not relevant to any claims or defenses remaining in this case, instead it pertains to the previously dismissed cutback and cutback-related breach of fiduciary duty claims (DN 250 SEALED PageID # 4889, 4894-900). Additionally, Defendants object because Plaintiffs' untimely privilege challenges are prejudicial to Defendants (Id. PageID # 4889, 4900-07). Defendants contend that none of the 199 documents fall within

the fiduciary exception (DN 250 SEALED PageID # 4889, 4909). Further, Defendants assert

Plaintiffs cannot make a *prima facie* factual showing that Defendants were engaging or planning

a crime or fraud at the time of the communications because the law regarding how to calculate

lump sum whipsaw payments was in an unsettled state and they believed their positions on

disclosure and the 2004 amendment were correct (DN 250 SEALED PageID # 4889, 4909-18)[13].

Defendants also assert, because the documents are not relevant to the issues remaining in the

case, Plaintiffs cannot make a *prima facie* factual showing that each communication is

sufficiently related to and made in the furtherance of that crime or fraud (Id.)[14]. In the

alternative, if the Court decides to conduct an *in camera* review, Defendants contend they are

entitled to make an additional, document-by-document submission to show why the crime-fraud

exception does not apply, and the Court must make findings on a document-by-document basis

(DN 250 SEALED PageID # 4918).

In reply, Plaintiffs' argue their motion is timely and appropriate given Defendants'

production of the 204(h) documents after the close of discovery and the absence of a scheduling

order deadline for challenging privilege claims (DN 257 PageID # 5109-23). Plaintiffs contend

that some of the content in the Klein-Huber letter dated November 6, 2003

(HanoverPriv174452), the November 17-19, 2003 Email String (HanoverPriv174491-93 and

HanoverPriv174418-23), and the DeMatties Memo of May 20, 2004 (HanoverPriv174495-99) is

directly relevant to their whipsaw and whipsaw-related breach of fiduciary duty claims because it

---

[13] *See* Matter of Doe, 551 F.2d 899, 902 (2d Cir. 1977) (An attorney-client conversation would be differentiated from crime-fraud where a client goes "to his attorney in good faith, seeking an opinion as to the legality of certain conduct in an area where legal boundaries may be difficult for the layman to discern.").

[14] *See* Automated Solutions Corp. v. Paragon Data Systems, Inc., 756 F.3d 504, 518 (6th Cir. 2014) (the "in-furtherance-of" standard requires more than potential relevance); In re Search Warrant Executed at Law Offices of Stephen Garea, No. 97-4112, 1999 WL 137499, at *3 (6th Cir. Mar. 5, 1999) (tangential relationship between certain documents and the crimes charged in an indictment insufficient to make a *prima facie* showing as to the in the furtherance requirement).

shows an affirmative effort by Defendants, in concert with their attorneys, to conceal from the Plan participants, while their potential whipsaw claims were timely, the IG's conclusions that the methodology used to calculate the lump sum distributions violated ERISA and participants were entitled to additional benefits (DN 257 PageID # 5109-23). Further, Plaintiffs contend the DeMatties Memo of May 20, 2004 also indicates the reason for the 2004 amendment was to eliminate whipsaw liability without advising Plan participants and, if the IG was correct, the 2004 and 2005 amendments were procedurally and substantively invalid (Id. citing HanoverPriv174498-99). Plaintiffs assert that this evidence is relevant to the whipsaw-related breach of fiduciary duty claim that the Sixth Circuit explicitly said is still alive in the district court (Id. PageID # 5122 citing Durand II, 806 F.3d at 377). Citing the Supreme Court decision in Zolin, 491 U.S. at 574-75, Plaintiffs argue the Court should exercise its discretion and conduct the *in camera* review because they have made the threshold showing under the crime-fraud exception (Id. PageID # 5122-23).

