Attachment 1 to Motion for Preliminary Approval

*Durand v. The Hanover Insurance Group, et al.,*
3:07-cv-130-HBB (W.D. Ky.)

# Class Settlement Agreement

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

---

JENNIFER DURAND, *et al.,*

        Plaintiffs,

    v.                                    Case No. 3:07-CV-130-HBB

THE HANOVER INSURANCE GROUP, INC.
and THE ALLMERICA FINANCIAL CASH
BALANCE PENSION PLAN,

        Defendants.

---

**CLASS ACTION SETTLEMENT AGREEMENT**
**BETWEEN CLASS REPRESENTATIVES, JENNIFER A. DURAND AND**
**JAMES A. FISHER, AND DEFENDANTS, THE HANOVER INSURANCE GROUP,**
**INC. AND THE ALLMERICA FINANCIAL CASH BALANCE PENSION PLAN**

---

# **TABLE OF CONTENTS**

RECITALS ............................................................................................................................. 1

TERMS OF SETTLEMENT ................................................................................................. 3

1.  Definitions ................................................................................................................. 3

2.  Total Settlement Amount ......................................................................................... 17

3.  Plan of Allocation .................................................................................................... 18

4.  Calculation of Listed Class Members' Estimated Settlement Benefits ................... 20

5.  Support for Approval of Settlement ......................................................................... 21

6.  Notice of Proposed Class Action Settlement ........................................................... 22

7.  Objections to the Settlement .................................................................................... 24

8.  Final Court Approval of the Settlement ................................................................... 24

9.  Effect of Failure to Obtain Final Approval of Settlement ....................................... 25

10. Initial Payments From the Total Settlement Amount ............................................... 27

11. Calculation of Final Settlement Benefits ................................................................. 27

12. Dispute Resolution ................................................................................................... 31

13. Election of Payment Form for Settlement Benefits ................................................. 31

14. Final Payments to Listed Class Members ................................................................ 32

15. Release ...................................................................................................................... 37

16. Tax Qualification of Payments ................................................................................. 43

17. No Admission of Liability ........................................................................................ 44

18. Plan Amendment ....................................................................................................... 44

19. No Restriction on the Plan Sponsor's Business or Plan Administration Communications ................ 44

20. Costs ......................................................................................................................... 45

21. Media Communications ............................................................................................ 45

22. Confidentiality .......................................................................................................... 46

23. Waivers ..................................................................................................................... 47

24. Extensions of Time ................................................................................................... 47

25. Deadlines Falling on Weekends or Holidays ........................................................... 47

26. Force Majeure ........................................................................................................... 47

27. Severability ............................................................................................................... 47

28. Notices ...................................................................................................................... 48

29. Tax Consequences .................................................................................................... 48

30. Entire Agreement ..................................................................................................... 49

31. No Third-Party Beneficiaries ................................................................................... 49

32. Binding Effect of the Agreement ............................................................................. 50

33.  Modifications ................................................................................................................. 50

34.  Enforcement of Agreement ............................................................................................ 50

35.  Multiple Originals/Counterparts ................................................................................... 50

36.  Authority of Persons Signing Agreement ...................................................................... 50

37.  Section Titles .................................................................................................................. 50

38.  No Presumption Against Drafter .................................................................................... 51

39.  Arm's Length Transaction .............................................................................................. 51

40.  All Terms Are Material in Their Exact Form ................................................................ 51

41.  Voluntary Entry Into Agreement ................................................................................... 51

42.  Choice of Law ................................................................................................................ 51

43.  Court's Continuing Jurisdiction .................................................................................... 52

44.  Class Action Fairness Act .............................................................................................. 52

Subject to approval by the United States District Court for the Western District of Kentucky, this Class Action Settlement Agreement (the "Agreement") is entered into by and between Jennifer A. Durand and James A. Fisher (collectively, "Class Representatives"), for themselves and on behalf of Class Members as defined in **Section 1** below, and Defendants, The Hanover Insurance Group, Inc. ("Hanover") and The Allmerica Financial Cash Balance Pension Plan (the "Plan") (collectively, "Defendants").

## RECITALS

1.      On March 9, 2007 Jennifer A. Durand filed suit on behalf of herself and other similarly-situated persons against Defendants under the Employee Retirement Income Security Act of 1974 ("ERISA"), alleging that the Plan projected benefits to normal retirement age using a formula that understated the value of future annual interest credits. Specifically, Durand asserted so-called "whipsaw" claims, in which she alleged that she received a lump sum distribution that was less than the actuarial equivalent of the benefit she would have received had she left her benefit in the Plan until age 65.

2.      The case has been actively litigated since 2007. After a dismissal of the Complaint for failure to exhaust administrative remedies was reversed and remanded by the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") on March 18, 2009, Durand filed a First Amended Complaint on December 15, 2009, adding new named plaintiffs, new subclasses, and new violations of ERISA, including interest crediting floor claims, cutback claims, breach of fiduciary duty claims, and allegations of improper notice from the Plan.  On March 31, 2011 and January 6, 2012, the Court dismissed the new interest crediting floor claims, cutback claims and improper notice claims, as well as related fiduciary breach claims, on statute of limitations grounds.  On November 6, 2015, the Sixth Circuit affirmed the dismissal of those claims.

3.       On October 2, 2013, the Court entered summary judgment dismissing the whipsaw claims and related fiduciary breach claims brought by named plaintiff Walter J. Wharton in the First Amended Complaint.

4.       On December 17, 2013, the Court certified the following non-opt-out class and certified Jennifer A. Durand as its representative:

> All persons who participated in the Allmerica Cash Balance
> Pension Plan who vested in an accrued benefit under the Plan's
> cash balance formula and received a lump sum distribution from
> the Plan between March 1, 1997, and December 31, 2003; and the
> beneficiaries and estates of such persons.

5.       On December 17, 2013, the Court also certified the following subclass of the certified class, which it named "Subclass A", and certified James A. Fisher as its representative:

> All members of the Lump Sum Class who received a lump sum
> distribution from the Plan between March 1, 1997 and March 12,
> 2002; and the beneficiaries and estates of such persons.

6.       The Parties have engaged in substantial fact discovery and extensive motion practice regarding discovery issues. The Court has issued several orders addressing a variety of discovery disputes, and on June 14, 2017, the Sixth Circuit denied Defendants' petition for a writ of mandamus arising from a discovery dispute.

7.       Defendants have also filed a motion for summary judgment to dismiss the whipsaw and related fiduciary breach claims of the certified subclass represented by James A. Fisher.  That motion has been stayed pending completion of discovery.

8.       The Parties were prepared to vigorously litigate their positions to the Court and to the Sixth Circuit.  In March 2018, however, after previous unsuccessful attempts over the years to negotiate a resolution of their dispute, the Parties began communicating again about a possible settlement.  These communications continued through numerous discussions between the Parties until the Parties entered into this Agreement.

9.      Both Parties continue to believe in the merits of their respective positions. However, they enter into this Agreement in order to avoid the risk and expense of continued litigation while getting the benefits contemplated by this Agreement, including a final resolution of all claims, known and unknown, that have been or might be asserted by Class Representatives or Class Members against Defendants and the other Released Parties that are in any way related to, or arise out of, the Plan.

10.     Defendants believe that settling the Litigation in accordance with the terms and conditions of this Agreement is in the best interests of the Plan and all Plan participants. Likewise, Class Representatives and Class Counsel have fully investigated and evaluated their claims and Defendants' available defenses. After extensive arm's-length negotiations over the terms of this Agreement, and considering the benefits promised by this Agreement and the costs and uncertainty of establishing a right to recovery beyond what is contemplated in this Agreement, Class Representatives and Class Counsel have concluded that this Agreement is fair, reasonable, adequate, and in the best interests of Class Representatives and other Class Members.

NOW THEREFORE, in consideration of the promises, covenants and releases contained in this Agreement, as well as the good and valuable consideration provided for in this Agreement, the receipt and sufficiency of which the Parties acknowledge, the Parties agree as follows:

<u>**TERMS OF SETTLEMENT**</u>

**1.      DEFINITIONS**

As used in this Agreement, capitalized words, terms and phrases not otherwise defined in this Agreement have the meaning provided below.

A.      <u>"Agreement"</u> means this Class Action Settlement Agreement entered into between Defendants and Class Representatives, for themselves and on behalf of Class Members.

B.     "Appeal" means an appeal to the Sixth Circuit.

C.     "Applicable 417(e) Interest Rate" means the listed interest rate for the calendar year applicable to a Payment Date.  The applicable calendar year for a Class Member's first Payment Date is the calendar year in which the Class Member's first Payment Date occurs.  If a Class Member has a subsequent Payment Date, then if the subsequent Payment Date is in the calendar year following the applicable calendar year from the Class Member's first Payment Date, then the applicable calendar year for that subsequent payment date will be the applicable calendar year of the Class Member's first Payment Date, otherwise the applicable calendar year of the Class Member's subsequent Payment Date is the calendar year during which that subsequent Payment Date occurs.  The Applicable 417(e) Interest Rates for each calendar year are as follows:

| Year that contained the Payment Date | Applicable 417(e) Interest Rate |
|---|---|
| 1997 | 6.48% |
| 1998 | 6.11% |
| 1999 | 5.25% |
| 2000 | 6.15% |
| 2001 | 5.78% |
| 2002 | 5.12% |
| 2003 | 4.96% |

D.     "Approval Date" is defined in **Section 11(D)**.

E.     "Beneficiaries" collectively, or "Beneficiary" in the singular, mean any individual described in **Section 1(G)(2)** who, between March 1, 1997 and December 31, 2003, received a pre-retirement death benefit from the Plan in the form of a lump sum distribution from the Plan attributable to the amount of a deceased Plan participant's Cash Balance Account before the Plan participant's 65th birthday.

F.     "Cash Balance Account" means an account as defined in Section 4.01 of Part I of the Plan.

G.    "Class" means a non-opt-out class consisting of:

(1) All individuals who participated in The Allmerica Financial Cash Balance Pension Plan, vested in an accrued benefit under the Plan's cash balance formula, and before reaching age 65 received from the Plan between March 1, 1997 and December 31, 2003 lump sum distributions attributable to their Cash Balance Accounts at the time or times of distribution; (2) the Beneficiaries and estates of Plan participants described in **Section 1(G)(1)** that received lump sum distributions meeting all the requirements of **Section 1(G)(1)** in place of those Plan participants, and (3) provided the Plan participant or his or her Beneficiary or estate is listed on Attachment A ("the Spreadsheet').