    2. Analysis

In an earlier section of this memorandum opinion, the Court carefully considered Plaintiffs' diligence in filing this motion and the potential prejudice to Defendants. After considering the parties' arguments and the findings set forth in that earlier section, the Court concludes that Plaintiffs' motion is timely under the circumstances. The Court will now address the merits of Plaintiffs' motion.

    a. Relevance

Here, Plaintiffs are relying on purportedly relevant content in the Klein-Huber Letter dated November 6, 2003 (HanoverPriv174450-52), the DeMatties Memo of May 20, 2004 (HanoverPriv174495-99), and the November 17-19, 2003 Email String (HanoverPriv174491-93

and HanoverPriv174418-23) to argue the 199 documents, with similar privilege log descriptions, may also have relevant material and, therefore, the Court should conduct an *in camera* review of the documents. Defendants assert that Plaintiffs' reasoning is fatally flawed because the content in the three documents, and the 199 documents, is not relevant to any remaining claim or defense in this action. Rule 26(b)(1) of the Federal Rules of Civil Procedure will guide the Court's analysis of this discovery dispute.

The Rule provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . ." Fed. R. Civ. P. 26(b)(1). In assessing whether the discovery is "proportional to the needs of the case," courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.; Advisory Committee Notes 2015 Amendment. The Rule also directs that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id.

Notably, the 2000 amendments to Rule 26(b)(1) replaced prior language defining relevant discovery as that relating to the "subject matter" of the litigation the more restrictive "claim or defense" language. Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note (2000 Amendment). "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note (2000 Amendment). "This limitation ensured that discovery would no longer be used to troll for new claims or causes of action, but

that the requested discovery was relevant to the specific claims and defenses before the court."

Franklin v. United States, No. 12-1167 KBM/LFG, 2013 WL 11336864, at *2 (D.N.M. Aug. 28, 2013); *see also* Monte H. Greenwalt Revocable Trust v. Brown, No. 2:12-cv-01983 LRH-VCF, 2013 WL 6866760, at *3 (D. Nev. Dec. 19, 2013) ("This prevents litigants from engaging in 'fishing expeditions' that may expose the defendant to claims not previously asserted in the plaintiff's complaint.").  As described by another court:

> Rule 26(b)(1) permits a party to obtain discovery that is relevant to "any party's claim or defense."  If a complaint states a claim,  then a party may engage in liberal discovery and "fish" for evidence to support that claim. . . . However, Rule 26(b)(1) does not authorize what [plaintiff] seeks: to fish for evidence to support new claims that are not contained in the complaint. This would frustrate the fundamental goals of Rule 8 and Rule 26, which exist to provide a defendant with "fair notice" of the claims against it and "avoid surprise at trial."

Haigh v. Constr., Indus. & Laborers Joint Pension Trust for S. Nev., Plan A & Plan B, No. 2:14-cv-1545-JAD-VCF, 2015 WL 1886666, at *6 (D. Nev. April 24, 2017) (citations omitted). Thus, the current version of the rule and the associated commentary demonstrate that a party is to be held to discovery within the scope of the claims and defenses actually asserted in the pleadings, and may not employ discovery as a means of investigating whether additional claims might be available.  Samsung Elecs. Am., Inc. v. Chung, No. 3:15-cv-4108-D, 321 F.R.D. 250, 280 (N.D. Tex. June 26, 2017).

Plaintiffs contend the information in the Klein-Huber Letter dated November 6, 2003 (HanoverPriv174450-52), the DeMatties Memo of May 20, 2004 (HanoverPriv174495-99), and the November 17-19, 2003 Email String (HanoverPriv174491-93 and HanoverPriv174418-23) is relevant to their whipsaw-related breach of fiduciary duty claims.  Plaintiffs assert the information shows an affirmative effort by Defendants, in concert with their attorneys, to conceal

from the Plan participants, while their potential whipsaw claims were timely, the IG's conclusions that the methodology used to calculate the lump sum distributions violated ERISA and participants were entitled to additional benefits.

In an earlier section of this memorandum opinion, the Court found this basis for alleging a whipsaw-related breach of fiduciary duty is not actually set forth in the amended complaint (*see* DN 46 ¶¶ 44-47 and 88-91). Further, the Court concluded the following whipsaw-related breach of fiduciary duty claims are actually set forth in the amended complaint:

> 1. Defendants breached their fiduciary duty under ERISA § 404 by failing to independently investigate the legality of the Plan's calculation method and override the Plan terms pursuant to ERISA § 404(a)(1)(D).
>
> 2. Defendants breached their fiduciary duty under ERISA § 404 by concealing from participants the plan's whipsaw calculation methodology (*i.e.*, "projecting" to age 65 at the same rate as the ERISA-required discount rate, which was designed to be a meaningless "wash" calculation).