The Class differs slightly from the "Lump Sum Class," which the Court certified with the related subclass as a non-opt-out class pursuant to an order in this Litigation dated December 17, 2013. The Class definition was revised to correct the name of the Plan, to clarify that it includes only persons who received lump sum distributions attributable to their Cash Balance Accounts before the Plan participants reached normal retirement age at age 65 and to clarify that the Class includes Beneficiaries and estates which received lump sum distributions attributable to a deceased Participant's Cash Balance Account. In addition, in order to eliminate doubt, the Class is limited to those Participants, Beneficiaries and estates listed on the Attachment A Spreadsheet. To effectuate this Agreement, Plaintiffs shall request in their motion for preliminary approval of this Agreement that the Court modify its December 17, 2013 class definition to read as described above in this **Section 1(G)**. Plaintiffs shall represent to the Court that the request is made on behalf of both Plaintiffs and Defendants. If the Court declines to approve the requested Class definition for purposes of the Settlement and if the Parties have not agreed in writing to a different Class definition that is approved by the Court, this Agreement shall be null and void.

H.    "Class Counsel" means the following attorney, whom the Court appointed as Class Counsel under Fed. R. Civ. P. 23(g) pursuant to an order in the Litigation dated December 17, 2013:

Eli Gottesdiener
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215

I.      "Class Counsel's Fees" means Class Representatives' and Class Counsel's attorneys' fees, costs, and expenses in connection with this Litigation that Class Counsel will submit for consideration and approval by the Court pursuant to Fed. R. Civ. P. 23(h). Class Counsel's Fees shall be paid by Hanover to Class Counsel as provided in **Section 10(A)**. Class Counsel's Fees will count toward the Total Settlement Amount. Class Counsel's Fees consist of two components:  (1) attorneys' fees; and (2) litigation costs and expenses.  The attorneys' fees component of Class Counsel's Fees shall not exceed 33.3% of the Total Settlement Amount. The litigation costs and expenses component of Class Counsel's Fees shall not exceed $450,000. (Settlement Administration Costs are not part of the costs or expenses components of Class Counsel's Fees. Hanover shall reimburse Class Counsel for Settlement Administration Costs as described in **Section 1(EEE)**). Except as specifically provided in this Agreement, Defendants shall have no liability or responsibility for Class Counsel's Fees or for any other attorneys' fees, costs or expenses (including Settlement Administration Costs) incurred by, or on behalf of, Class Representatives or any Class Member or that Class Representatives or any Class Member has, or ever had, or ever may have, in any way relating to, or arising out of, the Released Claims, as defined in **Sections 15(C)** through **15(G)**.

J.      "Class Members" collectively, or "Class Member" in the singular, mean the members of the Class, whether the Class Member is or was (i) a Participant, (ii) a Beneficiary, or (iii) an estate, as described in **Section 1(G)(2)**, of a deceased Plan participant.  Class Members will not include any alternate payees identified in a QDRO.

K.      "Class Members List" means the list of Listed Class Members, which list shall initially consist of the Spreadsheet supplemented by, to the extent known to the Plan, the

following information: (i) the Listed Class Member's name; (ii) the Listed Class Member's last known mailing address; and (iii) the Listed Class Member's date of birth.   The Parties have made a good faith effort using available records to list every Class Member on the Spreadsheet. But, given the passage of time since some distributions, there may be Class Members who were not included.  Any such Class Members shall have the opportunity to be included on the Revised Spreadsheet, as set forth in **Section 11**.   The Revised Spreadsheet will be the final Class Members List.

L.  "Class Representatives" means collectively Jennifer A. Durand and James A. Fisher.

M.  "Class Representatives' Incentive Awards" means an amount, as determined by the Court, that will not exceed: (i) $20,000 for Jennifer A. Durand; and (ii) $17,500 for James A. Fisher, and which will be paid as an additional Plan benefit along with each Class Representative's Final Individual Net Settlement Benefit as appropriate inducement for them to become Class Representatives and in recognition of their contributions to the Class. Class Representatives' Incentive Awards will count toward the Total Settlement Amount, and Defendants otherwise will have no liability or responsibility for such awards. Should the Court not approve Class Representatives' Incentive Awards or not approve such awards in the amount requested, the Court's decision shall have no impact on the validity of the remainder of this Agreement, as long as such modification does not impose any obligation to pay any amount in excess of the Total Settlement Amount.

N.  "Code" means the Internal Revenue Code of 1986, as amended, and the regulations thereunder.

O.  "Complaints" refers to the Complaint and First Amended Complaint filed in this Litigation.

7

P.       "Confidential Data" is defined in **Section 22**.

Q.       "Court" means the United States District Court for the Western District of Kentucky.

R.       "Defendants' Counsel" means:

> Alan S. Gilbert
> Dentons US LLP
> 233 S. Wacker Drive, Suite 5900
> Chicago, IL 60606-6361
> alan.gilbert@dentons.com

S.       "Effective Date" means the date that the Agreement becomes effective, which shall be the first date after all of the following events and conditions have been met or have occurred:

1.       Class Representatives, Class Counsel, Defendants, and Defendants' Counsel have all executed this Agreement;

2.       The Court has entered the Preliminary Approval Order in the form attached as **Exhibit 1**;

3.       The Court has entered the Final Order and Judgment approving this Agreement and dismissing this action with prejudice in the form attached as **Exhibit 2** or the Court has entered an alternate form of a final order and judgment that the Parties have agreed in writing will constitute the Final Order and Judgment;

4.       The time for any motions for reconsideration, motions for rehearing, appeals and/or petitions for certiorari in the Litigation has expired without the filing of any such motions, appeals and/or petitions for review; and

5.       If a motion for reconsideration, motion for rehearing, appeal and/or petition for certiorari is filed, the date upon which all proceedings based on such motions, appeals and/or petitions for certiorari have been finally terminated in such a manner as to permit no further

judicial action and with the Final Order and Judgment having been affirmed in the form entered by the Court. (Affirmance on appeal of a final order and judgment that is otherwise in the form entered by the Court shall constitute an affirmance of the Final Order and Judgment, even if the order on appeal modifies Class Counsel's Fees, Class Representatives' Incentive Awards or Settlement Administration Costs, as long as such modification does not impose any obligations on Defendants to pay any sums in excess of the Total Settlement Amount).

T.    "Enrolled Actuary" means the actuary described in **Section 3(A)**.

U.    "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, and the regulations thereunder.

V.    "Fairness Hearing" means the hearing at which the Court will consider whether to give final approval to the Settlement, consider an award of Class Counsel's Fees, Class Representatives' Incentive Awards and Settlement Administration Costs, enter the Final Order and Judgment, and make such other final rulings as are contemplated by this Agreement. The Parties will seek to set the Fairness Hearing for a date promptly after the filing of the motion for a Preliminary Approval Order, but in no event shall the Fairness Hearing be set less than 90 days after the last date on which the notice under the Class Action Fairness Act ("CAFA") is provided as described in **Section 44**.

W.    "Final Individual Net Settlement Benefit" means the single amount payable as set forth in the Revised Spreadsheet to a Listed Class Member (or Successor, when appropriate) on the Revised Spreadsheet; provided, however, that in no event will the amount of a Final Individual Net Settlement Benefit be less than the appropriate Minimum Settlement Benefit for such Listed Class Member (or Successor, where appropriate) and in no event will a Final Individual Net Settlement Benefit be paid to, or for the benefit of, a Class Member who is not a Listed Class Member on the Revised Spreadsheet.

9

X.     "Final Order and Judgment" means the final order and judgment by which the Court, at or after the Fairness Hearing, approves this Agreement, determines any award of Class Counsel's Fees, Class Representatives' Incentive Awards and Settlement Administration Costs, dismisses all of the claims of Class Members with prejudice, enters a final judgment in accordance with this Agreement, and makes such other final rulings as are contemplated by this Agreement. The Final Order and Judgment shall be in the form attached as **Exhibit 2.** Notwithstanding the foregoing, the entry of a final order and judgment that is other than in the form attached as **Exhibit 2** (or a mutually agreed alternative) shall constitute entry of a Final Order and Judgment if the Parties so agree in writing. In addition, the entry of a final order and judgment that is otherwise in the form attached as **Exhibit 2** shall constitute entry of a Final Order and Judgment even if the Court denies or modifies a request for Class Counsel's Fees, Class Representatives' Incentive Awards or Settlement Administration Costs, as long as such modification does not impose any obligations on Defendants to pay any sum in excess of the Total Settlement Amount.

Y.     "Final Reduction Factor" equals the percentage (not to exceed 100%), which when applied in determining each Individual Net Settlement Benefit for a Listed Class Member, other than a Minimum Settlement Benefit, reduces all Individual Net Settlement Benefits until the sum of all Individual Net Settlement Benefits under Section 4 (and later, all Final Individual Net Settlement Benefits under Section 11) equals the amount of the Net Settlement Fund.

Z.     "Individual Gross Settlement Benefit" means the amount determined for each Payment Amount paid to a Listed Class Member under **Section 3**.  A Listed Class Member's Individual Gross Settlement Benefit is determined only for estimating payments under this Settlement and is not necessarily the amount to be paid to any Listed Class Member.

AA.    "Individual Net Settlement Benefit" means the amount determined for each Listed Class Member under **Section 3**, as set forth in the Spreadsheet; provided, however, that in no event will the amount of an Individual Net Settlement Benefit be less than the amount of the appropriate Minimum Settlement Benefit.  A Listed Class Member's Individual Net Settlement Benefit is determined only for estimating payments under this Settlement and is not necessarily the amount to be paid to any Listed Class Member.

BB.    "IRA" means an individual retirement account as defined by section 408 of the Code.

CC.    "Listed Class Member" means a Class Member who is specifically identified on the Spreadsheet or on the Revised Spreadsheet by a unique personal identification number assigned by the Plan.

DD.    "Litigation" means the above-captioned litigation filed in the United States District Court for the Western District of Kentucky, Case No. 3:07-CV-130-HBB.

EE.    "Mailed Notice" means the Court-approved notice which will be mailed to all Class Members on the Class Members List informing them of this Agreement in the form attached as **Exhibit 3**. Defendants' Counsel and Class Counsel shall cooperate fully with the Notice Administrator to ensure the best practicable Mailed Notice is mailed in a timely and accurate manner.

FF.    "Minimum Settlement Benefit" means a fixed Final Individual Net Settlement Benefit that is either a Subclass A Minimum Settlement Benefit or a Subclass B Minimum Settlement Benefit. (In the case of a Listed Class Member who is a member of both Subclass A and Subclass B, that Listed Class Member shall be entitled only to the Subclass B Minimum Settlement Benefit). To the extent the Plan determines that the law and/or the terms of the Plan prohibit it from paying the appropriate Minimum Settlement Benefit, or any portion of the

appropriate Minimum Settlement Benefit, to a Listed Class Member (or Successor) on the Revised Spreadsheet, the amount the Plan cannot pay shall be paid to the Listed Class Member (or Successor) on the Revised Spreadsheet by Hanover from the Net Settlement Fund. The Parties recognize and agree that such payments, if any, made by Hanover will not be paid as tax-qualified plan benefits and will reduce the Net Settlement Fund. The election process and payment form options described in **Sections 13** and **14** of this Agreement do not apply to Minimum Settlement Benefits paid by Hanover to Listed Class Members on the Revised Spreadsheet.