Therefore, the Court will consider only these two claims in assessing whether information in the above three documents and the purportedly analogous 199 documents is relevant within the meaning of Rule 26(b)(1). Additionally, the Court will not consider whether these documents are relevant to whipsaw-related breach of fiduciary duty claims asserted by participants who received lump sum distributions between January 1, 2004 and August 17, 2006 because those claims have been dismissed on the merits. Moreover, the Court will not consider whether these documents contain information that is relevant to the cutback and cutback-related breach of fiduciary duty claims because the Sixth Circuit affirmed this Court's ruling that the claims are time-barred.

The Klein-Huber Letter dated November 6, 2003 (HanoverPriv174450-52) sets forth legal advice pertaining to the attached revised draft of the 204(h) notice and the proposed 2004

amendment to the Plan changing the crediting rate from participant elected investment indices to the GATT (DN 238-2 SEALED, Exhibit 1). However, the first and second full paragraphs at page 3 of the letter contain some information that is relevant to the whipsaw and whipsaw-related breach of fiduciary duty claims actually asserted in the amended complaint.

The DeMatties Memo of May 20, 2004 (HanoverPriv174495-99) sets forth legal advice regarding the 204(h) notice requirements for the proposed 2005 amendment to the Plan (DN 238-3 SEALED, Exhibit 2). At pages 4 and 5, the memo sets forth information that is relevant to the whipsaw and whipsaw-related breach of fiduciary duty claims actually asserted in the amended complaint.

The November 17-19, 2003 Email thread (HanoverPriv174491-93 and HanoverPriv174418-23) primarily discusses Plan participant reaction to the 204(h) notice regarding the 2004 amendment eliminating the self-directed investments and whether to provide a further explanation regarding the amendment (DN 238-4 SEALED, Exhibit 3). However, the email thread does include some information that is relevant to the whipsaw and whipsaw-related breach of fiduciary duty claims actually asserted in the amended complaint.

b. Fiduciary exception

With these relevance determinations in mind and the previous thorough discussion regarding the fiduciary exception to the attorney-client privilege and the work product doctrine (*see* DN 209 PageID # 3884-3903), the Court will now address whether to review *in camera* all or some of the 199 documents that Plaintiffs have organized into nine categories. As to the 108 documents in Category 1, subsequent to the filing of this motion Defendants reviewed the privilege log entries and elected to produce 13 of the documents (DN 251-1 PageID # 4925-26). After carefully reviewing all 108 privilege log entries (DN 243-2) and the arguments of the

parties, the Court concludes an *in camera* review of the remaining 95 documents in Category 1 would be appropriate as they seem to pertain to matters of plan administration and may be relevant to the whipsaw and whipsaw-related breach of fiduciary duty claims actually asserted in the amended complaint.

As to the 41 documents in Category 2, Defendants reviewed the privilege log entries and elected to produce 2 of the documents (DN 251-1 PageID # 4926). After carefully reviewing all 41 privilege log entries (DN 243-3) and the log entries for three documents discussed above, the Court concludes an *in camera* review of the remaining 39 documents in Category 2 would be appropriate as they seem to pertain to matters of plan administration and may be relevant to the whipsaw and whipsaw-related breach of fiduciary duty claims actually asserted in the amended complaint. Therefore, Plaintiffs' request for an *in camera* review of these documents is **GRANTED**.

As to the 2 documents in Category 3, Defendants reviewed the privilege log entries and elected to produce both documents (DN 251-1 PageID # 4927). Therefore, Plaintiffs' request for an *in camera* review of these documents is **DENIED** as moot.

As to the 15 documents in Category 4, Defendants reviewed the privilege log entries and do not agree to produce any of the documents (DN 251-1 PageID # 4927). The Court, after carefully reviewing all 15 privilege log entries (DN 243-5) and the log entries for three documents discussed above, concludes an *in camera* review of the 15 documents in Category 4 would **not** be appropriate. The log entries indicate the legal advice was requested or received in connection with a possible corporate transaction. Based upon the information currently before the Court, no reason exists to believe any content in these documents pertains to matters of plan

administration that is relevant to the whipsaw and whipsaw-related breach of fiduciary duty claims. Therefore, Plaintiffs' request for an *in camera* review of these documents is **DENIED**.