GG.    "Net Settlement Fund" means the Total Settlement Amount less (1) the amount of Class Counsel's Fees approved by the Court; (2) the sum of Class Representatives' Incentive Awards approved by the Court; and (3) the total amount of the Settlement Administration Costs approved by the Court.

HH.    "Notice Administrator" means the person or entity whom the Court shall appoint in the Preliminary Approval Order to be responsible for providing Mailed Notice to Class Members and publishing the Publication Notice. Class Representatives shall be responsible for selecting the Notice Administrator to propose to the Court for approval, subject to approval of Defendants, which approval shall not be unreasonably withheld.

II.    "Notice Costs" means collectively all costs associated with the Mailed Notice and the Publication Notice.

JJ.    "Notices" means collectively the Mailed Notice and the Publication Notice.

KK.    "Participants" collectively, or "Participant" in the singular, mean an individual who (i) is or was a Plan participant (as defined in Section 2.33 of Part I of the Plan), and (ii) before reaching age 65, received from the Plan, between March 1, 1997 and December 31,

2003, one or more lump sum distributions attributable to the amount in his or her Cash Balance Account at the time.

LL.   "Parties" means Class Representatives and Defendants.

MM.   "Payment Amount" means the portion of a lump sum distribution attributable to the balance in the Cash Balance Account of a Listed Class Member that was paid to a Listed Class Member (or on behalf of a Listed Class Member) by the Plan between March 1, 1997 and December 31, 2003.

NN.   "Payment Date" means the date the Plan distributed to a Listed Class Member a Payment Amount.

OO.   "Plan" means The Allmerica Financial Cash Balance Pension Plan, as has been or may be amended from time to time, and any successor thereto.

PP.   "Plan Administration Costs" means the costs incurred by the Plan in connection with carrying out its obligations under the terms of this Agreement, including the processing of election forms or default elections as the case may be, printing and distributing settlement distribution checks and implementing rollover requests. Plan Administration Costs include costs incurred by the Plan in verifying or providing the data needed in order to implement this Agreement or confirming the data assumptions the Enrolled Actuary will or may use to perform the required calculations and include costs of verification by the Plan of the Enrolled Actuary's calculations of Individual Net Settlement Benefits. Plan Administration Costs shall be the sole responsibility of the Plan and shall not be deducted from the Total Settlement Amount. Plan Administration Costs shall not include any attorneys' fees, expenses or costs incurred by Class Counsel, Class Representatives or the Enrolled Actuary and shall not include Settlement Administration Costs.

QQ.     "Plan of Allocation" means the procedures set forth in **Section 3** that will be used to determine the Final Individual Net Settlement Benefit for each Listed Class Member on the Revised Spreadsheet.

RR.     "Plan participant" means an individual who is or was a participant in the Plan (as defined in Section 2.33 of Part I of the Plan).

SS.     "Plan Sponsor" means The Hanover Insurance Company.

TT.     "Pre-Judgment Interest Rate" means 1.2% per annum.

UU.     "Preliminary Approval Order" means an order in the form attached as **Exhibit 1**.

VV.     "Projection Rate" is defined in **Section 3**.

WW.     "Publication Notice" means the Court-approved notice for publication to Class Members in the form attached as **Exhibit 4**.

XX.     "QDROs" collectively, or "QDRO" in the singular, mean a qualified domestic relations order, as defined in section 414(p)(1)(A) of the Code, which (i) the Plan had determined was qualified under section 414(p) of the Code before 2020, and (ii) included a Class Member who was a Plan participant or a Beneficiary as a party.

YY.     "Released Claims" is defined in **Sections 15(C)** through **15(G)**.

ZZ.     "Released Parties" is defined in **Section 15(A)**.

AAA.   "Releasors" is defined in **Section 15(B)**.

BBB.   "Revised Lump Sum Benefit" means the amount each Listed Class Member would receive if the Plan were to apply the Projection Rate to each Payment Amount for the period from the Payment Date to the Listed Class Member's 65th birthday and then discounted that projected amount back to the Payment Date using the Applicable  417(e) Interest Rate**.**

CCC.   "Revised Spreadsheet" is defined in **Section 11** and will replace the Spreadsheet as **Attachment A** as provided in **Section 11**.

DDD.   "Settlement" means the settlement embodied in this Agreement.

EEE.   "Settlement Administration Costs" means the costs and fees incurred by Class Counsel on behalf of Class Representatives and Class Members in connection with carrying out the terms of this Agreement, including, but not limited to, the costs of the Notice Administrator, the Notice Costs, the fees and costs incurred in designing and implementing the Plan of Allocation, and the costs of hiring and paying the Enrolled Actuary to perform all calculations regarding estimated and final Individual Net Settlement Benefits (but excluding Plan Administration Costs). All Settlement Administration Costs will count toward the Total Settlement Amount.   Settlement Administration Costs shall be paid by Hanover to Class Counsel. Defendants otherwise have no liability or responsibility for Settlement Administration Costs. Settlement Administration Costs shall not exceed $75,000.

FFF.   "Sixth Circuit" means the United States Court of Appeals for the Sixth Circuit.

GGG.   "Spreadsheet" is defined in **Section 4** and is attached as **Attachment A**.

HHH.   "Subclass A" means a subclass of the Class consisting of Subclass A Members.

III.   "Subclass A Member" means a Listed Class Member with a Payment Date before March 13, 2002; provided, however, that notwithstanding anything in this Agreement to the contrary, Class Members who had Payment Dates both before March 13, 2002 and after March 12, 2002 shall be treated as Subclass B Class Members on the Revised Spreadsheet and for determining their appropriate Minimum Settlement Benefit.

JJJ.   "Subclass A Minimum Settlement Benefit" means a Minimum Settlement Benefit equal to $100 that is payable only to a Subclass A Member.   Only one Subclass A Minimum Settlement Benefit can be paid to a Subclass A Member.

KKK.   "Subclass B" means a subclass of the Class consisting of Subclass B Members.

LLL.   "Subclass B Member" means a Listed Class Member with a Payment Date after March 12, 2002; provided, however, that notwithstanding anything in this Agreement to the contrary, Class Members who had Payment Dates both before March 13, 2002 and after March 12, 2002 shall be treated as Subclass B Class Members on the Revised Spreadsheet and for determining their appropriate Minimum Settlement Benefit.

MMM. "Subclass B Minimum Settlement Benefit" means a Minimum Settlement Benefit equal to $300 that is payable only to a Subclass B Member.  Only one Subclass B Minimum Settlement Benefit can be paid to a Subclass B Member.

NNN.   "Successors" collectively, or "Successor" in the singular, mean an individual who is a surviving spouse or a child (such status to be determined in the sole discretion of the Plan) of a Participant who was a Listed Class Member on the Revised Spreadsheet and who died after receiving a payment described in **Section 1(MM)**.  Notwithstanding anything in this Agreement or the Plan, the Plan shall not be required to affirmatively seek out surviving spouses or children to be a Successor or Successors.  For the avoidance of doubt, alternate payees of deceased Listed Class Members who were Participants cannot be Successors, and a Successor cannot have a Successor.

OOO.   "Successors List" means the latest (chronologically) list of Successors. During the implementation of this Agreement, a Successors List may, in the sole discretion of the Plan, be maintained by the Plan as it becomes evident to the Plan, in its sole discretion, that an individual Listed Class Member on the Revised Spreadsheet who was a Participant has died and such deceased Listed Class Member has a Successor.

PPP.   "Total Settlement Amount" is defined in **Section 2**.

2.      **TOTAL SETTLEMENT AMOUNT**

A.      The Total Settlement Amount is Ten Million Dollars ($10,000,000). This is the total amount to be paid in settlement. Class Counsel's Fees, Settlement Administration Costs, Class Representatives' Incentive Awards and the Net Settlement Fund will constitute the Total Settlement Amount. Pursuant to this Agreement, there shall be no obligation for Defendants to pay anything in excess of the Total Settlement Amount, except for Plan Administration Costs. The Total Settlement Amount is in consideration for the dismissal with prejudice of the Litigation and the release of Released Claims by Class Representatives, Class Members, and other Releasors as set forth in **Section 15** below and in full and complete satisfaction of all of Class Representatives', Class Members' and the other Releasors' Released Claims against the Plan and any of the other Released Parties. Hanover will pay the Class Counsel's Fees and Settlement Administration Costs to Class Counsel. The Plan will pay the Class Representatives' Incentive Awards and the Final Individual Net Settlement Benefits.  The Plan is independently responsible for Plan Administration Costs, which shall not increase or be deducted from the Total Settlement Amount.  Hanover or the Plan Sponsor, at its sole discretion, may elect to pay part of the Plan Administration Costs, but any such payments made by Hanover or the Plan Sponsor will not increase or be deducted from the Total Settlement Amount.

B.      The Parties intend and agree that the Plan's payment of Class Representatives' Incentive Awards and Final Individual Net Settlement Benefits shall constitute payment of Plan benefits. The Parties intend and agree that all payments made by the Plan from the Total Settlement Amount, if any, other than Class Representatives' Incentive Awards and Final Individual Net Settlement Benefits, shall constitute payment of reasonable expenses of the Plan. No Final Individual Net Settlement Benefit (or other Plan payment) under this Agreement shall

be due to any Class Member (or Successor of such a Class Member) who is not a Listed Class Member on the Revised Spreadsheet.

## 3.      PLAN OF ALLOCATION

**A.      Overview.**   The Individual Gross Settlement Benefit(s) and Individual Net Settlement Benefit(s) for each Listed Class Member in the Spreadsheet shall be calculated pursuant to this Agreement's Plan of Allocation by an enrolled actuary engaged by Class Counsel (the "Enrolled Actuary"), which Plan of Allocation is to be implemented uniformly, consistently and reasonably by Class Counsel, Class Representatives and the Enrolled Actuary. The Enrolled Actuary shall rely upon data for Class Members provided by the Plan.

**B.      Calculation of Individual Gross Settlement Benefits.**

1.      The calculation of an Individual Gross Settlement Benefit for a Listed Class Member for the Spreadsheet is a calculation done by the Parties (solely for the purpose of settling this Litigation) in order to determine the additional lump sum amount which each Listed Class Member would receive if the Plan were to apply the assumed Projection Rate for purposes of calculating each Payment Amount for a Listed Class Member.