As to the 10 documents in Category 5, Defendants reviewed the privilege log entries and elected to produce 3 of the documents and announced that 3 should not have been logged because they are irrelevant (DN 251-1 PageID # 4928). The Court has carefully reviewed all 10 privilege log entries (DN 243-6), and concludes an *in camera* review of the remaining 7 documents in Category 5 would be appropriate as they seem to pertain to matters of plan administration and may be relevant to the whipsaw and whipsaw-related breach of fiduciary duty claims actually asserted in the amended complaint. Therefore, Plaintiffs' request for an *in camera* review of the 7 documents is **GRANTED**.

As to the 21 documents in Category 6, Defendants reviewed the privilege log entries and do not agree to produce any of the documents (DN 251-1 PageID # 4928-29). After carefully reviewing all 21 privilege log entries (DN 243-7) and the arguments of counsel, the Court concludes an *in camera* review of the 21 documents in Category 6 would **not** be appropriate. The log entries indicate the legal advice was requested or received in connection with a request for an opinion letter prepared at the Plan's request for a vendor being retained for record keeping functions beginning in 2004. Based upon the information currently before the Court, no reason exists to believe any content in these documents pertains to matters of plan administration that is relevant to the whipsaw and whipsaw-related breach of fiduciary duty claims. Therefore, Plaintiffs' request for an *in camera* review of these documents is **DENIED**.

As to the 1 document in Category 7, Defendants reviewed the privilege log entry and do not agree to produce the document (DN 251-1 PageID # 4929). After carefully reviewing the privilege log entries (DN 243-8) and the arguments of counsel, the Court concludes an *in camera*

review of the document in Category 7 would **not** be appropriate. The legal advice was in connection with a draft liability insurance application for Hanover. Based upon the information currently before the Court, no reason exists to believe any content in these documents pertains to matters of plan administration that is relevant to the whipsaw and whipsaw-related breach of fiduciary duty claims. Therefore, Plaintiffs' request for an *in camera* review of these documents is **DENIED**.

As to the 8 documents in Category 8, Defendants reviewed the privilege log entries and do not agree to produce the documents (DN 251-1 PageID # 4929-30). After carefully reviewing the privilege log entries (DN 243-9) and the arguments of counsel, the Court concludes an *in camera* review of the documents in Category 8 would **not** be appropriate. Based upon the information currently before the Court, no reason exists to believe any content in these documents pertains to matters of plan administration that is relevant to the whipsaw and whipsaw-related breach of fiduciary duty claims. Therefore, Plaintiffs' request for an *in camera* review of these documents is **DENIED**.

As to the 12 documents in Category 9, Defendants reviewed the privilege log entries and do not agree to produce the documents (DN 251-1 PageID # 4930). After carefully reviewing the privilege log entries (DN 243-10) and the arguments of counsel, the Court concludes an *in camera* review of the documents in Category 9 would **not** be appropriate. The Court previously conducted an *in camera* review of these 12 documents in connection with the order issued on October 17, 2016, and concluded they were privileged and should not be produced (DN 209). Therefore, Plaintiffs' request for an *in camera* review of these documents is **DENIED**.

       c.   Crime-fraud exception

Out of an abundance of caution, the Court has considered whether review of the documents in Categories 4, 6, 7, 8, and 9 would be appropriate under the crime-fraud exception to the attorney-client privilege. The crime-fraud exception test is two-pronged. <u>Invesco Institutional (N.A.), Inc. v. Paas</u>, 244 F.R.D. 374, 382 (W.D. Ky. 2007) (citing <u>Rainer v. Union Carbide Corp.</u>, 402 F.3d 608,625 (6th Cir. 2005)). Initially, the party seeking production must make a *prima facie* showing that a sufficiently serious crime or fraud has occurred, which merits encroaching upon the attorney-client privilege. <u>Id.</u> Second, the seeking party must establish some relationship between the communication at issue and the *prima facie* violation. <u>Id.</u> To satisfy this *prima facie* showing, "the evidence presented by the [party seeking production] . . . must be such that 'a prudent person [would] have a reasonable basis to suspect the perpetration of a crime or fraud.'" <u>Id.</u> at 382-83 (quoting <u>United States v. Collis</u>, 128 F.3d 313, 321 (6th Cir. 1997) (citation omitted)).