2.      Each Individual Gross Settlement Benefit of a Listed Class Member (or a Successor, when applicable) for the Spreadsheet shall equal the product of (i) the excess of the Listed Class Member's Revised Lump Sum Benefit (for each of the Listed Class Member's Payment Amounts) over that Listed Class Member's Payment Amount, multiplied by (ii) the sum of one plus the Pre-Judgment Interest Rate, for the period from the Listed Class Member's Original Payment Date through September 1, 2018, raised to the power of the number of years and fractional years (measured in months with any partial month counting as a full month) between the Listed Class Member's Payment Date and September 1, 2018.  For purposes of preparing the Revised Spreadsheet described in **Section 11(C)**, the term "the Effective Date" will

be substituted in this **Section 3(B)(2)** everywhere September 1, 2018 is used in this **Section 3(B)(2)**, the term "Listed Class Member" will mean in this **Section 3(B)(2)** a Listed Class Member specifically identified on the Revised Spreadsheet, and each Individual Gross Settlement Benefit calculated for each Payment Amount paid to a Listed Class Member for the Spreadsheet shall be combined to calculate the Listed Class Member's single Final Individual Net Settlement Benefit.

3.      The Individual Gross Settlement Benefit calculated for each Payment Amount paid before March 13, 2002 shall equal the product of (i) the amount calculated under **Section 3(B)(2)**, multiplied by (ii) a 15% litigation risk charge factor.  The Individual Gross Settlement Benefit calculated for each Payment Amount paid after March 12, 2002 shall equal the product of (i) the amount calculated under **Section 3(B)(2)**, multiplied by (ii) an 80% litigation risk charge factor.

4.      The Projection Rate ("Projection Rate") to be used only for purposes of this Agreement is eight percent (8%).

C.      **Calculation of Individual Net Settlement Benefits**.  Subject to the limits imposed by Section 2, each Individual Net Settlement Benefit of a Listed Class Member (or a Successor, when applicable) for the Spreadsheet shall equal the greater of (i) the product of the Listed Class Member's Individual Gross Settlement Benefit determined under **Section 3(B)(3)**, multiplied by the Final Reduction Factor, or (ii) the Listed Class Member's Minimum Settlement Benefit. Minimum Settlement Benefits will not be multiplied by a Final Reduction Factor. The Minimum Settlement Benefit of a Listed Class Member who is a member of both Subclass A and Subclass B is the Subclass B Minimum Settlement Benefit. A Listed Class Member's Individual Net Settlement Benefit is determined only for estimating payments under this Settlement and is not necessarily the amount to be paid to any Listed Class Member. For purposes of preparing the Revised Spreadsheet described in **Section 11(C),** each Individual Net Settlement Benefit calculated for each Payment Amount paid to a Listed

19

Class Member for the Spreadsheet shall be combined for purposes of determining the Listed Class Member's single Final Individual Net Settlement Benefit.

      **D.**    **Plan Section References.**  References in this Agreement to sections of the Plan are to the version of the Plan as amended and restated effective January 1, 2016, or, if applicable, to the latest of any later versions of such Plan section as it has been subsequently amended.

**4.**      **CALCULATION OF LISTED CLASS MEMBERS' ESTIMATED SETTLEMENT BENEFITS**

      **A.**    **Calculations by Enrolled Actuary**. Based on data supplied by the Plan, the Enrolled Actuary has prepared the Spreadsheet, which lists each Listed Class Member by the unique identification number assigned by the Plan and shows the Individual Gross Settlement Benefits and Individual Net Settlement Benefits the Enrolled Actuary has calculated for each Listed Class Member as provided in **Section 3**, based on the assumption that the Court will award the maximum possible Class Counsel's Fees, Class Representatives' Incentive Awards and Settlement Administration Costs allowed by this Agreement. The Parties will file a motion with the Court requesting that the portion of this Spreadsheet that contains individual Class Member data and Settlement benefit calculations be filed under seal with the Court to protect the privacy of Class Members. The Spreadsheet will provide an estimated Settlement benefit for each Listed Class Member in an immediate straight life annuity payable to that Listed Class Member, where possible, and in an immediate lump sum amount payable to that Listed Class Member. The Spreadsheet is the result of negotiations among the Parties and constitutes an integral part of the Agreement. The Parties agree that the calculations reflected on the Spreadsheet are the result of the application of a reasonable methodology to determine estimated Settlement benefits. No changes may be made to the Spreadsheet except pursuant to **Section 11**.

**B.** **Special Considerations**. Estimates of Settlement benefits for Successors and for Listed Class Members that are estates of Plan participants shall be prepared taking into account **Sections 11(E)** and **(F)**.

**5.** **SUPPORT FOR APPROVAL OF SETTLEMENT**

A. The Parties agree to seek approval of this Agreement by the Court. Class Counsel and Class Representatives agree to recommend approval of the Settlement to all Class Members. The Parties agree to undertake their best efforts, including all steps that may become necessary by order of the Court or otherwise, to effectuate the terms and purposes of this Agreement, to secure the Court's approval, and to oppose any objections to, appeals from, or challenges to the Preliminary Approval Order and Final Order and Judgment contemplated by this Agreement.

B. As soon as reasonably practicable after the signing of this Agreement, but only after affording Defendants the opportunity for a good faith review, Class Representatives shall submit this Agreement, including all attached Exhibits and Attachment A, to the Court along with a Motion and Memorandum in Support of Preliminary Approval of Proposed Settlement, Conditional Certification of Settlement Class, Appointment of Class Counsel, and Approval and Direction of Notice Plan ("Motion for Preliminary Approval"), that would, for settlement purposes only:

1. Certify the conditional settlement Class, Subclass A and Subclass B under Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2) composed of the Class Members;

2. Preliminarily approve this Agreement under Federal Rule of Civil Procedure 23(e);

3. Appoint Class Counsel;

4.      Approve the proposed notice plan and forms of Notices for Class Members and the CAFA Notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715; and

5.      Schedule a final Fairness Hearing.

The Parties will seek to obtain a Preliminary Approval Order in the form attached as **Exhibit 1**. Defendants expressly reserve their right to oppose the motion described in this **Section 5(B)** in the event their input, provided in good faith and not contrary to the letter or intent of this Agreement, is not incorporated or reflected into the motion described in this **Section 5(B)**. The motion to seal referenced in **Section 4(A)** of this Agreement will be filed by the Parties at the same time as this motion.

**6.     NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**

The Parties will recommend to the Court that Notice to Class Members of this Settlement be provided and funded as follows, which the Parties agree is sufficient under applicable law, including the Federal Rules of Civil Procedure and the Due Process Clause of the United States Constitution:

A.      Within five (5) business days of entry of the Preliminary Approval Order, the Plan will provide the Notice Administrator and Class Counsel with a copy of the Class Members List in Excel format. Before mailing the Mailed Notice, the Notice Administrator will update the addresses of the Listed Class Members on the Class Members List by performing a search of the U.S. Postal Services National Change of Address database.

B.      The Notice Administrator, in consultation with Defendants' Counsel and Class Counsel, will be responsible for providing a Court-approved Mailed Notice to each Listed Class Member on the Class Members List in the form attached as **Exhibit 3**.

C.     Each such Mailed Notice shall contain an estimate of the Listed Class Member's Settlement benefit, payable as an immediate straight life annuity (where provided on the Spreadsheet) and as an immediate lump sum, based on the assumption that the Court will award the maximum possible Class Counsel's Fees, Class Representatives' Incentive Awards and Settlement Administration Costs.

D.     All estimates set forth in each Mailed Notice shall be for informational purposes only and shall be subject to change as provided in this Agreement.

E.     The Notice Administrator will begin mailing the Mailed Notice no later than twenty-one (21) days after the entry of the Preliminary Approval Order, and the Notice Administrator will complete such mailing no later than thirty (30) days after the entry of the Preliminary Approval Order. Any Mailed Notice returned to the Notice Administrator by the United States Postal Service ("USPS") as undeliverable with a forwarding address will be re-mailed by the Notice Administrator. Any Mailed Notice returned to the Notice Administrator by the USPS as undeliverable without a forwarding address will be submitted to an address search firm utilized by the Notice Administrator. If an updated address is received from the address search firm, the Notice Administrator will re-mail the Mailed Notice. If an updated address is not available, the Plan agrees to reasonably cooperate with the Notice Administrator with respect to providing a Class Member's missing social security number that it has, if allowed by law. If the Notice Administrator becomes aware that the Class Member's information has changed, or might have changed, the Notice Administrator will immediately provide that information to Class Counsel and Defendants' Counsel, including, but not limited to, updated name or address information and information that a Class Member is deceased or cannot be located.

F.      The Notice Administrator will publish a Court-approved Publication Notice, in the form of **Exhibit 4**, on one occasion in *USA Today*, within twenty (20) days of the entry of the Court's Preliminary Approval Order, or as soon thereafter as possible.

G.      All inquiries by or on behalf of Class Members relating to the Notices will be handled by Class Counsel.

**7.      OBJECTIONS TO THE SETTLEMENT**

Any Class Member who desires to file an objection to final approval of the Settlement, or who wishes to be heard at the Fairness Hearing, must file a written notice of objection with the Court, and serve it on Class Counsel and Defendants' Counsel on or before thirty (30) days prior to the Fairness Hearing, and include with any objection:

A.      the objector's full name and address and an appearance on behalf of any counsel representing the objector;

B.      a notice of intention to appear in Court if the objector desires to appear and be heard;

C.      a detailed statement of each objection asserted;

D.      any documents and writings which such Class Member desires the Court to consider; and

E.      a list of witnesses the person may call by live testimony.

The Parties may file written responses to any objection to the Settlement not later than seven (7) days before the scheduled Fairness Hearing.

**8.      FINAL COURT APPROVAL OF THE SETTLEMENT**

A.      No later than fourteen (14) days before the scheduled Fairness Hearing, Class Representatives shall move for the Court's final approval of this Settlement and entry of a Final Order and Judgment dismissing the Litigation with prejudice and without leave to amend. Class

24

Representatives and Defendants agree to use their best efforts to obtain such approval and Final Order and Judgment. Defendants will not oppose Class Representatives' requests for any approvals or modifications concerning: (1) Class Counsel's Fees; (2) Class Representatives' Incentive Awards; and/or (3) Settlement Administration Costs, provided such requests do not exceed the maximums specified in **Sections 1(I), (M)** and **(EEE)**, respectively, above and do not seek to impose any obligations on Defendants to pay any sum in excess of the Total Settlement Amount.

B.      The terms of this Agreement are subject to the Court's approval and entry of the Final Order and Judgment in the form attached as **Exhibit 2** and, in the event such approval is appealed from, the approval of all applicable appellate courts. If any person appeals from the Final Order and Judgment approving the Settlement, the Parties will use their best efforts to defeat the appeal (without prejudice to Class Representatives' right to appeal from any ruling reducing or modifying the amounts requested by Class Representatives for: (1) Class Counsel's Fees; (2) Class Representatives' Incentive Awards; and/or (3) Settlement Administration Costs, which appeal Defendants will not oppose as long as Class Representatives' appeal does not request amounts that exceed the maximums specified in **Sections 1(I), (M)** and **(EEE)**, respectively, above and does not seek to impose any obligations on Defendants to pay any sum in excess of the Total Settlement Amount).