A mere accusation of wrongdoing, without more, is not sufficient. <u>Invesco Institutional (N.A.), Inc.</u>, 244 F.R.D. at 382. "The attorney-client privilege is not vitiated merely because a client is alleged to have committed an unlawful or fraudulent act; there also must be a *prima facie* showing that the confidential communication was involved in the preparation or furtherance of the specific unlawful conduct." <u>Id.</u> at 392 (quoting <u>Glidden Co. v. Jandernoa</u>, 173 F.R.D. 459, 481-82 (W.D. Mich. 1997)). As one court has explained "[t]here is a difference between going to a lawyer and asking the lawyer to tell you whether the course of action you want to pursue is arguably within the limits of what the law permits and going to a lawyer and asking the lawyer to assist you in violating the law or to show you how to violate the law."

Williams v. Duke Energy Corp., No. 1:08-cv-00046, 2014 WL 3895227, at *10 (S.D. Ohio Aug. 8, 2014).

The Supreme Court of the United States has held that trial courts are entitled to make an *in camera* examination of the allegedly privileged materials in order to determine whether the crime-fraud exception applies. United States v. Zolin, 491 U.S. 554, 572-73 (1989). Notably, a party's unsubstantiated allegation of a criminal purpose is not sufficient to warrant an *in camera* review of documents withheld on claim of attorney-client privilege. Invesco Institutional (N.A.), Inc., 244 F.R.D. at 384 (citing Zolin, 491 U.S. at 571). Instead, the party raising the crime-fraud exception to a claim of attorney-client privilege "must present evidence sufficient to support a reasonable belief that *in camera* review might yield evidence that establishes the exception's applicability." Zolin, 491 U.S. at 574-75. This "threshold showing to obtain *in camera* review may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged." Zolin, 491 U.S. at 575. The evidentiary showing necessary to justify an *in camera* inspection is "weakly analogous to probable cause." In re: Grand Jury Subpoenas 04-124-03 & 14-124-05, 454 F.3d 511, 520 (6th Cir. 2006).

The Court has carefully reviewed the Klein-Huber Letter dated November 6, 2003 (HanoverPriv174450-52), the DeMatties Memo of May 20, 2004 (HanoverPriv174495-99), and the November 17-19, 2003 Email thread (HanoverPriv174491-93 and HanoverPriv174418-23). Additionally, the Court has reviewed the final 7 of the 204(h) documents that Defendants produced to Plaintiffs on December 5, 2017 (*see* DN 258-1, Exhibit 20). Contrary to Plaintiffs' assertion, the communications in these documents concern whether the course of action Defendants want to pursue with regard to the 204(h) notices and the 2004 and 2005 amendments to the Plan is arguably within the limits of what the law permits. In light of this finding,

Plaintiffs have made an unsubstantiated allegation of a criminal purpose which is not sufficient to warrant an *in camera* review of the documents in Categories 4, 6, 7, 8, and 9 which are being withheld on claim of attorney-client privilege.

## ORDER

**IT IS HEREBY ORDERED** that Defendants' motion to enforce scheduling order and for protective order regarding untimely additional privilege challenges (DN 235 SEALED) is DENIED.

**IT IS FURTHER ORDERED** that Defendants' motion for expedited hearing (DN 236) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to update and amend the class certification order (DN 239) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Plaintiffs' motion (DN 239) as to proposed amendments to the Lump Sum Class is **GRANTED** to the extent set forth above.

**IT IS FURTHER ORDERED** that Plaintiffs' motion (DN 239) as to proposed amendments to Subclass A is **GRANTED** to the extent set forth above and **DENIED** to the extent set forth above.

**IT IS FURTHER ORDERED** that **by no later than March 2, 2018**, the parties shall submit a proposed amended class certification order based on the above rulings.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for *in camera* review of 218 additional documents that Defendants are withholding on privilege grounds (DN 242 SEALED) is **GRANTED** as to the documents in Categories 1, 2, and 5, and **DENIED** as to the documents in Categories 3, 4, 6, 7, 8, and 9.

**IT IS FURTHER ORDERED** that **by no later than March 2, 2018**, Defendants shall submit directly to the undersigned's Bowling Green chambers for *in camera* review the documents in Categories 1, 2, and 5.

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

February 16, 2018

Copies to:     Counsel of Record