**9.      EFFECT OF FAILURE TO OBTAIN FINAL APPROVAL OF SETTLEMENT**

A.      Unless the Court enters the Preliminary Approval Order in the form attached as **Exhibit 1** or the Court enters an alternate form of an order preliminarily approving the Settlement that the Parties have agreed in writing will constitute the Preliminary Approval Order, this Agreement shall become null and void *ab initio*.

B.      Unless the Court enters the Final Order and Judgment in the form attached as **Exhibit 2** or the Court enters an alternate form of a final order and judgment that the Parties have agreed in writing will constitute the Final Order and Judgment, this Agreement shall become null and void *ab initio*.

C.      If the Final Order and Judgment, or an alternate form of a final order and judgment has been entered that the Parties have agreed in writing will constitute the Final Order and Judgment, is reversed or vacated in any part on appeal, and the Parties have not agreed in writing to proceed with all or part of the Agreement as modified by an order of such appellate court, this Agreement shall become null and void *ab initio*.

D.      The Court's failure to approve any of Class Counsel's Fees, Class Representatives' Incentive Awards and/or Settlement Administration Costs shall not disturb the other terms of this Agreement, including the Total Settlement Amount. In such event, Class Representatives shall modify Class Counsel's Fees, Class Representatives' Incentive Awards and/or Settlement Administration Costs to the Court's satisfaction (without prejudice to Class Representatives' right to appeal from any such denial of approval), provided such modifications do not impose any obligation on Defendants to pay any amount in excess of the Total Settlement Amount and such modifications do not exceed the maximums specified in **Sections 1(I), (M)** and **(EEE)**, respectively.

E.      If this Agreement becomes null and void, it shall have no force or effect and shall impose no obligations on the Parties, except that the Parties (i) will be prohibited from using this Settlement as evidence in the Litigation and (ii) agree to cooperate in asking the Court to set a reasonable schedule for the Litigation.  The intent of the previous sentence is that, in the event this Agreement becomes null and void, the Parties will revert to their positions immediately

before the execution of this Agreement, and the Litigation will resume without prejudice to any Party.

**10.    INITIAL PAYMENTS**

A.    Within seven (7) business days of the Effective Date, Hanover will disburse to Class Counsel amounts to (1) reimburse Class Counsel for Settlement Administration Costs in the amount approved by the Court (up to the maximum identified in **Section 1 (EEE)** above), and (2) pay Class Counsel's Fees in the amount approved by the Court (up to the maximum identified in **Section 1(I)** above). The amounts referenced in this **Section 10(A)** will be paid pursuant to wire transfer instructions from Class Counsel. Class Counsel shall provide those instructions to Defendants' Counsel within five (5) days after the execution of this Agreement, and at the same time Class Counsel shall also provide to Defendants' Counsel fully completed Form W-9s for such payments. Class Counsel shall provide Defendants' Counsel with any information that Defendants' Counsel may reasonably request, on behalf of Hanover, in order to process each wire transfer.

B.    After Hanover disburses the amounts referenced in **Section 10(A)** to Class Counsel, the Plan will disburse the remaining balance of the Total Settlement Amount to Listed Class Members (or when applicable, to a Successor) on the Revised Spreadsheet as provided in, and in accordance with, the terms of this Agreement and (where necessary) the Plan.

**11.    CALCULATION OF FINAL SETTLEMENT BENEFITS**

A.    **Amount Owed**. Subject to the limitations imposed by this Agreement and by law, each Listed Class Member on the Revised Spreadsheet (and only a Listed Class Member on the Revised Spreadsheet, except for a Successor of the Listed Class Member, when applicable) will be paid, as a result of this Settlement, his or her Final Individual Net Settlement Benefit on the Revised Spreadsheet, as described in **Section 11(C)**.  Subject to the limitations imposed by this Agreement and by law, if the Listed Class Member on the Revised Spreadsheet is deceased, his

or her Successor, if any, will be paid an amount, determined by the Enrolled Actuary and the Plan (or in the absence of such a determination, by the Plan as provided in **Section 12**), based upon the Final Individual Net Settlement Benefit of the Listed Class Member on the Revised Spreadsheet for whom he or she is a Successor.

**B.        Final Calculation Process**. Within fifteen (15) business days after the Effective Date, the Enrolled Actuary will calculate the Final Individual Net Settlement Benefit of each Listed Class Member on the Revised Spreadsheet pursuant to the Plan of Allocation's methodology described in **Section 3**, using the final Individual Gross Settlement Benefits, the Final Reduction Factor, and the final value of the Net Settlement Fund, and provide to Defendants' Counsel and Class Counsel the Revised Spreadsheet described in **Section 11(C)**. Subject to this **Section 11**, the Enrolled Actuary may adjust Individual Net Settlement Benefits to take into account limitations in Class Member data or missing Class Member data.

**C.        Description of Final Calculations**. The Enrolled Actuary will provide to Defendants' Counsel and Class Counsel an updated final Spreadsheet (the "Revised Spreadsheet") containing a single Final Individual Net Settlement Benefit for each Listed Class Member (or when applicable, a Successor) on the Revised Spreadsheet in an immediate straight life annuity payable to that Listed Class Member, where possible, and in an immediate lump sum amount payable to that Listed Class Member. No changes may be made to the formulae and methodologies used in the Spreadsheet when the Revised Spreadsheet is prepared, but the Revised Spreadsheet may reflect new inputs (including changes to Listed Class Members) and resultant changes to Individual Net Settlement Benefits contained in the Spreadsheet. The Enrolled Actuary will notify the Plan in advance of any such new inputs and resulting changes, and the Plan will have fifteen (15) business days after Defendants' Counsel's physical receipt of the Revised Spreadsheet to question, approve or require revisions to the Revised Spreadsheet. In

the event the Parties cannot resolve any disputes regarding these calculations, **Section 12** will apply.

**D.** **Approval of Final Calculations**. The Enrolled Actuary will make any changes that are required as a result of either the mutual agreement of the Parties pursuant to this **Section 11** or pursuant to **Section 12**. The date on which all disparities and disagreements among the Parties regarding the amounts of the Final Individual Net Settlement Benefits have been resolved, either by mutual agreement or pursuant to **Section 12**, will be the "Approval Date" for the Revised Spreadsheet. The Parties will file the Revised Spreadsheet with the Court to replace the filed Spreadsheet, and the Revised Spreadsheet will be an integral, negotiated part of the Agreement. To the extent that the Court ordered portions of the original Spreadsheet to be filed under seal pursuant to the motion to seal referenced in **Section 4(A)** of this Agreement, the comparable portions of the Revised Spreadsheet shall also be filed under seal by the Parties.

**E.** **Listed Class Members Who Were Estates**. Where a lump sum distribution of a Plan cash balance benefit owed to a Participant would have been payable to the Participant between March 1, 1997 and December 31, 2003 but for the fact that he or she had died and was instead paid during that time period to his or her estate, any Final Individual Net Settlement Benefit attributable to that Payment Amount will be paid to that estate only if the administration of that estate is open on the Effective Date. If a Listed Class Member that is an estate is closed on the Effective Date, this Final Individual Net Settlement Benefit will be subject to the Plan's unclaimed benefits procedures.

**F.** **Deceased Participants Who Were Listed Class Members**. Where a Participant who was a Listed Class Member on the Revised Spreadsheet and who would have otherwise received all or a portion of a Final Individual Net Settlement Benefit is deceased, the portion of that person's Final Individual Net Settlement Benefit that would have been paid to him or her

shall be paid instead to his or her Successor, if any.  If that deceased Participant does not have a Successor, this Final Individual Net Settlement Benefit will be subject to the Plan's unclaimed benefits procedures.

G.     **Final Determinations**. All determinations that may be made under this Agreement concerning Listed Class Members, Successors and settlement benefits, including without limitation, Final Individual Net Settlement Benefits, will be final, conclusive and not subject to challenge. No Class Member who is not listed on the Revised Spreadsheet will be entitled to a benefit from this Settlement, and no Listed Class Member or Successor will be entitled to a benefit under this Settlement other than his or her Final Individual Net Settlement Benefit, if any.  Once the Revised Spreadsheet has been approved by the Court as provided in **Section 11(D)**, no Class Member who is not a Listed Class Member can become a Listed Class Member.

H.     **Non-Duplication of Settlement Benefits.** Notwithstanding any other provision of this Agreement, no payment will be made to a Listed Class Member (or a Successor) pursuant to this Agreement that has the effect of duplicating any payment due (or paid) to any other Listed Class Member (or Successor) under this Agreement. Thus, for example, no payment will be made to a Listed Class Member to the extent the payment otherwise due the Listed Class Member is required to be paid instead to another who is his or her Successor. Similarly, in the event that there is more than one Successor to a Listed Class Member, any Listed Class Member payment due under this Agreement to the Successors will be divided among them, in the sole discretion of the Plan, rather than paid duplicatively to them.

I.     **Adequate Consideration**. The assumptions and adjustments used for purposes of calculating the Final Individual Net Settlement Benefits are only a procedure designed by Class Counsel to apportion the Net Settlement Fund among Listed Class Members pursuant to this

Agreement. Notwithstanding these references and apportionment procedures, it is stipulated and agreed that the aggregate amounts paid pursuant to this Agreement constitute adequate consideration for the releases set forth in this Agreement.

## 12.    DISPUTE RESOLUTION

The Parties will work in good faith to resolve any disputes or disagreements concerning who should be a Listed Class Member and the amount of any Individual Gross Settlement Benefit or Final Individual Net Settlement Benefit. The Plan will consult with the Enrolled Actuary and Class Counsel in good faith regarding any calculations and determinations required by this Agreement. However, if agreement cannot be reached, the Plan's determination with respect to such disputes and disagreements will control and will be final and binding.

## 13.    ELECTION OF PAYMENT FORM FOR SETTLEMENT BENEFITS

A.    **Elections Needed**. The Parties and Class Counsel agree that the Participants' and Beneficiaries' prior distribution elections under the Plan will not govern the distribution of funds under this Settlement Agreement and that, in many cases, additional distribution elections and, where applicable, spousal consents will be required for distributions of Final Individual Net Settlement Benefits. When no election is allowed or required, the Plan shall use its best efforts to make such payments under this Agreement within sixty (60) days of the Approval Date.

B.    **Election Process**. When an election is required, within sixty (60) days of the Approval Date, the Plan shall distribute the appropriate notices, payment form elections and participant/spousal consent forms to Listed Class Members on the Revised Spreadsheet (and Successors, if any) who should receive such forms.  The Plan is not required to distribute notices, elections or forms to a Class Member who is not a Listed Class Member on the Revised Spreadsheet.  The procedures for distributing and collecting, and the content of, these notices, elections and consents will comply with Section 6.07 of Part I of the Plan, related

provisions of the Plan and applicable law. Mailing the notices, elections and participant/spousal consent forms to a Listed Class Member on the Revised Spreadsheet at the address on the Class Members List, as modified by any information provided to Defendants' Counsel by the Notice Administrator, shall constitute the distribution of such forms.

**14.    FINAL PAYMENTS TO LISTED CLASS MEMBERS**

    **A.    Payment Date**. Within forty-five (45) days after the date the Plan physically receives a timely, properly executed benefit payment form election and participant consent form (and spousal consent form, if required) from, or for, a Listed Class Member on the Revised Spreadsheet, the Plan will begin payment to that Listed Class Member of the Listed Class Member's Final Individual Net Settlement Benefit according to the Listed Class Member's payment form election. Successors will not be allowed to elect any form of payment that includes a survivor option.

    **B.    Payment Form Options**. Final Individual Net Settlement Benefits will be distributed as follows:

        1.    Except as otherwise provided in this **Section 14(B)**, the Final Individual Net Settlement Benefit of each Listed Class Member on the Revised Spreadsheet will be paid in the form elected in the Listed Class Member's timely and properly completed election form returned under **Section 13**.

        2.    For the following Listed Class Members on the Revised Spreadsheet, a Cash Balance Account for the Listed Class Member under the Plan shall be increased, instead of distributing an amount immediately, effective as of the Approval Date in an amount equal to his or her Final Individual Net Settlement Benefit:

            (a)    A Listed Class Member on the Revised Spreadsheet who is presently employed by Hanover or one of its affiliates;

(b)      A Listed Class Member on the Revised Spreadsheet who does not properly and timely provide a required election, consent and/or spousal consent (as applicable) to allow a lump sum payment and whose lump sum equivalent benefit is not within **Section 14(B)(4)**; and

(c)      A Listed Class Member on the Revised Spreadsheet or Successor who could receive a payment under this Agreement but cannot be timely paid, for any other reasonable reason, as determined by the Plan, in its sole discretion.

3.      The increased Cash Balance Accounts referenced in **Section 14(B)(2)** shall be treated for all purposes under the Plan in the same manner as any other Cash Balance Account (*e.g.,* it will receive interest credits at the same rate and at the same time as other Cash Balance Accounts and will be combined with the Listed Class Member's other Cash Balance Accounts, if any, when converted to a benefit actually paid). This Final Individual Net Settlement Benefit will thus be held by the Plan, credited as provided in the Plan with interest at the Plan's interest crediting rate, subject to forfeiture as provided in **Section 14(C)** and in the Plan's terms (if appropriate), and paid as provided under the terms of the Plan if and when the Listed Class Member on the Revised Spreadsheet timely elects to receive his or her benefit from the Plan.

4.      **Small Amounts**. Notwithstanding **Sections 14(B)(1)** and **14(B)(2)**,

(a)      for a Listed Class Member on the Revised Spreadsheet, if any, whose Final Individual Net Settlement Benefit on the Approval Date is below the small amounts limit in Section 6.06(f) of Part I of the Plan (*i.e.*, $5,000), the Final Individual Net Settlement Benefit will, to the extent allowed by law, be provided to such Listed Class Member without

requiring consent in a single lump sum payment, via a direct payment from the Plan, net of withholdings for income taxes, or to an IRA if such amount exceeds $1,000 and the Listed Class Member has not reached his or her 65th birthday, pursuant to the Plan's terms and this **Section 14(B)(4)**.

(b)      For payments pursuant to **Section 14(B)(4)(a)**, such Listed Class Member's Final Individual Net Settlement Benefit will be provided to, or for the benefit of, the Listed Class Member in a single lump sum payment, either via a rollover or via a direct payment from the Plan, as follows:

> (i)      **Option 1 – Rollover:** A direct rollover of 100% of his or her tax-qualified Final Individual Net Settlement Benefit to an IRA or to another qualified plan that accepts rollovers properly designated by the Listed Class Member using the forms and procedures provided by the Plan, if the Final Individual Net Settlement Benefit exceeds $1,000, but does not exceed $5,000 and the Listed Class Member is not yet age 65.

> (ii)     **Option 2 – Direct Payment:** A direct payment to the Listed Class Member of 100% of his or her Final Individual Net Settlement Benefit, if the Final Individual Net Settlement Benefit does not exceed $1,000, or if the Listed Class Member is age 65 or older and the Final Individual Net Settlement Benefit does not exceed $5,000.

Notwithstanding anything in this Agreement to the contrary, nothing in this Agreement should be construed as restricting the Plan from making

lump sum payments directly to Listed Class Members or their Successors without consent pursuant to the applicable provisions of the Plan and the law.

(c)      For a Listed Class Member on the Revised Spreadsheet who is not covered by **Section 14(B)(4)(a)**, the Final Individual Net Settlement Benefit will be provided by the Plan to such Listed Class Member in a manner consistent with the Plan's normal distribution procedures for distributions above the small amounts limit – that is, the Participant will be allowed to elect as provided in **Section 14(B)** from the various benefit forms available under the Plan, as amended for this Settlement, and spousal consent must be obtained, where appropriate.

C.      **Payment Delays**. To the extent that payment of a Final Individual Net Settlement Benefit cannot be paid within the time frames established by this Agreement because as determined by the Plan, in its sole discretion, the Listed Class Member on the Revised Spreadsheet, among other objective reasons: cannot, after reasonable efforts, be located; will not provide compliant consents and/or elections that are required; is the subject of a dispute concerning whether he or she is the proper recipient; disputes his or her Settlement benefit; or is subject to a lien or garnishment on his or her Settlement benefit, the Plan is excused from complying with this Agreement's deadlines in such an instance, shall retain the portion of the Net Settlement Fund attributable to that Listed Class Member's Final Individual Net Settlement Benefit for a period that will end no later than the last day of the second Plan Year beginning after the Plan Year in which the determination is made under this **Section 14(C)** and shall otherwise administer that Listed Class Member's Final Individual Net Settlement Benefit in compliance with its procedures for such circumstances.

**D.      Making a Payment**. Mailing a check to the address of a Listed Class Member on the Revised Spreadsheet or to a Successor's address (as modified by any information provided to Defendants' Counsel by the Notice Administrator or by a subsequent timely election form) or making a transfer to a rollover destination according to the information provided to the Plan shall constitute the making of the required payment. Crediting the Cash Balance Account of a Listed Class Member on the Revised Spreadsheet, where applicable, shall constitute the making of the required payment in the case of such a Listed Class Member for whom such a credit is required.

**E.      Interest on Late Payments.**  To the extent that payment is not timely made in accordance with the deadlines established in the prior paragraphs and such late payment is not excused by this Agreement, the law, or the agreement of the Parties, the Plan will pay each affected Listed Class Member, in addition to his or her Final Individual Net Settlement Benefit, interest from the date ninety (90) days after (i) the date on which the Plan physically receives the Listed Class Member's valid mailing address (if the Plan does not require an executed form from the Listed Class Member) or (ii) where at least one executed form is required by the Plan, the date on which the Plan physically receives the Listed Class Member's timely, properly executed benefit payment form election and participant consent form (and spousal consent form if required) in accordance with **Section 14(A)** on any amount that was not timely paid.  Such interest shall be calculated at the Federal post-judgment interest rate in effect on the Effective Date.  Notwithstanding anything in the preceding sentence to the contrary, however, if interest due under this **Section 14(E)** cannot be paid with a Final Individual Net Settlement Benefit, no interest will be owed or need be paid under this **Section 14(E)** if the calculated amount of interest does not exceed $50.

36

**F.     Proof of Payment**. The Plan shall make its proofs of mailings and transfers available to Class Counsel upon reasonable demand within fourteen (14) days of Class Counsel's written demand for same.

**15.    RELEASE**

A.     "Released Parties" means the Plan, Hanover, the Plan Sponsor, any committee of the Plan, and their respective affiliates, predecessors, successors, assigns, and each of their respective current and former fiduciaries, trustees, employees, members, directors, officers, agents, advisors, consultants, attorneys, actuaries, recordkeepers, insurers, representatives of any kind or persons acting or purporting to act on their behalf.

B.     "Releasors" means Class Representatives, all Class Members, all Successors and anyone acting on their behalf or interest, together with their respective successors, assigns, beneficiaries, dependents, heirs, administrators, executors, estates, personal trustees, custodians, personal agents, advisors and representatives of any kind.

C.     Upon the Effective Date, all Releasors each forever releases and discharges with prejudice the Released Parties from any and all past, present and future claims, causes of action, demands, liability, obligations and rights whatsoever that were asserted or could have been asserted in this Litigation or that, directly or indirectly, arise out of, or relate to, or concern in any way, the Plan, including but not limited to, its terms, administration, implementation or amendment ("Released Claims"). The Released Claims include, but are not limited to:

1.     any and all claims that were asserted or could have been asserted in this Litigation;

2.     any and all claims relating in any way to the sufficiency or accuracy of lump sum payments or other Plan distributions, and any and all claims relating in any way to, or arising out of, lump sum or other Plan distributions;

3.      any and all "whipsaw" claims, any and all claims pursuant to, or arising out of, section 204 of ERISA, any and all claims regarding benefit accruals or benefit accrual rates, any and all claims that the Plan violated ERISA's age discrimination rules, and any and all claims of age discrimination relating in any way to, or arising out of, the Plan's calculation of benefits;

4.      any and all claims that the Plan, by its terms, implementation, administration or amendment, violates or violated ERISA, the Code or any other source of law;

5.      any and all claims relating in any way to, or arising out of, the amendment of the Plan to become a cash balance plan and/or the administration, interpretation or application of the Plan as a result of that amendment, including, but not limited to, how lump sum payments or other Plan distributions were calculated or paid;

6.      any and all claims that participants are entitled to lump sum payments in excess of their Cash Balance Accounts, any and all claims relating to, or arising out of, the Plan's interest crediting rates, any and all claims alleging that the term "Cash Balance Account" as used in the Plan means something other than a participant's account balance, any and all claims challenging the calculation or application of the Plan's Allocations (as defined in Section 4.02 of Part I of the Plan or its predecessors) or annual interest credits (as determined under Section 4.03 of Part I of the Plan or its predecessors), and any and all claims relating in any way to or arising out of the sufficiency or accuracy of Allocations or annual credits credited to participant's accounts;

7.      any and all claims seeking additional retirement or pension benefits of any kind;

8.      any and all claims relating in any way to or arising out of disclosures or communications relating in any way to the Plan that Class Members or the other Releasors did or

did not receive, and any and all claims relating in any way to or arising out of any summary plan descriptions issued by or on behalf of the Plan;

9.      any and all claims that any fiduciary of the Plan breached his, her or its fiduciary obligations in any way, including but not limited to, in connection with how lump sum payments were calculated, communicated, paid or administered, or in connection with, or in any way arising out of, the terms of this Agreement or its implementation;

10.     any and all claims arising out of or relating in any way to the prosecution or defense of this Litigation, including, but not limited to, any claims that this Agreement or any aspect of its structure, terms or implementation violates any applicable law or rights of any Class Representative, Class Member, Successor or other Releasor;

11.     any and all claims arising out of, or relating in any way to, the Settlement of this Litigation, including, but not limited to, any claims regarding (i) the preparation, design, adoption or implementation of the Plan of Allocation; (ii) the determination of who is a Listed Class Member; (iii) the preparation of the Spreadsheet and the Revised Spreadsheet; (iv) the preparation, structuring and/or implementation of the methodology for calculating estimated and final Settlement benefits and for paying final Settlement benefits pursuant to this Agreement; (v) the calculation of estimated and final Settlement benefits, the payment of final Settlement benefits, and/or action taken to implement or comply with the terms of this Agreement or any orders of the Court regarding this Agreement; (vi) the content of any Mailed Notice, Publication Notice, benefit notices, election forms and consents and/or other disclosures distributed in connection with this Agreement; and (vii) the tax withholding or tax reporting in connection with any payments made pursuant to this Agreement; and

12.     any and all claims for recovery of attorneys' fees, costs or expenses of any kind.

D.     The Released Claims include, but are not limited to, any and all claims arising out of law or equity under federal, state, local or foreign law. The Released Claims also include, but are not limited to, known or unknown claims, foreseen or unforeseen claims, actual or contingent claims, and liquidated or unliquidated claims. The Released Claims also include, but are not limited to, any and all claims arising out of a statute, ordinance, regulation, constitutional provision, common law, contract, the terms of the Plan, or any other source. The Released Claims also include, but are not limited to, claims that have been or could have been brought in court or before any administrative agency or in any other forum whatsoever including, but not limited to, any forum provided for in the administrative claims procedures under the Plan. The Released Claims also include, but are not limited to, any claim for damages or other remedies, including, but not limited to, additional benefits from the Plan, interest, equitable relief, injunctive relief, or compensatory, punitive or exemplary damages.

E.     The Releasors agree that, to the extent that the Plan Sponsor amends or modifies the Plan in any way after the date that Class Representatives, Class Counsel, the Plan, and Defendants' Counsel execute this Agreement, such an amendment or modification shall have no effect on the Released Claims or in any way limit or modify the scope of the release set forth in this Agreement. Except for Releasors within the scope of **Section 14(B)(2)(a)**, Releasors shall not be entitled to, and waive, any rights or benefits provided by such amendments or modifications, and Releasors shall not be entitled to any benefits provided by the Plan other than those provided by this Agreement.

F.     Releasors acknowledge that the Released Claims include both known and unknown and suspected and unsuspected claims and they are aware that they may hereafter discover legal or equitable claims or remedies presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, including, but not

40

limited to, those with respect to the allegations and subject matters in this Litigation, or that concern or relate in any way to the Plan, including, but not limited to, the sufficiency or accuracy of lump sum or other distributions from the Plan. It is the intention of Releasors to fully, finally, and forever settle all Released Claims which exist, hereafter may exist, or might have existed, whether or not previously or currently asserted in this Litigation and whether or not arising from new facts or facts found hereafter to be other than, or different from, the facts now believed to be true.

G.     Releasors expressly acknowledge certain principles of law applicable in some states, such as Section 1542 of the Civil Code of the State of California, which limit the effect of a release to those claims or matters actually known or suspected to exist at the time of executing the release.  Released Claims include any rights under Section 1542 of the Civil Code of the State of California, and any federal law, any law of any state or territory of the United States, or any principle of common law, which is similar, comparable, or equivalent to California Civil Code Section 1542, which reads as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Releasors expressly waive all rights under Section 1542 of the Civil Code of the State of California or any similar, comparable or equivalent laws. Releasors acknowledge that they may have Released Claims that are covered by the terms of this Agreement that they have not yet discovered. Releasors acknowledge that they intend to release any and all such unknown or unsuspected Released Claims. To the extent that California or other law may be applicable and enforceable, Releasors hereby agree that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable here, are hereby knowingly and voluntarily waived and

relinquished by Releasors, and Releasors agree and acknowledge that this provision is an essential term of this Agreement and release. By including this paragraph in this Agreement, the Parties do not admit or agree that California or any other state law referred to in this paragraph applies to this Agreement.

H.     Each Released Party who is not the Plan or Hanover is an intended beneficiary of this Agreement and is entitled to enforce the release contained in this Agreement.

I.     Releasors are precluded and estopped from bringing in the future any Released Claims, and they expressly agree that they, acting either individually or in combination with others, will not threaten, initiate, maintain, prosecute, sue or assert any Released Claims in any action or proceeding of any kind.

J.     Releasors further agree that no third parties shall bring any Released Claims on behalf of any Releasor against any Released Party. Should any third party do so, Releasors shall take all necessary action to secure the dismissal with prejudice of any such claim.

K.     This release may be raised as a complete defense to, and will preclude, any claims, actions and/or proceedings that are encompassed by this release. The Parties intend that the terms of the release provided by this Agreement are to be broadly construed in favor of the Released Parties and in favor of the complete resolution of all Released Claims.

L.     Upon the Effective Date, the Parties agree that the Releasors and all other persons and entities claiming by, through, or on behalf of them will be forever barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any judicial, arbitral, or regulatory action against the Released Parties with respect to the Released Claims.

M.     Upon the Effective Date, if any Releasor commences, files, initiates, or institutes any new action or other proceeding for any Released Claims against the Released Parties in any

42

federal or state court, arbitration tribunal, or administrative or other forum, such action or other proceeding shall be dismissed with prejudice and at the cost (including, but not limited to, attorneys' fees, costs and expenses) of the Releasor bringing the action or proceeding. Furthermore, if any Released Party brings any legal action before any court or arbitration, regulatory agency, or other tribunal to enforce its rights under this Agreement, such Released Party shall be entitled to recover any and all related costs (including, but not limited to, attorneys' fees, costs and expenses) from any Releasor who violates or breaches its obligation under this **Section 15**.

N.      The provisions of this release constitute an essential and material term of the Agreement and shall be incorporated into the Final Order and Judgment.

O.      This release extends to all Releasors, including, but not limited to, those Class Members whose Mailed Notice was returned as undeliverable for any reason and for whom the Notice Administrator cannot locate a forwarding address using the procedures for the Mailed Notice described in this Agreement.

P.      This release is in addition to, and without limitation of, the preclusive effect of the Final Order and Judgment.

Q.      Nothing in this release shall preclude any action to enforce the terms of this Agreement.

## 16.      TAX QUALIFICATION OF PAYMENTS

The Parties recognize that the payments made by the Plan pursuant to this Agreement will be made from a tax-qualified defined benefit pension plan to the extent allowed by the terms of the Plan, this Settlement and the law. This Agreement is not intended to, and does not, require any Party to perform an unlawful act or an act that would violate the tax-qualification requirements of the Code applicable to the Plan. To the extent that the Agreement purports to

require such an act, the Parties agree to amend the Agreement so as to bring it into conformity with the law and/or tax-qualification requirements of the Code applicable to the Plan in the manner that best effectuates, to the extent possible under applicable law, the intent of the Agreement as expressed in its written terms.

## 17. NO ADMISSION OF LIABILITY

A.     The Settlement reached in this Agreement is made only to compromise and settle this Litigation among Class Representatives, Class Members, the Plan and Hanover without further litigation and should in no way be construed as an admission of liability or wrongdoing of any kind by the Plan, its fiduciaries, the Plan Sponsor or Hanover (or their affiliates).

B.     None of Class Representatives, Class Members, and Class Counsel, and no one in privity with any such person, may argue before any court, agency or other forum that this Agreement or any of its terms shows or evidences in any way that the Plan, Hanover or the Plan Sponsor violated any law or legal obligation. Neither this Agreement nor any of the negotiations or proceedings connected with this Settlement and the Litigation may be offered or received in evidence for any purpose other than with respect to proceedings to approve the Settlement, to obtain dismissal of the Litigation, or otherwise to enforce this Agreement.

## 18. PLAN AMENDMENT

Nothing in this Agreement or the Settlement supersedes, or limits in any way, the right of the Plan Sponsor to amend the Plan if, and to the extent that, it determines, in its sole discretion, that an amendment to the Plan is preferable or necessary to implement the terms of this Agreement.

## 19. NO RESTRICTION ON THE PLAN SPONSOR'S BUSINESS OR PLAN ADMINISTRATION COMMUNICATIONS

Nothing in this Agreement precludes the Plan, its fiduciaries, Hanover or the Plan Sponsor (or their affiliates) from making any reasonable disclosures that refer to, or might relate

to, the Agreement that the Plan, its fiduciaries, Hanover or the Plan Sponsor (or their affiliates) believe, in each of their sole discretion, are reasonable, appropriate, or necessary to conduct the business operations of the Plan, Hanover or the Plan Sponsor (or their affiliates). Such disclosures would include, but not be limited to, disclosures to auditors, regulators, shareholders, investors, attorneys, Plan participants and beneficiaries and Class Members. Nor does this Agreement preclude the Plan, its fiduciaries, Hanover or the Plan Sponsor (or their affiliates) from making any disclosures regarding the Agreement that any of them determines, in each of their sole discretion, may be required by law. In addition, the Plan, its fiduciaries, Hanover and the Plan Sponsor (and their affiliates) are not precluded from making any communications to Plan participants or Class Members, that the Plan, its fiduciaries, Hanover or the Plan Sponsor (or their affiliates) determine, in each of their sole discretion, to be necessary or appropriate to administer the Plan or this Agreement.

**20.** **COSTS**

Apart from an award of Class Counsel's Fees, Class Representatives' Incentive Awards and Settlement Administration Costs that count toward the Total Settlement Amount as specified and delineated in **Section 2** of the Agreement, the Parties each agree to bear their own costs and expenses incurred in connection with this Litigation and proceedings to approve the Settlement, including in the event that this Agreement shall become void.

**21.** **MEDIA COMMUNICATIONS**

Unless otherwise agreed to in writing by the Parties, up to one day prior to the date the submission referenced in **Section 5(B)** is filed in the Court, none of the Parties, nor any of their counsel, shall do any of the following:

A.      Initiate any communications with Class Members (other than Class Representatives) regarding this Litigation or this Agreement;

B.      Initiate any communications with the news media regarding this Litigation or this Agreement;

C.      Issue a press release or media statement regarding this Litigation or this Agreement; or

D.      Respond to, or comment on, any inquiries from the news media regarding this Litigation or this Agreement.

**22.    CONFIDENTIALITY**

"Confidential Data" means the names, addresses, and other personal data concerning any of the Class Members or any current or former Plan participants, any nonpublic Plan terms, nonpublic information or data of any kind, information or data related to any other plan sponsored by Hanover or the Plan Sponsor, and any nonpublic information or data related to any current or former participant of the Plan or of any other plans sponsored by Hanover or the Plan Sponsor. "Confidential Data" specifically includes the Class Members List and individual Class Member data and Settlement benefit calculations contained in the Spreadsheet. The Enrolled Actuary, Class Counsel or anyone acting on behalf of Class Counsel (including, but not limited to, the Notice Administrator and any other actuaries or experts retained by Class Counsel) shall keep strictly confidential any Confidential Data received from the Plan, Defendants' Counsel or anyone acting on behalf of the Plan (including, but not limited to, one or more service providers administering this Settlement) and promise to use it for no purpose other than the implementation of this Agreement. The Confidential Data shall be used solely for the purposes of the administration and implementation of this Agreement, shall not be used for any other purpose, and shall not be disclosed to any third party. If any Confidential Data is filed with the Court or any other court, it shall be filed under seal. The Notice Administrator shall

return to Defendants' Counsel all Confidential Data in the Notice Administrator's possession within thirty (30) days after the notice process described in **Section 6** is completed.

**23.   WAIVERS**

The waiver by any Party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous to this Agreement.

**24.   EXTENSIONS OF TIME**

The Parties may agree in writing to reasonable extensions of time to carry out any of the provisions of this Agreement, subject to approval by the Court.

**25.   DEADLINES FALLING ON WEEKENDS OR HOLIDAYS**

To the extent any deadline set forth in this Agreement falls on a Saturday, Sunday, or legal holiday, that deadline shall be continued until the following business day.

**26.   FORCE MAJEURE**

The failure of any Party to perform any of its obligations hereunder shall not subject any Party to any liability or remedy for damages, or otherwise, where such failure is occasioned, in whole or in part, by acts of God, fires, accidents, other natural disasters, interruptions or delays in communication or transportation, labor disputes or temporary emergency shortages, governmental laws, acts or failures to act of any third parties, or any other circumstances or causes beyond the reasonable control of such Party.

**27.   SEVERABILITY**

The provisions of this Agreement are not severable. In the event that any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision only if the Parties mutually agree in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement. Nothing in this paragraph

47

shall affect the provisions of **Section 9(D)** relating to Class Counsel's Fees, Class Representatives' Incentive Awards and/or Settlement Administration Costs.

**28.    NOTICES**

Whenever this Agreement requires or contemplates that one Party shall give notice to another, notice shall be provided by email and by next-day express delivery as follows:

If to Class Representatives and/or Class Members:

> Eli Gottesdiener
> Gottesdiener Law Firm, PLLC
> 498 7th Street
> Brooklyn, NY 11215
> eli@gottesdienerlaw.com

If to Defendants:

> Alan S. Gilbert
> Dentons US LLP
> 233 S. Wacker Drive, Suite 5900
> Chicago, IL 60606-6361
> alan.gilbert@dentons.com

**29.    TAX CONSEQUENCES**

A.    The Plan, Hanover, if applicable, and the Plan Sponsor, if applicable, will be solely responsible for satisfying their own tax reporting obligations to pertinent government authorities with respect to all payments made pursuant to this Agreement. The Plan, Hanover, if applicable, and the Plan Sponsor, if applicable, will also be solely responsible for determining, in each of their sole discretion, the amount of federal, state and/or local income tax withholding from all such payments, and for making and processing such withholdings from such payments. Neither the Plan, Hanover, the Plan Sponsor, nor any of the other Released Parties will be liable for any tax that is assessed on any payment made pursuant to this Agreement and will, under no circumstances, be required to gross up any payment made pursuant to this Agreement based on any tax liability assessed or any withholdings made with respect thereto.

B.      No opinion concerning the tax consequences of the Settlement to Class Representatives, individual Class Members, Successors or Class Counsel is being given or will be given by the Plan, Hanover, the Plan Sponsor, Defendants' Counsel (including for these purposes counsel employed by, associated with, or who are members or partners of Dentons US LLP) or Class Counsel, nor is any representation or warranty in this regard made by any of these by virtue of this Agreement. Class Representatives', Class Members' and Successors' federal, state and/or local tax obligations, if any, and the determination thereof, are the sole responsibility of Class Representatives, Class Members and Successors, and it is understood that the tax consequences may vary depending upon the particular circumstances of each individual Class Representatives, Class Member and Successor.

**30.      ENTIRE AGREEMENT**

This Agreement (along with any amendment to the Plan prepared under **Section 18** to implement this Agreement) is the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, agreements, and understandings. To the extent there is any inconsistency between this Agreement and any Notice, this Agreement shall govern and operate to define the rights and obligations of the Parties. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part or all of this Agreement has been made or relied on, except to the extent expressly set forth in this Agreement.

**31.      NO THIRD-PARTY BENEFICIARIES**

This Agreement will not be construed to create rights in, grant remedies to, or delegate any duty, obligation or undertaking established herein to, any third party as a beneficiary to this Agreement, except as otherwise provided in **Section 15(H)** above.

**32.    BINDING EFFECT OF THE AGREEMENT**

The terms and provisions of this Agreement shall be binding upon and inure to the benefit of each of the Parties and each of their respective predecessors, successors, heirs, and assigns.

**33.    MODIFICATIONS**

The Parties may jointly agree by written amendment to modify the provisions of this Agreement as they, in concert, deem necessary to effectuate the intent of this Agreement, subject to Court approval where necessary.

**34.    ENFORCEMENT OF AGREEMENT**

Only Class Counsel shall have standing to seek enforcement of this Agreement on behalf of Class Members. Any individual concerned with Defendants' compliance with this Agreement may so notify Class Counsel and direct any requests for enforcement to him. Class Counsel shall have full and sole discretion to take whatever action or refrain from taking such action he deems appropriate in response to such request.

**35.    MULTIPLE ORIGINALS/COUNTERPARTS**

This Agreement, including its Exhibits, may be executed in one or more counterparts, each of which when so executed and delivered shall be deemed to be an original, but all of which taken together shall constitute but one instrument.

**36.    AUTHORITY OF PERSONS SIGNING AGREEMENT**

The individuals executing this Agreement for the Parties represent and warrant that they do so with full authority to bind each such party to the terms and provisions in this Agreement.

**37.    SECTION TITLES**

The headings in this Agreement are inserted as a matter of convenience only, and do not define, limit, or describe the scope of this Agreement or the intent of the provisions.

**38.    NO PRESUMPTION AGAINST DRAFTER**

None of the Parties shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or  construction that would or might cause any provision to be construed against the drafter. Each Party represents that, through their counsel, they were fully involved in the drafting of this Agreement.

**39.    ARM'S LENGTH TRANSACTION**

The Parties have negotiated all the terms and conditions of this Agreement at arm's length.

**40.    ALL TERMS ARE MATERIAL IN THEIR EXACT FORM**

All terms and conditions in this Agreement in their exact form are material to this Agreement and have been relied on by the Parties in entering into this Agreement.

**41.    VOLUNTARY ENTRY INTO AGREEMENT**

The Parties represent that they are voluntarily entering into this Agreement. In executing this Agreement, the Parties rely on their own judgment, beliefs, and knowledge, and the advice and recommendations of their own independent counsel. Each party to this Agreement represents that they have consulted with, and obtained the advice of, counsel prior to executing this Agreement and that this Agreement has been explained to that Party by his or its counsel.

**42.    CHOICE OF LAW**

This Agreement, and any disputes arising out of this Agreement, are governed by ERISA and/or the federal common law of ERISA, except to the extent federal law does not govern. In that event, Kentucky law will apply. Any lawsuit or other proceeding to enforce this Agreement shall be filed in the United States District Court for the Western District of Kentucky. In any action to enforce this Agreement, the court may award reasonable attorneys' fees and costs to the prevailing party.

43.    **COURT'S CONTINUING JURISDICTION**

Without affecting the finality of the Court's actions and orders hereunder, the Court shall retain exclusive jurisdiction over Class Representatives, Defendants, Class Members and this Litigation with respect to matters arising out of, or connected with, this Agreement.

44.    **CLASS ACTION FAIRNESS ACT**

Notice under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, will be timely served on the appropriate officials in the form attached hereto as **Exhibit 5**.

[*Signature Page Follows*]

**CLASS REPRESENTATIVES:**

By: _~signature~_                         Dated: _12/10/2018_
   Jennifer A. Durand

By: _____        Dated: _____
   James A. Fisher

**FOR CLASS REPRESENTATIVES AND CLASS MEMBERS:**

By: _~signature~_                         Dated: _12/10/18_
   Eli Gottesdiener
   Gottesdiener Law Firm, PLLC
   498 7th Street
   Brooklyn, NY 11215

**DEFENDANTS:**

**THE HANOVER INSURANCE GROUP, INC.:**

By: _____        Dated: _____

   Name: _____

   Title: _____

**THE ALLMERICA FINANCIAL CASH BALANCE PENSION PLAN:**

By: _____        Dated: _____

   Name: _____

   Title: _____

**APPROVED AS TO FORM FOR DEFENDANTS:**

By: _____        Dated: _____
   Alan S. Gilbert
   Dentons US LLP
   233 S. Wacker Drive, Suite 5900
   Chicago, IL 60606-6361

*CLASS REPRESENTATIVES:*

By: _____    Dated: _____
   Jennifer A. Durand

By: _____    Dated: _____12/10/18_____
   James A. Fisher

*FOR CLASS REPRESENTATIVES AND CLASS MEMBERS:*

By: _____    Dated: _____12/10/18_____
   Eli Gottesdiener
   Gottesdiener Law Firm, PLLC
   498 7th Street
   Brooklyn, NY 11215

*DEFENDANTS:*

*THE HANOVER INSURANCE GROUP, INC.:*

By: _____    Dated: _____

   Name: _____

   Title: _____

*THE ALLMERICA FINANCIAL CASH BALANCE PENSION PLAN:*

By: _____    Dated: _____

   Name: _____

   Title: _____

*APPROVED AS TO FORM FOR DEFENDANTS:*

By: _____    Dated: _____
   Alan S. Gilbert
   Dentons US LLP
   233 S. Wacker Drive, Suite 5900
   Chicago, IL 60606-6361

*CLASS REPRESENTATIVES:*

By: _____     Dated: _____
    Jennifer A. Durand


By: _____     Dated: _____
    James A. Fisher


*FOR CLASS REPRESENTATIVES AND CLASS MEMBERS:*

By: _____     Dated: _____
    Eli Gottesdiener
    Gottesdiener Law Firm, PLLC
    498 7th Street
    Brooklyn, NY 11215

*DEFENDANTS:*

*THE HANOVER INSURANCE GROUP, INC.:*

By: _____     Dated: __12/11/18__

Name: __Jeffrey M. Farber__

Title: __Executive Vice President and Chief Financial Officer__

*THE ALLMERICA FINANCIAL CASH BALANCE PENSION PLAN:*

By: _____     Dated: __12/11/18__

Name: __Kathleen E. deCastro__

Title: __Member of the Benefits Committee of The Hanover Insurance Company__


*APPROVED AS TO FORM FOR DEFENDANTS:*

By: _____     Dated: __12/11/18__
    Alan S. Gilbert
    Dentons US LLP
    233 S. Wacker Drive, Suite 5900
    Chicago, IL 60606-6361